1 | ARAVIND SWAMINATHAN (*admitted pro hac vice*)
aswaminathan@orrick.com
2 | REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
3 | THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
4 | ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
5 | 405 Howard Street
San Francisco, CA  94105-2669
6 | Telephone:   +1 415 773 5700
Facsimile:    +1 415 773 5759

Attorneys for Defendant
Lead Intelligence, Inc. d/b/a Jornaya


JOSEPH O'KEEFE (*pro hac vice application forthcoming*)
jokeefe@mcleodbrunger.com
MCLEOD BRUNGER PLLC
10375 Park Meadows Drive, Ste. 260
Lone Tree, CO  80124
Telephone:      720 443 6600

Attorney for Defendant
DDR Media, LLC on behalf of the proper Party to be Substituted DDR Media, LLC trading/doing business as Royal Marketing Group

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DDR MEDIA, LLC, a Pennsylvania limited liability company, and LEAD INTELLIGENCE, INC., a Delaware corporation, d/b/a Jornaya,<br><br>Defendants. | Case No. 3:22-cv-03789-SI<br><br>**DEFENDANTS DDR MEDIA'S AND JORNAYA'S MOTION TO COMPEL ARBITRATION**<br><br>Date:   February 17, 2023<br>Time:   10:00 a.m.<br><br>Judge: Hon. Susan Illston |

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

# NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 17, 2023, at 10:00 a.m., or as soon thereafter as available, in the courtroom of the Honorable Illston, located at 450 Golden Gate Avenue, Courtroom 1, 17th Floor, San Francisco, California 94102 (via Zoom webinar), Defendants DDR Media, LLC ("DDR Media") on behalf of the proper Party to be Substituted[1] DDR Media, LLC trading/doing business as Royal Marketing Group ("Royal Marketing") and Lead Intelligence, Inc., d/b/a/ Jornaya ("Jornaya"), will and hereby do move pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, for an order compelling Plaintiff to submit this case to arbitration. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, and any other matter that the Court may properly consider.

---

[1] DDR Media's counsel has been in touch with Plaintiff's counsel who have agreed to substitute parties accordingly.

Orrick, Herrington & Sutcliffe LLP
Attorneys At Law
Silicon Valley

- 1 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

# TABLE OF CONTENTS

Page

I. STATEMENT OF ISSUES TO BE DECIDED ................................................................ 2
II. SUMMARY OF RELEVANT FACTS ........................................................................... 2
III. LEGAL STANDARD ...................................................................................................... 6
IV. LEGAL ARGUMENT ...................................................................................................... 6
    A. Plaintiff's Claims Are Subject To Mandatory Arbitration. ................................... 6
        1. Plaintiff agreed to submit all claims arising out of or relating to her use of DDR Media's website to binding arbitration. ................................................................ 6
        2. Jornaya can enforce the arbitration agreement. ................................................... 9
V. CONCLUSION ............................................................................................................... 12

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abrahim v. ESIS, Inc.*,
   2008 WL 220104 (N.D. Cal. 2008) ...........................................................................................3

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ..................................................................................................................6

*Franklin v. Cmty. Reg'l Med. Ctr.*,
   998 F.3d 867 (9th Cir. 2021) .............................................................................................10, 11

*Garcia v. Pexco*,
   11 Cal. App. 5th 782 (2017) ..............................................................................................10, 11

*Hawkins v. KPMG LLP*,
   423 F. Supp. 2d 1038 (N.D. Cal. 2006) ................................................................................9, 10

*Hughes v. S.A.W. Ent., Ltd.*,
   2019 WL 2060769 (N.D. Cal. 2019) .......................................................................................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 2650689 (N.D. Cal. 2011) .........................................................................................6

*Kellison v. First Premier Bank*,
   2018 WL 5880614 (C.D. Cal. 2018) .........................................................................................7

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,
   2022 WL 10585178 (N.D. Cal. 2022) .....................................................................................11

*Metalclad Corp. v. Ventana Env't Organizational P'ship*,
   109 Cal. App. 4th 1705 (2003) ..........................................................................................10, 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ......................................................................................................................6

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ...................................................................................................8

*Norman v. Uber Techs., Inc.*,
   2021 WL 4497870 (N.D. Cal. 2021) .........................................................................................7

*Pizarro v. QuinStreet, Inc.*,
   2022 WL 3357838 (N.D. Cal. 2022) .....................................................................................8, 9

*Silicon Valley Self Direct, LLC v. Paychex, Inc.*,
   2015 WL 4452373 (N.D. Cal. 2015) .........................................................................................7

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- i -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

*Waymo LLC v. Uber Techs., Inc.*,
   252 F. Supp. 3d 934 (N.D. Cal. 2017) ........................................................................... 10

**Statutes**

Cal. Penal Code § 631 ................................................................................................ 1, 3, 11

Cal. Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ...................................... 1, 3

Telephone Consumer Protection Act ................................................................................. 1, 2

9 U.S.C. § 2 ............................................................................................................................ 6

9 U.S.C. § 4 ....................................................................................................................... 2, 6

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- ii -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

This action seeks to outlaw—indeed, to criminalize—important technology tools used by online comparison shopping and "lead-generation" companies to comply with federal law and develop evidence of their compliance. For example, consumers looking for a loan (e.g., a home mortgage) often turn to websites (known as both comparison shopping sites or "lead sellers") that help source quotes from multiple lenders. Those websites collect basic information from the consumer—e.g., income bracket, loan size, ZIP code—and then share it (with permission) with various lenders who then get in touch with the consumer, often through text messaging and calling services, which must comply with the Telephone Consumer Protection Act (TCPA). That process only works, though, if the lenders can trust that the information they receive—particularly the consumer consent—from the lead seller is legitimate. For instance, a lead seller may *tell* a lender that a consumer has given consent to receive phone calls about a quote for a potential mortgage. But if that proves to be inaccurate or if the lender cannot produce proof of the valid information and consent, the liabilities under the TCPA can be enormous.

Lead Intelligence Inc. d/b/a Jornaya ("Jornaya") is an innovative technology company that helps firms prove the origin and compliance of the data they are buying or selling. Specifically, both lead sellers and U.S. brands (who buy the leads) use Jornaya's product TCPA Guardian to validate whether visitors interacting with their site in fact provided the prior express consent required by the TCPA, and to produce proof of that consent for use in compliance programs and in litigation, by capturing certain information website visitors enter into the website.

In this lawsuit, Plaintiff claims that TCPA Guardian itself is unlawful, and that Jornaya and DDR Media, LLC ("DDR Media"), one of Jornaya's customers, committed a crime by (respectively) making that software available for purchase and installing it on DDR Media's website to capture "keystrokes and clicks," that reflected her "name, address, and phone number," as well as "the date and time of the visit, her IP address, and her geographic location," in violation of the California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; the California Constitution; and the Unfair Competition Law ("UCL"). On that basis, Plaintiff seeks not only an injunction that would prohibit TCPA Guardian's use, but also $5,000 in statutory damages for each supposed class member.

Orrick, Herrington & Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 1 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

Unsurprisingly, Plaintiff's gambit fails for multiple reasons. This motion concerns the first of these, which defeats Plaintiff's lawsuit at the threshold: In submitting her information on DDR Media's website, Plaintiff agreed to Terms of Service that require all of her claims (including those against Jornaya) to be brought in binding, individual arbitration, and prohibits her from maintaining this putative class action.[2] Accordingly, the Court need not concern itself with all of the additional reasons that Plaintiff's claims fail on the merits; instead, should compel Plaintiff to submit this case to binding, individual arbitration.

## I. STATEMENT OF ISSUES TO BE DECIDED

Jornaya seeks an order compelling arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.

## II. SUMMARY OF RELEVANT FACTS

Jornaya is a consumer journey insight platform that provides marketers, data analysts, and compliance professionals with the highest-resolution view of the consumer buying journey. One of the tools developed by Jornaya is a product known as TCPA Guardian, a compliance tool which helps companies comply with the Telephone Consumer Protection Act (TCPA), a federal law that requires prior written consent before making an autodialed call to a cell phone number. A company that licenses the TCPA Guardian product gains the ability to validate whether each visitor interacting with the website provided the prior express consent required by the TCPA (e.g., by requesting that the company call them, and checking a box indicating consent to be contacted), including access to a visual rendering of the customer entering their consent on the website. This allows Jornaya customers (i.e., lead generating website owners and U.S. brand advertisers) to assure themselves that the consumer can safely be contacted without running afoul of the TCPA, and to establish proof of TCPA compliance in the event a TCPA complaint is filed. In so doing, TCPA Guardian helps both companies and consumers be assured that the TCPA's strictures are complied with.

---

[2] Because the arbitration provision applies equally to Plaintiffs' claims against DDR Media and Jornaya (which are inseparable in any event), they submit this motion to compel arbitration jointly.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

In June 2022, Plaintiff sued Jornaya and one of its customers DDR Media, who implemented Jornaya's Create JavaScript on its website snappyrent2own.com. Plaintiff alleges that Jornaya's Create JavaScript unlawfully recorded certain of her interactions with that website—namely, her entering her name, address, and phone number into snappyrent2own.com, as well as IP address and geographic location. Compl. ¶¶ 21-22. On this basis, Plaintiff asserts that both DDR Media and Jornaya violated the California Invasion of Privacy Act (CIPA), Cal. Penal Code § 631; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and the California Constitution.

Although Plaintiffs' interactions with snappyrent2own.com lie at the heart of all her claims, the Complaint itself omits a number of its details.[3] Of particular relevance here, the Complaint neglects to depict the page of the website on which Plaintiff would have entered her "name, address, and phone number," Compl. ¶ 22, which (as shown below) states—in text immediately above the button Plaintiff would have been required to push to proceed—that "I agree to [DDR Media's] Terms of Use and [its] Privacy Policy." Swaminathan Decl. Ex. 1 (emphases added).

---

[3] The Court may nevertheless consider snappyrent2own.com, as the Court in reviewing a motion to compel arbitration is not limited to the allegations in the Complaint and may also consider extrinsic facts, including those submitted by declaration. *See, e.g.*, *Abraham v. ESIS, Inc.*, 2008 WL 220104, at *2 (N.D. Cal. 2008).

[Screenshot of a mobile web form headed "Rent to Own Your Home!" with fields for First Name, Last Name, Phone Number, and Email Address, followed by a block of disclosure text (with "Privacy Policy" and "Terms of Use" circled), and a blue "CHECK LISTINGS" button.]

The Terms of Use, in turn, state—repeatedly—that any disputes arising out of Plaintiff's interactions with snappyrent2own.com must be brought in individual, binding arbitration—not in court and not in a class action. For instance, the Terms of Use state (in bold and all caps):

> **THIS AGREEMENT CONTAINS AN ARBITRATION AGREEMENT AND CLASS ACTION WAIVER THAT WAIVE YOUR RIGHT TO A COURT HEARING OR JURY TRIAL OR TO PARTICIPATE IN A CLASS ACTION. ARBITRATION IS MANDATORY AND THE EXCLUSIVE REMEDY FOR ANY AND ALL DISPUTES.**

Swaminathan Decl. Ex. 2. The Terms of Use then go on to elaborate on the terms of that agreement to arbitrate in more detail. For instance, they make clear that the set of disputes covered by the arbitration agreement is broad and encompasses "all disputes or claims that relate to or arise from" use of snappyrent2own.com:

> You and we each agree that any and all disputes or claims that relate to or arise from your use of or access to our Services, or any products or services sold, offered, or purchased through our Services, including

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

> any contact from our subsidiaries, affiliates, or agents, shall be resolved exclusively through final and binding arbitration between us and you, or between our subsidiaries, affiliates, or agents and you, rather than in court, except that you may assert claims in small claims court, if your claims qualify.

*Id.* Additionally, they then further clarify that the scope of arbitrable issues includes any "dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate":

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate, any part of it, or of this Agreement including, but not limited to, any claim that all or any part of the Agreement to Arbitrate or this Agreement is void or voidable.

*Id.* And they make clear that any action—whether in court or in arbitration—may only be brought individually, and not on behalf of a class:

> You and we agree that each of us may bring claims against the other only on an individual basis and not as a plaintiff or class member in any purported class or representative action or proceeding, including but not limited to actions under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. Unless both you and us agree otherwise, the arbitrator may not consolidate or join more than one person's or party's claims, and may not otherwise preside over any form if a consolidated, representative, or class proceeding.

*Id.*

The Privacy Policy, too—which a user "accept[s]" by "using th[e] Site," Swaminathan Decl. Ex. 3.—contains important terms omitted from the Complaint. Specifically, it discloses to the user that among the "information we collect," is "personally identifiable information" such as "your full name, address, telephone number and email address that you submit on this Site." *Id.* It also discloses that "[p]ages on our Site may contain 'web beacons,'" which "allow third parties to obtain information such as the IP address of the computer that downloaded the page on which the beacon appears, the URL of the page on which the beacon appears, the time the page containing the beacon was viewed, the type of browser used to view the page, and the information in cookies set by the third party." *Id.* Additionally, the Privacy Policy states that DDR Media "may use any PII, Non-PII, Log File information, Web Beacon Information, Cookie Information, and/or User

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

Profiles (collectively, 'User Information'), submitted by you, for any legally permissible purpose in [DDR Media's] sole discretion," including to "sell, rent, license or lease User Information collected on this site to third party marketers." *Id.*

## III. LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court ... for an order directing that ... arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. "Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 2650689, at *1 (N.D. Cal. 2011).

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That language reflects a "general policy favoring arbitration agreements," which creates a "strong presumption in favor of arbitration." *TFT-LCD*, 2011 WL 2650689, at *2 (N.D. Cal. 2011). Accordingly, federal "courts must rigorously enforce arbitration agreements," *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## IV. LEGAL ARGUMENT

### A. Plaintiff's Claims Are Subject To Mandatory Arbitration.

1. *Plaintiff agreed to submit all claims arising out of or relating to her use of DDR Media's website to binding arbitration.*

There can be no serious dispute that the arbitration agreement in the snappyrent2own.com Terms of Use covers all of Plaintiff's claims. That agreement provides, in no uncertain terms, that "[a]ny dispute arising out of or in connection with … your use of … this Site or your access to or links to this Site, shall be resolved by binding arbitration." Swaminathan Decl. Ex. 2. In fact, it makes that point repeatedly, including in text that is bolded and in all caps. *See id.*

Orrick, Herrington & Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 6 -

Defendants DDR Media's and Jornaya's
Motion To Compel Arbitration
Case No. 3:22-cv-03789

("**ARBITRATION IS MANDATORY AND THE EXCLUSIVE REMEDY FOR ANY AND ALL DISPUTES**") (emphasis in original); *see also id.* ("You and we each agree that any and all disputes or claims that relate to or arise from your use of or access to our Services, … including any contact from our subsidiaries, affiliates, or agents, shall be resolved exclusively through final and binding arbitration between us and you, or between our subsidiaries, affiliates, or agents and you, rather than in court."). That kind of language is "facially broad," and has been held "to apply to all aspects of the signatories' … relationship." *Silicon Valley Self Direct, LLC v. Paychex, Inc.*, 2015 WL 4452373, at *5 (N.D. Cal. 2015); *see also Kellison v. First Premier Bank*, 2018 WL 5880614, at *3 (C.D. Cal. 2018) ("When courts in [the Ninth] Circuit are confronted with an arbitration clause containing such broad language, 'all doubts are to be resolved in favor of arbitrability.'").

What is more, even if that language left any doubt as to whether Plaintiff's claims must be arbitrated, arbitration would still be required. That is because the agreement "clearly and unmistakably delegates questions of arbitrability to the arbitrator, both by including a delegation clause and by incorporating the American Arbitration Association's ('AAA') rules." *Norman v. Uber Techs., Inc.*, 2021 WL 4497870, at *2 (N.D. Cal. 2021). Indeed, the agreement states directly that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate, any part of it, or of this Agreement including, but not limited to, any claim that all or any part of the Agreement to Arbitrate or this Agreement is void or voidable." Swaminathan Decl. Ex. 2. And it provides that "[t]he arbitration will be conducted by the American Arbitration Association ('AAA') under its rules and procedures, *id.*, which in turn provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," AAA Commercial Arbitration Rule 7. And so even if it were uncertain whether Plaintiff's claims were covered by the arbitration agreement, that question would be for the arbitrator, not the Court, to decide. *See, e.g.*, *Norman*, 2021 WL 4497870, at *2.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-cv-03789

1     Nor can there be any doubt that Plaintiff agreed to all the terms described above. California law is clear that an individual is bound by a "website operator's 'terms of use'" if the "website puts a reasonably prudent user on inquiry notice of [those] terms." *Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838, at *3 (N.D. Cal. 2022) (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). "Whether a reasonably prudent user has inquiry notice of the agreement, in turn, depends on the design and content of the website and the agreement's webpage, i.e., the conspicuousness and placement of the 'Terms of Use' hyperlink." *Id.*

    Here, the hyperlink to the Terms of Use, "when viewed in the context of the overall design and content of the webpage," was at least as conspicuous as those courts have held to provide the requisite notice. *Pizarro*, 2022 WL 3357838, at *3. "[T]he general design of the webpage, which is comprised of only [four] data fields, is relatively uncluttered and has a muted, and essentially uniform, color scheme." *Id.* And the hyperlink itself—which "appear[s] directly [above] the ['Check Listings'] button" and "primarily surrounded by text no larger than the [link] itself"—is "underlined and adequately contrasted" with the background "such that a user would not be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks." *Id.* Indeed, a side-by-side comparison of the interface in *Pizarro* (Figure 2) with the one here (Figure 1) makes clear that, from the perspective of providing notice to website users, the two are virtually indistinguishable:

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

| Figure 1 – snappyrent2own.com | Figure 2 – *Pizarro* Interface |
|---|---|

Accordingly, just as the interface in *Pizarro* (on the right) provides "reasonably conspicuous" notice of the terms of service, sufficient to create a binding "agreement to arbitrate," *id.* at *3-4, so too does the interface here (on the left).

        2.     *Jornaya can enforce the arbitration agreement.*

As noted above, Plaintiff agreed to arbitrate "[a]ny dispute arising out of or in connection with … [her] use of … [DDR Media's] Site." Swaminathan Decl. Ex. 2. That describes every claim in Plaintiff's Complaint, all which are asserted equally against Jornaya and DDR Media. *See* Compl. ¶¶ 37-58. Although Jornaya was not a formal party to the arbitration agreement itself, it is nevertheless empowered to enforce the terms of the arbitration provision. This is because Plaintiff's claims "against [DDR Media are] inherently bound up with claims against [Jornaya]." *Hawkins v.*

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-cv-03789

*KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006). Thus, the two defendants are equally entitled to enforce the arbitration agreement governing those claims. *Id.* To hold otherwise—i.e., to allow only DDR Media and not Jornaya to compel arbitration—would be to invite "duplicative litigation which undermines the efficiency of arbitration," by having the same issues adjudicated in parallel by an arbitrator and a court. *Id.* It would also risk "denying [DDR Media] the benefit of the arbitration clause," by creating a situation where the very issues that Plaintiff and DDR Media agreed should be decided by an arbitrator would instead be decided by a court (with potentially preclusive effect). *Id.*

California law[4] thus seeks to avoid these outcomes by "allow[ing] a nonsignatory to invoke arbitration under the doctrine of equitable estoppel." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870-71 (9th Cir. 2021) (quoting *Metalclad Corp. v. Ventana Env't Organizational P'ship*, 109 Cal. App. 4th 1705, 1713 (2003)). That doctrine applies "when a signatory … su[es] nonsignatory defendants for claims that [1] are based on the same facts and [2] are inherently inseparable from arbitrable claims against signatory defendants." *Id.* (quoting *Metalclad*, 109 Cal. App. 4th at 1713).[5] As the Complaint itself makes clear, both of those conditions are met here.

*First*, Plaintiff's claims against Jornaya "are based on the same facts," *Franklin*, 998 F.3d at 870-71, as her claims against DDR Media. As Plaintiff herself puts it, her claims against both "Defendants" arise out of the "embedding [of] Jornaya's code onto s[n]appyrent2own.com," which she says "constitutes wiretapping under California law." Compl. ¶¶ 11-12. Indeed, Plaintiff "groups

---

[4] When determining if "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA," the Supreme Court has instructed federal courts to look to whether "the relevant state contract law allows the litigant to enforce the agreement." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021). Here—consistent with Plaintiffs' attempt to invoke California's CIPA statute—California law applies. Swaminathan Decl. Ex. 2 ("These Terms shall be governed by the laws of the state of California.").

[5] Courts sometimes shorthand this rule (imprecisely) by saying that equitable estoppel applies only "when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 252 F. Supp. 3d 934, 937 (N.D. Cal. 2017). But as the Ninth Circuit has recently explained, equitable estoppel is not limited to claims that "sound in contract" or "involve the interpretation of [the] agreements" containing the arbitration clause. *Franklin*, 998 F.3d at 872 & n.3 (quoting *Garcia v. Pexco*, 11 Cal. App. 5th 782, 788 (2017)). While "claims [that] rely on the written agreement" are *one example* of when equitable estoppel applies, they are not nearly the only one. *Id.* at 874 (granting motion to compel statutory claims that did not rely on the agreement containing the arbitration provision).

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 10 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

the two defendants together throughout the complaint, alleging the same misconduct and factual bases for liability as to both defendants." *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 2022 WL 10585178, at *9 (N.D. Cal. 2022) (allowing non-signatory to enforce arbitration agreement for this reason); *see also, e.g.*, Compl. ¶ 41 ("Defendants intentionally tapped the lines of communication between Plaintiff … and DDR Media's website."); Compl. ¶ 49 ("Defendants' conduct violated Cal. Penal Code § 631.").

*Second*, and for similar reasons, Plaintiff's claims against Jornaya "are inherently inseparable," *Franklin*, 998 F.3d at 870-71, from her claims against DDR Media. Not only does the Complaint *plead* all of its claims against Jornaya and DDR Media jointly, it also advances legal theories that make clear that Jornaya's liability rises and falls with DDR Media's. In other words, Jornaya's liability—if any—is completely derivative of DDR Media's conduct. If DDR Media's use of TCPA Guardian does not violate the law, then there can be no liability against Jornaya, and vice versa.

This case presents exactly the maneuvering that the equitable estoppel doctrine was meant to foreclose: "'where a party to an arbitration agreement attempts to avoid that agreement by suing a related party with which it has no arbitration agreement, in the hope that the claim against the other party will be adjudicated first and have preclusive effect in the arbitration.'" *Franklin*, 998 F.3d at 871 (quoting *Metalclad*, 109 Cal. App. 4th at 1714). Indeed, California state and federal courts alike have been clear that "such a maneuver should not be allowed to succeed." *Id.* (quoting *Metalclad*, 109 Cal. App. 4th at 1714). Because (as explained above) Plaintiff already "must submit [her] claims against [DDR Media] to arbitration," it would be "inequitable to prevent [Jornaya] from participating in [the] arbitration process and to allow the plaintiff[] instead to bring in litigation identical claims based on identical facts." *Hughes v. S.A.W. Ent., Ltd.*, 2019 WL 2060769, at *26 (N.D. Cal. 2019). In short, "[P]laintiff 'cannot attempt to link [Jornaya] to [DDR Media] to hold it liable for alleged [violations], while at the same time arguing that the arbitration provision only applies to [DDR Media] and not [Jornaya].'" *Martinez-Gonzalez* 2022 WL 10585178, at *8 (quoting *Garcia v. Pexco*, 11 Cal. App. 5th 782, 788 (2017)).

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 11 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

Plaintiff agreed to arbitrate all the claims that she raises in this lawsuit. Accordingly, this Court should require Plaintiff to abide by the terms of her agreement and compel arbitration.

## V.     CONCLUSION

For the foregoing reasons, this Court should compel Plaintiff to submit her claims to binding, individual arbitration.

DATED: December 15, 2022

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _/s/ Aravind Swaminathan_
ARAVIND SWAMINATHAN

Attorneys for Defendant, LEAD INTELLIGENCE, INC. D/B/A JORNAYA

By: _/s/ Joseph O'Keefe_
JOSEPH O'KEEFE

Attorneys for Defendant, DDR MEDIA, LLC ON BEHALF OF THE PROPER PARTY TO BE SUBSTITUTED DDR MEDIA, LLC TRADING/DOING BUSINESS AS ROYAL MARKETING GROUP

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 12 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

**Attestation re Electronic Signatures**

I, Aravind Swaminathan, attest pursuant to Northern District Local Rule 5-1(i)(3) that all other signatories to this document, on whose behalf this filing is submitted, concur in the filing's contents and have authorized this filing. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 15, 2022         By:     /s/ Aravind Swaminathan
                                      ARAVIND SWAMINATHAN

Orrick, Herrington & Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 13 -

Defendants DDR Media's and Jornaya's
Motion To Compel Arbitration
Case No. 3:22-cv-03789