Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Loretta Williams,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**DDR Media, LLC**, and **Lead Intelligence, Inc.**<br><br>Defendants. | Case No. 3:22-cv-03789-SI<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Hearing: February 17, 2023<br>Time: 10:00 AM<br>Judge: Hon. Susan Illston |

# CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ................................................................................................................1

II.  STATEMENT OF ISSUES TO BE DECIDED ...................................................................2

III. FACTUAL AND PROCEDURAL BACKGROUND..........................................................2

IV.  ARGUMENT........................................................................................................................3

   A.  The DDR Website Did Not Adequately Notify Or Obtain Assent From Williams Or The Class Members To Support Enforcement Of Its Terms, Including The Clause Mandating Arbitration ......................................................4

       1.  The DDR Website terms are not conspicuously disclosed. ....................5

       2.  Neither Plaintiff nor any other user manifested unambiguous assent to the DDR Website's Terms, including the clause mandating arbitration ................................................................................................................7

   B.  Jornaya cannot enforce the arbitration agreement—it is a nonparty to the supposed agreement, and Williams has done nothing to estop her from denying the agreement's application to her claims ..........................................................8

V.   CONCLUSION ..................................................................................................................11

# TABLE OF AUTHORITIES

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ........................................ 5-7

*Berman v. Freedom Fin. Network, LLC*, Case No. 18-cv-01060-DMR, 2018 WL 2865561 (N.D. Cal. June 11, 2018) ..................................................................................................................... 3

*Berman v. Freedom Fin. Network, LLC*, No. 18-CV-01060-YGR, 2020 WL 5210912 (N.D. Cal. Sept. 1, 2020) .......................................................................................................................... 4

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ................................ 4

*Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867 (9th Cir. 2021) ................................................ 10

*Javier v. Assurance IQ, LLC*, No. 20-CV-02860-CRB, 2023 WL 114225 (N.D. Cal. Jan. 5, 2023) ............................................................................ 10

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013) .................................................... 9

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ............................................... 4-5

*Pizarro v. QuinStreet, Inc.*, No. 22-CV-02803-MMC, 2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ...................................................................................................................................... 7

*Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2021 WL 3931995 (N.D. Cal. Sept. 2, 2021) ........................................................................... 4

**STATUTES & OTHER AUTHORITIES**

California Invasion of Privacy Act, Cal. Penal Code 631 ........................................................ 1, 10

## I. INTRODUCTION

This case challenges Defendants DDR Media, LLC's ("DDR")[1] and Lead Intelligence, Inc.'s d/b/a Jornaya ("Jornaya") (collectively "Defendants") violations of the California Invasion of Privacy Act, Cal. Penal Code 631 ("CIPA"). Specifically, Defendants have serially wiretapped the electronic communications of visitors to DDR's websites. Yet rather than admit wrongdoing— let alone take steps to stop intercepting such data—Defendants instead seek to avoid this lawsuit via arbitration.

Fortunately for Plaintiff and the alleged class, no enforceable arbitration agreement exists. Defendants' motion fails because the supposed arbitration agreement that Defendants' claim applies here was contained within an unenforceable browsewrap (or hybridwrap) agreement. That is, the Terms are "disclosed" in small font buried near the end of a paragraph of fine print. The text is also gray on a gray background. It is difficult to read and bears none of the hallmarks of a conspicuous notice. Even if the website were conspicuous, which it is not, Defendants offer no evidence that Plaintiff ever manifested any assent. While their Motion alludes to Williams clicking a "Check Listings" button that appears "directly" above the hyperlink containing the Terms (mot. at 8), the disclosure itself specifies that users only assent to the Terms by clicking a **separate** "Get Started" button displayed at the bottom of the webpage. Fatal to their Motion, Defendants have not provided any evidence that Plaintiff ever clicked the "Get Started" button. Put simply, the DDR website is insufficient to show an agreement to arbitrate with *any* user, Williams included.

Finally, even if the Court were to find that a contract to arbitrate exists, Jornaya has no right to enforce it. Jornaya is a non-signatory, and Williams's claims do not rely on the existence of the Terms nor are they intertwined with the Terms. Hence, Plaintiff is not otherwise estopped from denying the application of such Terms. As such, Jornaya is not in a position to compel any supposedly valid arbitration agreement.

For these reasons, and as explained further below, the Court should deny Defendants' motion to compel arbitration.

---

[1] Plaintiff agrees that the complete name of Defendant DDR is DDR Media, LLC d/b/a Royal Marketing Group.

OPPOSITION TO MOTION TO COMPEL ARBITRATION   1

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether the DDR Website's Terms and Conditions are displayed in a manner that is sufficient to constitute reasonably-conspicuous notice of the Terms to which Defendants seek to bind Plaintiff.

2. Whether Plaintiff took an action that unambiguously manifests her assent to the Terms at issue.

3. Whether Jornaya, as a non-signatory to the agreement, can enforce the arbitration clause under a theory of equitable estoppel.

## III. FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2022, Williams filed her Complaint, alleging that DDR and Jornaya violated CIPA by wiretapping Plaintiff's communications on the DDR's website and alleging that they thereby also violated California's constitutional right to privacy and unfair competition law. (*See* Compl., dkt. 1 at ¶¶ 1–3, 12–13.) As will be proven at the appropriate time following necessary discovery, Plaintiff seeks to certify a class action on behalf of all consumers who, like Plaintiff, made communications to DDR through its websites that were unlawfully intercepted or recorded without consent. (*Id.* ¶¶ 26, 28.) To redress Defendants' unlawful conduct, Plaintiff seeks statutory damages for herself and the class, as well as injunctive relief requiring Defendants to cease their practice of wiretapping electronic communications without consent. (*Id.* ¶ 27.)

In response to Plaintiff's Complaint, Defendants have filed a motion to compel arbitration. (Dkt. 29.) In support of its motion, Defendants submitted a Declaration of Aravind Swaminathan, Jornaya's counsel of record. (Dkt. 29-1.) In his declaration, Swaminathan sets forth a screenshot of DDR's snappyrent2own website (hereafter "DDR Website"), along with the Terms and Conditions and the Privacy Policy[2] available on the website. (*Id.* ¶¶ 2-4.) On the final page of the DDR webpage in small gray font on a gray background, the webpage includes the following disclosure:

---

[2] While not relevant to the instant motion, it is worth noting that the hyperlink displayed to access the Privacy Policy is currently not functioning and does not appear to have been functioning historically. (Peluso Decl. ¶¶ 2-3.)

OPPOSITION TO MOTION TO COMPEL ARBITRATION       2

> By clicking the "Get Started" button, I am agreeing by my electronic signature to give SnappyRent2Own, NHAProgram and its partners my prior express written consent and permission to send emails, as well as call and send to me recurring text messages at the cellphone number(s) I provided above and to any other subscriber or user of these cellphone number(s), using an automatic dialing system at any time from and after my inquiry to SnappyRent2Own, NHAProgram for purposes of all federal and state telemarketing and Do-Not-Call laws, in each case to market to me products and services and for all other purposes. I understand that my telephone company may impose charges on me for these contacts. I understand that my consent is not required to buy any of these business's products or services and it can be revoked at any time. For SMS message campaigns: Text STOP to stop and HELP for help. Terms & Conditions/privacy policy apply. In addition, I agree to the <u>Terms of Use</u> and the <u>Privacy Policy</u>. I also authorize the auto dealers and financial institutions that receive my request to order my credit report to determine my creditworthiness. I understand that SnappyRent2Own, NHAProgram does not make credit decisions and is not a lender or broker.

(Dkt. 29-2.) While not expressly stated in Defendants' declaration, Defendants contend that Plaintiff agreed to the Terms and Privacy Policy, which were buried in the fine print accessible only through hyperlinks. (*Id.*) The arbitration agreement that Defendants seek to enforce is contained within the Terms. (Dkt. 29-3, pg. 5.)

While Defendants have the burden to produce the Terms to which they seek to bind Plaintiff, Defendants oddly produced the *current* version of the Terms that are available on the DDR Website. (*See* Dkt. 29-2[3].) Plaintiff does not have access to the Terms as they were displayed on December 10, 2021—the date that Defendants assert that Plaintiff visited the subject website. (Compl. ¶ 20.) Plaintiff can, however, produce the version of the Terms that were in place on May 25, 2022 (*See* May 25, 2022 Terms and Conditions, attached as Ex. 1 to Peluso Decl.), which reveal that there were likely material differences in the substance of the arbitration agreement in place at the time that Plaintiff visited the website and today.

Based on these facts and as set forth below, the Court should deny Defendants motion to compel arbitration.

IV.   **ARGUMENT**

"[A]rbitration 'is a matter of consent, not coercion.'" *Berman v. Freedom Fin. Network,*

---

[3] The bottom of each page of Exhibit 1 to the Swaminathan Declaration reflects that it was obtained on December 14, 2022, at 1:09 p.m., or one-day prior to the filing of the Motion.

OPPOSITION TO MOTION TO COMPEL ARBITRATION     3

*LLC*, Case No. 18-cv-01060-DMR, 2018 WL 2865561, at *1 (N.D. Cal. June 11, 2018) (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010)). A court deciding whether to compel arbitration must first determine: (1) "whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply." *Berman v. Freedom Fin. Network, LLC*, No. 18-CV-01060-YGR, 2020 WL 5210912, at *1 (N.D. Cal. Sept. 1, 2020) (quoting *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014)) (emphasis in original). Important here, even in the context of internet commerce, the basic principles of contract law remain the same: a mutual manifestation of assent "is the touchstone of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

As explained below, Defendants' motion to compel should be denied. The DDR Website's Terms were not displayed in a conspicuous manner sufficient to bind any consumer and no assent was obtained from Williams. Even if an enforceable agreement to arbitrate is found to exist, Jornaya, as a non-signatory, is not entitled to enforce the agreement.

### A. The DDR Website Did Not Adequately Notify Or Obtain Assent From Williams Or The Class Members To Support Enforcement Of Its Terms, Including The Clause Mandating Arbitration.

Broadly speaking, internet contracts typically fall into one of two categories: clickwrap agreements, where users are required to click on an "I Agree" box after being presented with terms and conditions; and browsewrap agreements, where terms and conditions are posted via hyperlink at the bottom of a webpage. *Nguyen*, 763 F.3d at 1175-76. Some websites present a hybrid of these two categories (often referred to as "hybridwrap" or "sign-in wrap" agreements) by notifying the user of the existence of terms and conditions and, "instead of providing an 'I agree' button, advis[ing] the user that he or she is agreeing to the terms of service when registering or signing up." *Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2021 WL 3931995, at *3 (N.D. Cal. Sept. 2, 2021).

> The Ninth Circuit has applied browsewrap principles to these hybridwrap agreements:
> Courts have also been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before

> proceeding with use of the website. . . .
>
> But where, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract. Whether a user has inquiry notice of a browsewrap agreement, in turn, depends on the design and content of the website and the agreement's webpage.

*Nguyen*, 763 F.3d at 1176–77 (citations omitted); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Inquiry notice is found where: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856 (citation omitted).

There is no inquiry notice here. The Terms are not conspicuous, and users do not manifest unambiguous assent.

**1.      The DDR Website terms are not conspicuously disclosed.**

Defendants claim that "the hyperlink to the Terms of Use, 'when viewed in the context of the overall design and content of the webpage,' was at least as conspicuous as those courts have held to provide the requisite notice." (Mot. at 8.) The record confirms the opposite. The DDR Website's Terms were not displayed in a conspicuous manner.

In *Berman*, the Ninth Circuit set out a framework regarding what constitutes "reasonably conspicuous notice" and declined to enforce a hybrid agreement far more attention-grabbing than the website here. *Berman*, 30 F.4th at 856. First, to be conspicuous the notice "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* In *Berman*, the font was printed in "tiny gray font considerably smaller than the font used in the surrounding website elements." *Id.* The "comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else." *Id.* at 857. The text was "further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text." *Id.*

Second, while terms may be disclosed through a hyperlink, "the fact that a hyperlink is present must be readily apparent." *Id.* at 857. "Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable

link exists." *Id.* Rather, utilizing "contrasting font color (typically blue) and the use of all capital letters" can alert a user the text provides a pathway to another webpage. *Id.* Put simply, "[c]onsumers cannot be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to 'ferret out hyperlinks.'" *Id.*

In this case, the operative notice is substantially less conspicuous than the disclosures analyzed in *Berman*. *See Berman*, 30 F.4th at 859, Appendix A; *Berman* Disclosures, attached as Exhibit 2 to Peluso Decl.) Indeed, the language used to supposedly notify users that they would be bound by those Terms is displayed in tiny gray font on a gray background. (*See* Dkt. 29-2.) In *Berman* the font was a contrasting color from the background, and the court found the language to be insufficient. *See Berman*, 30 F.4th at 859. Added to this, the font is significantly smaller than the surrounding text, the text submission boxes, and the "CHECK LISTINGS" button, which is set off on a large blue button—all of which naturally draws consumers' focus anywhere but the Terms. (*Id.*)

Next, the "Terms and Conditions" hyperlink is also not readily apparent. While the hyperlink is underlined, it is neither capitalized nor is it set off in the typical blue color, which would denote the existence of a hyperlink.[4] (*Id.*) Added to this, the Terms are buried near the end of the fine print. Indeed, consumers would need to read through 16 lines of fine print to even see the agreement to the Terms. But "[w]ebsite users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857. When considering the webpage as a whole, the Terms are even less noticeable than the terms and conditions links analyzed in *Berman*. (*Compare* Exhibit 2 to Peluso Decl., *with* Dkt. 29-2.) Just the *Berman* court held, simply underscoring the Terms is insufficient to alert Williams or any reasonably prudent user that a clickable link exists.

Defendants' Motion doesn't cite or address the substance of *Berman* at all. Instead, Defendants rely extensively on *Pizarro v. QuinStreet, Inc.*, No. 22-CV-02803-MMC, 2022 WL

---

[4] Ironically, Defendants included circles to draw the Court's attention to the hyperlinks in their brief. (Mot. at 4.) Apparently, the Terms were not "readily apparent" as displayed.

OPPOSITION TO MOTION TO COMPEL ARBITRATION    6

3357838 (N.D. Cal. Aug. 15, 2022) to claim that the court enforced a "virtually indistinguishable" disclosure. (Mot. at 8-9.) But *Pizarro* is easily distinguishable. First, the Terms in *Pizarro* are displayed in contrasting black font on a white background. *See id.* at *1; *see also* Mot. at 9. And unlike the Terms at issue in this case, the *Pizarro* Terms are set off as a separate sentence, which is the first agreement displayed on the webpage. *Id.* Finally, the *Pizarro* disclosure specifies the method of agreeing to the Terms by clicking "See My Rates" button, which is in close proximity to the Terms. As explained next, the same is not true in this case. Put simply, *Pizarro* is inapposite.

In short, the DDR Website failed to provide its consumers adequate notice of its Terms, including the mandatory arbitration clause. Without adequate notice, there is no enforceable agreement to arbitrate. Accordingly, the Motion should be denied.

   **2.**  **Neither Plaintiff nor any other user manifested unambiguous assent to the DDR Website's Terms, including the clause mandating arbitration.**

In addition to failing to afford users conspicuous notice of the terms, the DDR Website also fails secure unambiguous manifestation of assent—the second requirement before a contract can be enforced. *Berman*, 30 F.4th at 856 (citation omitted). Instead, the action that Defendants claim Plaintiff took to manifest assent is contrary to the DDR Website's specified method of assent.

*Berman* also addressed what constitutes an "unambiguous manifestation of assent". There, the defendant had claimed that clicking a large "continue" button was sufficient to manifest assent where the terms were "directly above the button". 30 F.4th at 857-858. But "even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Id.* at 858 (quoting *Nguyen*, 763 F.3d at 1179). Rather, the text notice "must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* There, the defect could have easily been cured "by including language such as, "By clicking the Continue >> button, you agree to the Terms & Conditions." *Id.*

Applied here, the DDR Website similarly lacks unambiguous assent. While Defendants do not expressly state Plaintiff's method of assent, it alludes to the proximately of the Terms to the "CHECK LISTINGS" button that "Plaintiff would have been required to push to proceed". (Mot. at 3 & 8.) The problem for Defendants is that this is not how users must manifest assent. Rather,

the disclosure states that "By clicking the 'Get Started' button" the users agree to the Terms, along with various other disclosures. (Dkt. 29-2, pg. 1 (emphasis added).) Hence, the language "explicitly notif[ies]" users of the action they must take to be bound to the Terms. That is, users must click the "Get Started" button, which appears near the bottom of the DDR webpage. (*See* Dkt. 29-2, pgs. 2-3.) Defendants have proffered no evidence that Plaintiff ever clicked any "Get Started" button, and the Court should not permit Defendants to turn around and contradict themselves by later claiming that she did. Instead, Defendants contend she clicked the "CHECK LISTINGS" button to "proceed", but this action, on its own, does not manifest assent to any agreement—especially in light of the fact that the DDR Website specifies an alternative means of assent.

As a final point here, the Court should not re-write the disclosure to benefit Defendants. Rather, because online providers have "complete control" over their website's design, "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers". *Id.* (quoting *Nguyen*, 763 F.3d at 1179). As explained above, the DDR Website falls far short. While it could have included a check box to manifest assent or specified that clicking the "CHECK LISTINGS" button manifests assent, it did neither.

In short, because Defendants have proffered no evidence that Plaintiff ever manifested assent as the disclosure requires, there cannot be any unambiguous manifestation of assent to the Terms, and there is no enforceable agreement to arbitrate her claims. Accordingly, Defendants' Motion should be denied.

   **B.**  **Jornaya cannot enforce the arbitration agreement—it is a nonparty to the supposed agreement, and Williams has done nothing to estop her from denying the agreement's application to her claims.**

Jornaya also asserts that it is "equally entitled to enforce the arbitration agreement" under the doctrine of equitable estoppel because Plaintiff's claims against DDR are "inherently bound up" with the claims against Jornaya. (Mot. at 9-10.) This argument misunderstands equitably estoppel as well as the claims at issue.

Under California law,[5] a non-signatory may enforce an arbitration agreement as a function of the doctrine of equitable estoppel, applicable under two circumstances: "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying contract, . . . and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'" *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (citations omitted) (alterations in original). In either of the two circumstances, the claims at issue must be intimately related to obligations set forth in the agreement:

> In any case applying equitable estoppel to compel arbitration despite the lack of an agreement to arbitrate, a nonsignatory may compel arbitration only when the claims against the nonsignatory are founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause. In other words, allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough: the allegations of interdependent misconduct must be founded in or intimately connected with the obligations of the underlying agreement

*Id.* at 1133 (emphasis in original). In other words, equitable estoppel only applies when the signatory to a valid agreement containing an arbitration clause must rely on the obligations imposed by the underlying agreement in asserting its claims against the non-signatory. *Id.* at 1129.

Plaintiff does not seek to hold Jornaya to a single term contained within the purported Terms and Conditions. In its motion, Defendants do not argue that Plaintiff's claims against DDR rely upon the Terms at issue. Indeed, it cannot do so—Plaintiff's claims are based on the California Constitution and California statutes. She has not asserted any breach of contract or any claims that are founded in or intertwined with the contract, and in fact disputes the existence of any alleged agreement between herself and DDR. While she may have alleged concerted misconduct

---

[5] "The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).

OPPOSITION TO MOTION TO COMPEL ARBITRATION           9

between Defendants, this alone is not enough to support equitable estoppel for a non-signatory to enforce arbitration against her. *See Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 873 (9th Cir. 2021) (finding that a nonsignatory defendant cannot invoke equitable estoppel against a signatory plaintiff unless the claims are "intimately founded in and intertwined with the underlying contract obligations." (quoting *Kramer*, 705 F.3d at 1129)). Rather, Plaintiff asserts that no such agreement exists, and that, as explained above, DDR did not adequately notify Plaintiff of the Terms by which it now seeks to bind her, and it did not obtain a manifestation of her assent to any such Terms. In short, Plaintiff did not enter into an agreement to arbitrate her claims against DDR. Even if she had done so, her claims against Jornaya are not "intimately connected" with any obligations established by the terms and conditions that DDR contends are applicable to this case. Plaintiff's claims against Defendants are independent of any supposed agreement containing an arbitration clause—and, in fact, no such enforceable agreement exists.

Additionally, Defendants also get it wrong when they asserts that the claims against DDR are "inherently bound up" with the claims against Jornaya. (Mot. at 9.) While the claims asserted against both Defendants allege a violation of the same section, Cal. Penal Code § 631(a), each defendant violated the statute by separate actions. Indeed, § 631(a) creates four avenues for relief:

> (1) where a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument";
>
> (2) where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit";
>
> (3) where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; and
>
> (4) where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

*Javier v. Assurance IQ, LLC*, No. 20-CV-02860-CRB, 2023 WL 114225, at *4 (N.D. Cal. Jan. 5, 2023) (citing Cal. Penal Code § 631(a)). As in *Javier*, Plaintiff asserts that Jornaya violated the second prong, and DDR violated the fourth prong by employing and using Jornaya's software. As

such, should the Court compel Plaintiff to arbitrate her claims against DDR, Plaintiff can and will replead her separate claims against Jornaya.

Accordingly, Jornaya's attempt to invoke the doctrine of equitable estoppel should be rejected. The claims asserted against Jornaya are neither intertwined with the Terms, nor are they inseparable from the claims asserted against DDR.

## V. CONCLUSION

Defendants' motion to compel arbitration should be denied. Plaintiff was not given adequate notice of—and did not manifest assent to—the DDR Website's Terms, including the purported arbitration clause, and thus there is no agreement to arbitrate to enforce against Plaintiff. Further, because the claims asserted against Jornaya are not intertwined with Terms at issue, Jornaya cannot enforce the arbitration agreement based on the doctrine of equitable estoppel. Accordingly, the Court should deny Defendants' motion, permit the parties to proceed, and award any such relief as it deems necessary and just.

*     *     *     *     *

Respectfully submitted,

Dated: January 13, 2023

**LORETTA WILLIAMS**, individually and on behalf of all others similarly situated,

By:   /s/ Patrick H. Peluso
One of Plaintiff's Attorneys

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210

Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

*Counsel for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on January 13, 2023.

                                          /s/ Patrick H. Peluso