ARAVIND SWAMINATHAN (*admitted pro hac vice*)
aswaminathan@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

Attorneys for Defendant
Lead Intelligence, Inc. d/b/a Jornaya


JOSEPH O'KEEFE (*pro hac vice application forthcoming*)
jokeefe@mcleodbrunger.com
MCLEOD BRUNGER PLLC
10375 Park Meadows Drive, Ste. 260
Lone Tree, CO  80124
Telephone:     720 443 6600

Attorney for Defendant
DDR Media, LLC on behalf of the proper Party to be
Substituted DDR Media, LLC trading/doing business as
Royal Marketing Group

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DDR MEDIA, LLC, a Pennsylvania limited liability company, and LEAD INTELLIGENCE, INC., a Delaware corporation, d/b/a Jornaya,<br><br>Defendants. | Case No. 3:22-cv-03789-SI<br><br>**DEFENDANTS DDR MEDIA'S AND JORNAYA'S REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**<br><br>Date:     February 17, 2023<br>Time:    10:00 a.m.<br><br>Judge:  Hon. Susan Illston |

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
REPLY ISO MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

**TABLE OF CONTENTS**

Page

I.    ARGUMENT ....................................................................................................................1

      A.    Plaintiff agreed to submit all claims arising out of or relating to her use of DDR
            Media's website to binding arbitration. ...........................................................................1

      B.    Jornaya can enforce the arbitration agreement. ...............................................................5

II.   CONCLUSION ................................................................................................................8

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Berman v. Freedom Fin. Network, LLC*,
  30 F. 4th 849 (9th Cir. 2022) ...................................................................................2, 3

*Dohrmann v. Intuit, Inc.*,
  823 Fed. Appx. 482 (9th Cir. 2020) ...........................................................................4

*Franklin v. Cmty. Reg'l Med. Ctr.*,
  998 F.3d 867 (9th Cir. 2021) ...................................................................................6, 7

*Garcia v. Pexco*,
  11 Cal. App. 5th 782 (2017) .........................................................................................6

*Hicks |Park LLP v. ING Bank, FSB*,
  2011 WL 5509097 (C.D. Cal. 2011).............................................................................4

*Kindred Nursing Centers Ltd. P'ship v. Clark*,
  581 U.S. 246 (2017).........................................................................................................5

*Lee v. Ticketmaster LLC*,
  817 Fed. Appx. 393 (9th Cir. 2020) .............................................................................4

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,
  2022 WL 10585178 (N.D. Cal. 2022) ...........................................................................6

*Metalclad Corp. v. Ventana Environmental Organizational Partnership*,
  109 Cal. App. 4th at 1713 ...............................................................................................6

*Peter v. DoorDash, Inc.*,
  445 F. Supp. 3d 580 (N.D. Cal. 2020) .........................................................................3

*Pizarro v. QuinStreet, Inc.*,
  2022 WL 3357838 (N.D. Cal. 2022) ............................................................... *passim*

**Statutes**

Federal Arbitration Act ...........................................................................................................5

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- i -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
REPLY ISO MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

Plaintiff's Opposition to Defendants' Motion to Compel Arbitration ("Opposition" or "Opp.") opts at nearly every opportunity to sidestep—rather than contest—the key issues. Plaintiff does not dispute, for instance, that that the theories her suit advances would not only outlaw, but criminalize, the crucial tools relied on by nearly the entire online comparison shopping and "lead-generation" industry to comply with federal law. (Instead, she attempts to fault Defendants for not "admit[ting] wrongdoing." Opp. 1.). She likewise does not dispute that the Terms of Use for snappyrent2own.com (the website she used to generate this lawsuit) contain a provision that unambiguously requires Plaintiff to submit all of her claims to binding, individual arbitration. (Instead, she claims that she is simply immune from that promise.) Nor does she dispute that arbitration provision applies—by its terms—equally to her claims against Jornaya as those against DDR Media.[1]  (Instead, she simply insists that Jornaya is prohibited from enforcing them.) Plaintiff's backwards arguments get it wrong at every turn. This Court should hold that the arbitration agreement applies according to its plain terms, and thus requires all of Plaintiff's claims—against both Jornaya and DDR Media—to be submitted to binding, individual arbitration.

## I.      ARGUMENT

### A.      Plaintiff agreed to submit all claims arising out of or relating to her use of DDR Media's website to binding arbitration.

Plaintiff does not dispute that the Terms of Use on snappyrent2own.com includes provision that that requires all of her claims to be submitted to binding, individual arbitration. *See* Mot. 6-7; Opp. 4. Instead, Plaintiff insists that she should be exempt from that agreement, because a hyperlink to those Terms was "not displayed in a conspicuous manner." Opp. 5. As already explained in Defendants' Motion (at 8-9), however, *Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838 (N.D. Cal. 2022), forecloses Plaintiff's argument. Indeed, one need only line up the website interface in *Pizarro* (which was held to have "conspicuously" displayed a link to its Terms of Use) next to the website interface here to see that the two are materially indistinguishable.

---

[1] As noted in Plaintiff's Opposition, "Plaintiff agrees that the complete name of Defendant DDR is DDR Media, LLC d/b/a Royal Marketing Group."  Opp. 1, n.1.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 1 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
REPLY ISO MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



**Figure 1 – snappyrent2own.com**



**Figure 2 – *Pizarro* Interface**

16

17      Plaintiff responds largely by discussing a different case, *Berman v. Freedom Fin. Network,*

18  *LLC*, 30 F. 4th 849 (9th Cir. 2022).  *See* Opp. 5-6.  But *Pizarro*—which was issued after *Berman*—

19  already explains (in a discussion wholly ignored by Plaintiff) why *Berman* is inapplicable here.  *See*

20  *Pizarro*, 2022 WL 3357838, at *3 ("*Berman* is distinguishable on its facts.").  Specifically, *Pizarro*

21  explains that "the textual notice containing the 'Terms & Conditions' hyperlink in *Berman* was

22  displayed 'in a tiny gray font so small that it was barely legible to the naked eye,' surrounded by

23  'comparatively larger' text that 'naturally directed' the user's attention everywhere else,' and

24  'sandwiched' between a 'large green button with text that stated, in easy-to-read white letters,

25  "Continue»,"' and two other large buttons that allowed the user to 'select a gender.'"  *Id.* (quoting

26  *Berman*, 30 F.4th at 854, 856-57).  Additionally, "the textual notice [in *Berman*] was further

27  deemphasized by the overall design of the webpage, in which other visual elements, including a

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
REPLY ISO MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

bright blue border and several fields requiring the user to input information, drew the user's attention away from the barely readable critical text." *Pizarro*, 2022 WL 3357838, at *3.  But as *Pizarro* recognized, none of those was true of the interface in that case—and none is true of the interface on snappyrent2own.com:  Instead, both in *Pizarro* and here, the relevant hyperlinks are "primarily surrounded by text no larger than the notice itself," and "the general design of the webpage[s], which [are] comprised of only [a few] data fields, is relatively uncluttered and has a muted, and essentially uniform, color scheme," thereby avoiding the eye-catching distractions that *Berman* found fatal.  *Id.* At bottom, *Pizarro* itself already accounts for *Berman*—and indeed, explains in detail exactly why, under *Berman*, both interfaces pictured above reflect a "conspicuous" link to the Terms of Use that is sufficient to render them binding.  2022 WL 3357838, at *3.

Where Plaintiff does engage with *Pizarro* directly, her attempt to parry that decision boils down to playing up three minor differences between the interfaces in that case and in this one.  All of these fail.

First, her primary contention is that *Pizarro* does not govern here because the website in that case involved a "white background," whereas snappyrent2own.com used a light grey one.  Opp. 7.  Unsurprisingly, courts have rejected exactly this argument.  *See Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) (compelling arbitration because, "[d]espite Plaintiff's characterization of the font as gray-on-gray, the text [of the link to the Terms] contrasts clearly with the background and is plainly readable."); *Pizarro*, 2022 WL 3357838, at *3 (a link "adequately contrast[s]" with the background as long as a user would not 'be required to …aimlessly click words on a page in an effort to ferret [it] out").

Second, Plaintiff argues that the link to the Terms in *Pizarro* were more conspicuous than the one here, because "unlike the [link to the] Terms at issue in this case, the *Pizarro* [link was] set off [in] a separate sentence," and "the first" link displayed on the webpage.  Opp. 7.  As an initial matter, however, Plaintiff is wrong—twice over—in her characterization of the *Pizarro* interface:  The link to the Terms in *Pizarro* was not "set off [in] a separate sentence," but rather was included in the same sentence as the links to both the Privacy Notice and the Consent to Receive Electronic Communications.  *See supra* Figure 2.  Moreover, the link to the Terms in *Pizarro* was not "the first"

link displayed on the webpage, but the second (after the link to the *Pizarro* Privacy Notice).  *See id.*

Just as important, Plaintiff's argument errs as a matter of law.  There is no rule that where a website

states that clicking a button will constitute assent to multiple hyperlinked agreements, only the first

one counts.  *See Pizarro*, 2022 WL 3357838, at *3 (compelling arbitration based on Terms of Use

that was not separately set off in its own sentence, and was not the first link displayed on the page);

*see also Dohrmann v. Intuit, Inc.*, 823 Fed. Appx. 482, 484-85 (9th Cir. 2020) (same, and rejecting

the argument made in dissent "[m]ore than one terms-of-use link on a sign-in screen by itself is

enough to confound a reasonably prudent user").  The relevant question when determining whether

a link was adequately conspicuous is thus not what order the link appears in as compared to other

links, but whether Plaintiff "had a legitimate opportunity to review" the one at issue.  *Lee v.*

*Ticketmaster LLC*, 817 Fed. Appx. 393, 395 (9th Cir. 2020).  And in that respect, the

snappyrent2own.com website scores even higher than the *Pizarro* one:  On snappyrent2own.com,

the Terms of Use hyperlink is located *above* the button to proceed, meaning that a user *cannot*

continue on to the next page without at least scrolling past the Terms of Use hyperlink.  On the

*Pizarro* website, by contrast, the Terms of Use hyperlink was located *below* the button to proceed,

meaning that a user could have continued with their navigation without ever seeing the link to the

Terms of Use at all.  If anything, then, the hyperlink on snappyrent2own.com was even more likely

to be noticed by a user than the one held to be binding in *Pizarro*.

Finally, Plaintiff contends that "the *Pizarro* disclosure specifies the method of agreeing to

the Terms by clicking [the] 'See My Rates' button," whereas "the same is not true in this case."

Opp. 7.  Plaintiff does not dispute, however, that the disclosure on the DDR Media website begins

by saying:  "By clicking the 'Get Started' button, I am agreeing …" to (among other things) be

bound by the Terms of Service and Privacy Policy.  *See supra* Figure 1.  Instead, she maintains that

because the large blue button at the bottom of Figure 1 actually reads "CHECK LISTINGS" instead

of "Get Started," this disclosure has no effect.  But to "allow[] this technicality to defeat Defendant's

petition for arbitration would be in direct contradiction to public policy."  *See Hicks |Park LLP v.*

*ING Bank, FSB*, 2011 WL 5509097, at *2 (C.D. Cal. 2011).  The entire point of the inquiry is to

determine whether a "reasonably prudent user" would have had "inquiry notice of the terms."

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
REPLY ISO MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

*Pizarro*, 2022 WL 3357838, at *3. And here, there can be no serious dispute that, as a real-world matter, any user of snappyrent2own.com would have been just as aware of the Terms of Use, regardless of whether the button at the bottom of Figure 1 read "CHECK LISTINGS" or "Get Started."

What is more, Plaintiff's argument, if accepted, would have sweeping and deleterious consequences. Huge swaths of websites have users manifest their assent to all kinds of terms—not just arbitration agreements, but also privacy policies, refund policies, payment terms, prohibited uses, just to name a few—by clicking a button. And as the Supreme Court has emphasized time and again, the rules of contract formation must apply the same to all those agreements, whether they involve arbitration or not. *See, e.g.*, *Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 248 (2017) ("The Federal Arbitration Act (FAA or Act) requires courts to place arbitration agreements on equal footing with all other contracts."). Plaintiff's rule, therefore, would have the effect of nullifying *all of those* agreements in their entirety on any website, any time there was even a slight discrepancy between the text on the button itself and the descriptor of the button in the relevant disclosure. That kind of absurd result is clearly not what the law requires.

**B.     Jornaya can enforce the arbitration agreement.**

Plaintiff does not dispute that the plain text of the snappyrent2own.com arbitration provision—which requires her to arbitrate "[a]ny dispute arising out of or in connection with … [her] use of … [DDR Media's] Site," Swaminathan Decl. Ex. 2—covers all of her claims against Jornaya. Instead, she maintains that even if she entered into a binding, contractual obligation to arbitrate all her claims against Jornaya, there is nothing that Jornaya (or this Court) can do to enforce that promise. *See* Opp. 8-11. As explained in Defendants' Motion (at 10), that is exactly the kind of gamesmanship that the doctrine of equitable estoppel is meant to avoid.

Plaintiff responds that the prerequisites of equitable estoppel are not met here, but only by misstating the law. Specifically, Plaintiff asserts that "equitable estoppel only applies when the signatory to a valid agreement containing an arbitration clause must rely on the obligations imposed by the underlying agreement in asserting its claims against the non-signatory." Opp. 9. But DDR Media and Jornaya already explained—in a discussion entirely ignored by Plaintiff—that the Ninth

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
REPLY ISO MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

1   Circuit has rejected exactly that contention.  *See* Mot. at 10, n.5.  In fact, one of the very cases

2   Plaintiff herself cites says—directly contrary to her argument—that equitable estoppel *is not* limited

3   to claims that "sound in contract" or "involve the interpretation of [the] agreements" containing the

4   arbitration clause.  *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 872 & n.3 (9th Cir. 2021)

5   (quoting *Garcia v. Pexco*, 11 Cal. App. 5th 782, 788 (2017)), *cited at* Opp. 10.  As that case made

6   clear—by granting motion to compel statutory claims that did not rely on the agreement containing

7   the arbitration provision—a situation where "claims rely on the written agreement" is but *one*

8   *example* of when equitable estoppel applies, not the only one.  *Id.* at 874.  Rather, as the Ninth Circuit

9   explained in *Franklin*, equitable estoppel allows a nonsignatory to enforce an arbitration clause any

10  time "a signatory … su[es] nonsignatory defendants for claims that [1] are based on the same facts

11  and [2] are inherently inseparable from arbitrable claims against signatory defendants." *Id.* (quoting

12  *Metalclad*, 109 Cal. App. 4th at 1713).

13      Here it is clear here that both of those conditions are met.  As to the first requirement, Plaintiff

14  does not even dispute that it is satisfied.  *See* Opp. 10.  (Nor could she, given that her entire Complaint

15  "groups the two defendants together throughout." *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,

16  2022 WL 10585178, at *9 (N.D. Cal. 2022); *see also, e.g.*, Compl. ¶ 41 ("Defendants intentionally

17  tapped the lines of communication between Plaintiff … and DDR Media's website.").)  As to the

18  second, Plaintiff likewise does not dispute that her claims against Jornaya are completely derivative

19  of her claims against DDR Media—so that if DDR Media is not liable, Jornaya is not either.  *See*

20  Mot. at 11; Opp. at 10.  Instead, Plaintiff asserts only that her claims against Jornaya are not

21  "'inherently bound up' with the claims against" DRR Media because "each defendant violated the

22  statute by separate actions." Opp. 10-11.  But that proves far too much:  Different defendants will

23  *always* take different actions to give rise to a plaintiff's claims—and so Plaintiff's position would

24  *never* allow equitable estoppel to apply.  Unsurprisingly, the Ninth Circuit has refused to adopt such

25  a rule.  Indeed, in *Franklin* itself, the court recognized that the signatory and non-signatory took

26  separate actions—with the non-signatory being accused of "altering [the plaintiff's] time records to

27  show a meal period that was never taken," or "requiring [the plaintiff] to perform substantial work

28  off-the-clock and without compensation," whereas the signatory was merely "responsible for

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
REPLY ISO MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

1   reviewing the timekeeping records and raising any discrepancies" with the non-signatory.  998 F.3d
2   at 875.  (In fact, the *Franklin* plaintiff formally made "allegations … leveled only at the [non-
3   signatory] and not [at the signatory]," leaving the signatory out of the lawsuit altogether. *Id.*)  Yet
4   the Ninth Circuit had little trouble concluding that these technical quibbles were all irrelevant:
5   Because "the substance of her claims" implicated both the signatory and non-signatory, the court
6   concluded that "it would be unfair for [her] to avoid arbitration." *Id.*  So, too, here.

7        Plaintiff thus tells on herself when she insists that "should the Court compel Plaintiff to
8   arbitrate her claims against DDR, Plaintiff can and will replead her separate claims against Jornaya."
9   Opp. 11.  That king of gamesmanship—"where a party to an arbitration agreement attempts to avoid
10  that agreement by suing a related party with which it has no arbitration agreement, in the hope that
11  the claim against the other party will be adjudicated first and have preclusive effect in the
12  arbitration"—is exactly what equitable estoppel was meant to stop.  *Franklin*, 998 F.3d at 871
13  ("[S]uch a maneuver should not be allowed to succeed").

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
REPLY ISO MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

1    **II.      CONCLUSION**

2           For the foregoing reasons, this Court should compel Plaintiff to submit her claims against

3    both DDR Media and Jornaya to binding, individual arbitration.

4

5     DATED: January 27, 2023                    Respectfully Submitted,

6                                                ORRICK, HERRINGTON & SUTCLIFFE LLP

7

8                                                By:_____*/s/ Aravind Swaminathan*_____
                                                         ARAVIND SWAMINATHAN
9
                                                 Attorneys for Defendant, LEAD
10                                               INTELLIGENCE, INC. D/B/A JORNAYA

11

12                                               By:_____*/s/ Joseph O'Keefe*_____
                                                         JOSEPH O'KEEFE
13
                                                 Attorneys for Defendant, DDR MEDIA, LLC
14                                               ON BEHALF OF THE PROPER PARTY TO
                                                 BE SUBSTITUTED DDR MEDIA, LLC
15                                               TRADING/DOING BUSINESS AS ROYAL
                                                 MARKETING GROUP
16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
REPLY ISO MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789

1

**Attestation re Electronic Signatures**

2

I, Aravind Swaminathan, attest pursuant to Northern District Local Rule 5-1(i)(3) that all

3

other signatories to this document, on whose behalf this filing is submitted, concur in the filing's

4

contents and have authorized this filing.  I declare under penalty of perjury under the laws of the

5

United States of America that the foregoing is true and correct.

6

7

Dated: January 27, 2022                            By: _____/s/ Aravind Swaminathan_____
                                                                 ARAVIND SWAMINATHAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

DEFENDANTS DDR MEDIA'S AND JORNAYA'S
REPLY ISO MOTION TO COMPEL ARBITRATION
CASE NO. 3:22-CV-03789