JOSEPH O'KEEFE
jokeefe@mcleodbrunger.com
McLeod Brunger PLLC
10375 Park Meadows Drive, Ste. 260
Lone Tree, CO 80124
Tel.: (720) 443-6600

LYN R. AGRE
lagre@glennagre.com
Glenn Agre Bergman & Fuentes
44 Montgomery Street, Suite 2410
San Francisco, CA 94104
Tel.: (212) 970-1602

Attorneys for Defendant
DDR Media, LLC, a Pennsylvania limited liability,
d/b/a Royal Marketing Group

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Loretta Williams, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DDR Media, LLC, a Pennsylvania limited liability company, d/b/a Royal Marketing Group, and Lead Intelligence, Inc., a Delaware corporation, d/b/a Jornaya,<br><br>Defendants. | Case No. 3:22-cv-03789-SI<br><br>Judge: Hon. Susan Illston |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS (DOC. NO. 47)**

**AND NOW COMES,** Defendant, DDR Media, LLC, a Pennsylvania limited liability company, d/b/a Royal Marketing Group, by and through her undersigned counsel of record, replying in support of its Motion to Dismiss (Doc. No. 47), as follows:

**A. Plaintiff Has *NOT* Adequately Stated Her Claims For Relief Against Defendants For Violation Of CIPA's Wiretapping Prohibition.**

Plaintiff alleges that Jornaya violated the second prong of Section 631(a) by intercepting and learning the contents of her communication with DDR, as well as allegations that DDR

violated the fourth prong by "partner[ing] with (and conspir[ing] with) Jornaya" to do so. (Dkt. 43 at ¶¶ 39–44.) As this Court recognized, specifically, this was allegedly done via the internet:

> *Williams alleges that when she visited SnappyRent2own.com on December 10, 2021, "the Jornaya TCPA Guardian replay function created a video that captured Williams' keystrokes and clicks on the website." Id. ¶ 21. TCPA Guardian also captured the date and time of the visit, her IP address, and her geographic location, as well as Williams' name, address, and phone number. Id. [*3] ¶¶ 21-23. Williams alleges that the recording was done without her consent, and that defendants did not inform website visitors that their strokes and clicks would be recorded. Id. ¶ 24*

*Williams v. DDR Media, LLC*, 2023 U.S. Dist. LEXIS 33319 (N.D. Cali, 2.28.23). As was noted in *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D. Cali, 7.15.21):

> *While it is true that several federal courts interpreting the CIPA have held that the statute may apply to technologies beyond telephones or telegraphs, those holdings have largely been limited to the statute's second clause, which prohibits persons from reading, or attempting to read, the "contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable" without consent or authorization.*

*Id. citing Matera*, 2013 U.S. Dist. LEXIS 172784, 2016 WL 8200619, at *18 (finding that § 631(a)'s first prong is "limited to communications passing over 'telegraph or telephone' wires, [**8] lines, or cables"); *In re Google Inc.*, 2013 U.S. Dist. LEXIS 172784, 2013 WL 5423918, at *20 (explaining that the first prong of CIPA is "limited to communications passing over 'telegraphic or telephone' wires, lines, or cables"); *accord In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020) ("Google Assistant") (holding that CIPA claim under first clause must be dismissed if allegations do not show that technology at issue "operates using telegraph or telephone wires"). The *Mastel* Court went on to conclude:

> *It is therefore unlikely that that § 631(a)'s first clause may apply to new technologies like the internet. In fact, the overwhelming weight of authority requires a plaintiff to plausibly allege that a defendant intentionally tapped or made an unauthorized connection with a "telegraph or telephone wire, line, cable, or instrument" to state a claim under § 631(a)'s first clause. Cal. Penal Code § 631(a) (emphasis added). The complaint herein plainly does not involve any allegations concerning "telephone wires, lines, or cables." (See generally Compl.)*

Id. Therefore, Plaintiff plainly cannot meet the first clause.

It is true, unlike § 631(a)'s first clause, courts interpreting the second clause have generally held that it is not limited to communications sent via telephone or telegram wire, line, or cable. *Id.*

*citing Matera*, 2016 U.S. Dist. LEXIS 107918, 2016 WL 8200619, at *18; *In re Google Inc.,* 2013 U.S. Dist. LEXIS 172784, 2013 WL 5423918, at *20; Google Assistant, 457 F. Supp. 3d at 826. However, these courts have also noted that the second clause only imputes liability when the defendant reads, or attempts to read, a communication that is "in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within" California." Id. (emphasis added); *Mireskandari v. Mail,* No. CV 12-02943 MMM (FFMx), 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129559, *10 n.44 (C.D. Cal. July 30, 2013) (finding that plaintiff had failed to plausibly allege CIPA claim under second clause because complaint failed "plausibly to plead that NSC intercepted any electronic communication while it was in transit; at most, he alleges the illegal disclosure of data NSC held in storage"). And, by their averments, that is not what occurred here. Therefore, Plaintiff cannot meet the second clause either.

And, lastly, as to the fourth clause, what conspiracy is DDR alleged to have participated in? Other than conclusory allegations of such, the only relationship alleged within the operative complaint is just an ordinary vendor relationship, nothing more. In fact, Plaintiff herself alleges that her information was hijacked by Jornaya before it even got to DDR:

> *... that Jornaya intercepted the communications while they were in the process of being sent to DDR, and she supports her claim by describing the extent of the recording, which occurred from the moment she arrived on the site and while she was communicating information to DDR, as well as providing a link to the recording hosted by Jornaya*
>
> *... that, while she was transmitting her personal information to DDR, her keystrokes and clicks were being recorded by Jornaya, a third party to whom she was not transmitting her information. (See Dkt. 1 at ¶¶ 20–26.)…*

There are no allegations DDR secretly placed keystroke software on Plaintiff's computer nor that it even knew what Jornaya was doing "in the process" of information being sent to it. Why? Because there was no conspiracy, just a vendor, vendee relationship, with the latter operating under terms of adhesion. *See, e.g., Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021)(Dismissing the case, holding that the third-party was merely a "vendor that provides a

software service that captures its clients' data, hosts it on [vendor]'s servers, and allows the clients to analyze their data.").

**B. Plaintiff Has NOT Stated A Claim For Relief For Invasion Of Privacy.**

Plaintiff claims to have alleged "a reasonable expectation of privacy surrounding her browsing activities and dissemination of personal information, including the expectation that she may do so "without observation or interference" and "without being subjected to secret wiretaps." (Dkt. 43 at ¶ 55.)". She says her decision to share her information with DDR to take advantage of an offering does not amount to a decision to share her information with everybody, nor does it anticipate or authorize the employment of a third-party eavesdropper to record her keystrokes, mouse movements, and personal information.

The closest analogue to Plaintiff's claims is other "invasion of privacy" torts such as intrusion upon seclusion. *Facebook Tracking*, 956 F.3d at 598 ("[V]iolations of the right to privacy have long been actionable at common law."). The Ninth Circuit has expressly noted that, because the right to privacy "encompasses the individual's control of information concerning his or her person," allegations that a company has violated a plaintiff's right to privacy under the California Constitution by collecting personal information without the plaintiff's consent involve a sufficiently "concrete" injury, even if there are no additional allegations of publication, because the invasion itself causes harm to the plaintiff's interest in controlling the information. *Id.; see also Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 983 (9th Cir. 2017) (""privacy torts do not always require additional consequences to be actionable . . . [in] the tort of intrusion upon seclusion . . . the 'intrusion itself' makes the defendant liable" (*citing* Restatement (Second) of Torts § 652B cmt. b. (Am. Law Inst. 1977))).

But there are no less than twelve cases in which courts have dismissed an invasion of privacy claim under the California Constitution at the pleading stage. While no hard and- fast rule has been

set out for determining when an alleged invasion of privacy is "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right," *Hill*, 7 Cal. 4th at 37, one important factor that courts often rely on is whether the plaintiff alleges that the defendant used the private or confidential information obtained for some improper purpose. In *Gonzales v. Uber Technologies, Inc.,* for instance, the court held that the plaintiff had failed to state a claim under the California Constitution against Uber because, while he had alleged that Uber obtained his name and home address, "there [were] no allegation[s] as to what Uber did, if anything, with this information." 305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018). "Without more allegations as to what, if anything, Uber did with this information, plaintiff has not plausibly alleged a serious invasion of privacy." Id. at 1093.

Similarly, in *White v. Social Security Administration*, applying California law, a federal district court held that plaintiff's invasion of privacy claim failed because, while the plaintiff had alleged that the defendant had "made unauthorized photocopies of identity documents, without any allegation that he sold, distributed, or otherwise improperly used the information," the plaintiff had failed to adequately allege a sufficiently serious invasion of privacy. 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015). Even in *Folgelstrom v. Lamps Plus, Inc*., where the plaintiff had alleged that the defendant had obtained his name and zip code through misrepresentation and then used this information to obtain his address so that it could send him mailed advertisements, the court dismissed the plaintiff's claim because the alleged use was "not an egregious breach of social norms, but routine commercial behavior." 195 Cal. App. 4th 986, 992, 125 Cal. Rptr. 3d 260 (2d Dist. 2011) ("[W]e have found no case which imposes liability based on the defendant obtaining unwanted access to the plaintiff's private information which did not also allege that the use of plaintiff's information was highly offensive.").

There is no ongoing monitoring or anything else that connects this case to those cases wherein the invasion was found sufficient to sustain a claim. *See, e.g. Hart*, 526 F. Supp. 3d at 600–03 (monitoring of location data by weather app); *Revitch*, 2019 WL 5485330, at *3 (monitoring of mouse clicks, keystrokes, identity and browsing data); *see also In re Facebook*, 956 F.3d at 601–06 (compiling of personalized profiles from browsing histories and habits). Though Plaintiff alleges that Jornya has access to all of the data collected, she does not allege that it was "sold, distributed, or otherwise improperly used the information." *See White*, 111 F. Supp. 3d at 1053. Nor has she even alleged that defendants intended to use her information for any purpose.

Yet another factor that some courts have relied on -not present herein, is the "pervasiveness" of the alleged invasion. In *Facebook Tracking*, the Ninth Circuit held that the plaintiffs had adequately pled a claim for invasion of privacy where they had alleged that Facebook used internet browser plug-ins to track which websites they visited, *even after they had logged out of Facebook*. 956 F.3d 589, 596 (9th Cir. 2020). Not only did *Facebook Tracking* involve allegations that Facebook compiled this information into personal user profiles and sold those profiles to advertisers to generate revenue, the Ninth Circuit specifically distinguished the case from other invasion of privacy claims which had been dismissed at the pleading stage because the *Facebook Tracking* plaintiffs had alleged that Facebook's invasion of privacy continued even after they had ceased using the application. *Id.* at 606 n.8 (citing cases).

Finally, some courts have held that the information obtained by the defendant may itself be so sensitive or private that the alleged intrusion alone suffices to state a claim. However, these cases almost always involve information which is clearly more private or sensitive then at issue in this case. *See Hill*, 7 Cal. 4th at 40-41 (holding that plaintiffs had stated a claim for invasion of privacy against NCAA based on requirement that athletes provide urine samples under closely monitored conditions, thus implicating "a human bodily function that by law and social custom is generally

performed in private and without observers"); *Goodman v. HTC America, Inc.,* 2012 U.S. Dist. LEXIS 88496, 2012 WL 2412070, *15 (W.D. Wash. 2012) (holding collection of continuous geolocation data sufficient under California Constitution because such data may reveal private information such as "trips to the psychiatrist, the plastic surgeon, the abortion clinic, the AIDS treatment center, the strip club, the criminal defense attorney, the by-the-hour motel, union meeting, mosque, synagogue or church, the gay bar and on and on" (*quoting United States v. Jones,* 565 U.S. 400, 415, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012) (Sotomayor, J., concurring)). Even "highly personal information, including social security numbers, does not 'approach [the] standard' of actionable conduct under the California Constitution and thus does not constitute a violation of" a plaintiff's right to privacy. *In re iPhone Application Litig*., 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (*citing Ruiz v. Gap, Inc*., 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008)).

**C. Conclusion**

The Amended Complaint fails to state a claim and fails to show any injuries even if it did state a claim. Nothing the Amended Complaint describes is unlawful, unfair, or violates any reasonable expectation of privacy the Plaintiff had. Therefore, this Court must dismiss the Plaintiff's Amended Complaint pursuant to either Fed. R. Civ. P. 12(b)(6) or Rule 12(b)(1).

Respectfully Submitted May 3, 2023.

McLeod Brunger PLLC

By: /s/Joseph A. O'Keefe
Joseph A. O'Keefe

***Attorney for Defendant***
***Royal Marketing Group***

**Attestation re Electronic Signatures**

I, Joseph A. O'Keefe, attest pursuant to Northern District of California Local Rule 5-1(i)(3) that all other signatories to this document, on whose behalf this filing is submitted, concur in the filing's contents, and have authorized this filing. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 3, 2023.

By: *<u>/s/Joseph A. O'Keefe</u>*
Joseph A. O'Keefe

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2023, a true and correct copy of the foregoing was electronically filed and served, pursuant to 28 U.S.C. § 1746, via CM/ECF, addressed to the following:

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Steven L. Woodrow (admitted *pro hac vice*)
swoodrow@woodrowpeluso.com
Patrick H. Peluso (admitted *pro hac vice*)
ppeluso@woodrowpeluso.com
Taylor T. Smith (admitted *pro hac vice*)
tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809
***Counsel for Plaintiff***

Aravind Swaminathan
**Orrick, Herrington & Sutcliffe**
701 5th Avenue, Suite 5600
Seattle, WA 98104
(206) 839-4300
Fax: (206) 839-4301
Email: aswaminathan@orrick.com

Rebecca Clair Harlow
**Orrick Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 415-773-5598
Email: rharlow@orrick.com
***Counsel for Jornaya***

McLeod Brunger PLLC

*By: /s/Joseph A. O'Keefe*
Joseph A. O'Keefe