ARAVIND SWAMINATHAN (*admitted pro hac vice*)
aswaminathan@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Lead Intelligence, Inc. d/b/a Jornaya

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DDR MEDIA, LLC, a Pennsylvania limited liability company, and LEAD INTELLIGENCE, INC., a Delaware corporation, d/b/a Jornaya,<br><br>Defendants. | Case No. 3:22-cv-03789-SI<br><br>**DEFENDANT JORNAYA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date: June 2, 2023<br>Time: 10:00 a.m.<br><br>Judge: Hon. Susan Illston |

## TABLE OF CONTENTS

Page

I. ARGUMENT ..... 2

A. Plaintiff Fails To State A Claim Under Section 631 ..... 2

1. Jornaya cannot be liable under Section 631 because it is a party to the communications at issue. ..... 2

2. The FAC fails to state a claim under Section 631(a), because it fails to plead facts showing that Jornaya intercepted a communication "in transit." ..... 6

3. The FAC fails to state a claim under Section 631(a), because it fails to plead facts showing that Jornaya read the "contents" of any message. ..... 7

B. Plaintiff Does Not Dispute That She Fails To State A Claim Under The UCL. ..... 8

C. Plaintiff Fails To State A Claim For Invasion Of Privacy. ..... 8

D. Leave To Amend Would Be Futile. ..... 10

II. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................7

*Byars v. Hot Topic, Inc.*,
2023 WL 2026994 (C.D. Cal. 2023)....................2, 3, 5

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ....................10

*Cody v. Boscov's, Inc.*,
2023 WL 2338302 (C.D. Cal. 2023)....................2, 3, 4, 5

*Esparza v. Lenox Corp.*,
2023 WL 2541352 (N.D. Cal. Mar. 16, 2023)....................4

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................2, 5, 9

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ....................9

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................8, 9

*Javier v. Assurance IQ, LLC*,
2023 WL 114225 (N.D. Cal. Jan. 5, 2023).................... *passim*

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................6

*Licea v. Am. Eagle Outfitters, Inc.*,
2023 WL 2469630 (C.D. Cal. Mar. 7, 2023)....................3, 4

*Licea v. Cinmar, LLC*,
2023 WL 2415592 (C.D. Cal. Mar. 7, 2023)....................3, 4

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)....................8, 9

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ....................3, 4, 6

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....................8

*NovelPoster v. Javitch Canfield Group*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ....................6

*Ribas v. Clark*,
38 Cal. 3d 355 (1985). 2023 WL 114255 ....................3, 4, 5

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) ....................7, 8

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. 2022) ....................2

**Statutes**

California Penal Code Section 631 .................... *passim*

Unfair Competition Law ....................1, 8, 10

**Rules**

Fed. R. Civ. P. 11 ....................10

**Other Authorities**

California Constitution....................1, 10

On essentially every point raised in Defendant Lead Intelligence, Inc., d/b/a/ Jornaya's ("Jornaya") Motion to Dismiss, Plaintiff's positions fly in the face of precedent. In fact, in most cases, Plaintiff admits this. She concedes, for instance, that there are "a number of cases"—indeed a "trend" in the caselaw—supporting Jornaya's contention that it is not a "third party" to Plaintiff's communications, and hence not liable under California Penal Code Section 631. *See* Opp. 8, 12. Similarly, Plaintiff acknowledges that "several cases" have held that the kinds of information that she alleges were recorded here—namely "name, email address, and phone number"—are mere "record information," which separately defeats her Section 631 claim. Opp. 6. Plaintiff likewise confesses that "several cases" support Jornaya's position that Plaintiff has failed to allege a sufficiently "egregious" violation of social norms as required to state a claim for an invasion of privacy under the California Constitution. Opp. 14. And in response to Jornaya's explanation that Plaintiff has failed to allege facts showing an injury to money or property, as required to sustain a claim under the Unfair Competition Law (UCL), Plaintiff simply abandons the claim altogether.

Indeed, Plaintiff not only acknowledges that precedent, but also largely seems to recognize that it is on point: Rather than attempting to distinguish most of the precedent invoked by Jornaya, Plaintiff often urges the Court to simply disregard it—suggesting that there are splits in authority on the "third party" issue under Section 631, and the "egregious" violation of social norms issue under the California Constitution, such that this Court could fairly go either way. *See* Opp. 8-10, 14. But Plaintiff's manufactured splits collapse under scrutiny. On the "third party" question, for instance, there is an overwhelming—and rapidly growing—consensus holding that technology providers like Jornaya are not liable under Section 631; whereas Plaintiff relies primarily on one outlier decision going the other way. And on the "egregious" violation of social norms question, Plaintiff cites no case under which the conduct alleged here—the collecting of Plaintiff's name, address, and telephone number on a website into which she voluntarily typed that information—could give rise to a claim under the California Constitution.

The law on all relevant points is thus clear and consistent. The acts alleged in Plaintiff's First Amended Complaint ("FAC") do not give rise to claims under Section 631, the UCL, or the California Constitution. The FAC must thus be dismissed in its entirety.

# I. ARGUMENT

## A. Plaintiff Fails To State A Claim Under Section 631.

### 1. *Jornaya cannot be liable under Section 631 because it is a party to the communications at issue.*

Plaintiff does not dispute that courts have held—repeatedly—that providers of technology materially indistinguishable from Jornaya's TCPA Guardian product at issue here cannot be liable under Section 631. *See, e.g.*, *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. 2022) (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *3 (N.D. Cal. 2021); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. 2021); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020)). That is because Section 631 "'appl[ies] only to eavesdropping by a ***third party***'" to the communications. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 (quoting *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979)) (emphasis added). A company (like Jornaya) that merely supplies a website operator with technology (like TCPA Guardian) is not itself a third party to any communications, but merely the provider of a "tool that [the website operator] uses to record its own communications." *Williams*, 2022 WL 17869275, at *3. Accordingly, Section 631 liability attaches only if the technology provider does something more—by acting with intent to make its own "use or potential future use [of the recorded information] beyond simply supplying this information back to [the website operator]." *Cody v. Boscov's, Inc.*, 2023 WL 2338302, at *2 (C.D. Cal. 2023); *accord, e.g.*, *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, *9 (C.D. Cal. 2023). The FAC makes no such allegation here.

Plaintiff's sole argument in response is to press dicta from one outlier decision in *Javier v. Assurance IQ, LLC*, 2023 WL 114225 (N.D. Cal. Jan. 5, 2023), in an attempt to argue that the overwhelming weight of caselaw was wrongly decided.[1] According to Plaintiff's reading of *Javier*, a technology provider can be liable under Section 631 simply for providing technology that a website operator uses to record its visitors' interactions, ***regardless*** of whether the provider itself makes, or

[1] Although she labels this only her "[f]irst" argument in response, Opp. 9, Plaintiff in fact makes no others. Instead, her entire Opposition on this point is dedicated to disparaging—not distinguishing—all of the many cases holding that technology providers like Jornaya are not third parties to any communications, and hence not subject to liability under Section 631.

means to make, its own independent "use or potential future use" of the recorded information. Opp. 9. But Plaintiff's reliance on *Javier* is both misplaced and has been repeatedly rejected by courts in this Circuit.

While Plaintiffs argue that *Javier* rejects the long line of authority that considers a vendor a lawful extension of a first party to the communication (and therefore not a third-party eavesdropper), the reasoning they rely on was premised on faulty arguments made by the parties in *Javier*[2] and flawed logic, and should be rejected. Indeed, courts in this Circuit have remained decidedly unpersuaded by *Javier*, and the consensus in support of Jornaya's position has only strengthened since that decision was handed down. Indeed, Jornaya is aware of at least five post-*Javier* decisions; none has adopted Plaintiff's position:

- *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (explaining that a "vendor that provided [a] software service that captured defendant's data, hosted data on vendor servers, and allowed defendant to analyze its own data" acts as "an extension of defendant" and is thus "not a third party eavesdropper under § 631(a)").

- *Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *7 (C.D. Cal. Mar. 7, 2023) (allegations that the defendant "deployed the [vendor]'s recording software only on defendant's websites and that the recordings were stored and accessed on [the vendor]'s servers suggested that the [vendor]'s software was merely a tool used by defendant and did not suggest [the vendor] was an independent third party" who could be liable under Section 631).

- *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *8 (C.D. Cal. Mar. 7, 2023) ("When a party captures and stores data, courts have found that they operate like an extension of the defendant (i.e. a tape recorder).").

- *Cody v. Boscov's, Inc.*, 2023 WL 2338302, at *2 (C.D. Cal. Mar. 2, 2023) (holding that "in order to establish" that a technology provider was a third party who could be liable under Section 631 "Plaintiff must provide facts suggesting that [the provider] [is] recording Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant").

- *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at *10 (C.D. Cal. Feb. 14, 2023) (where a "Defendant uses a third-party vendor to record and analyze its own data in aid of

[2] The Defendant in *Javier*, for instance, seemed to have misstated the test under the prevailing caselaw for whether a technology provider acted as a "third-party." Specifically, the *Javier* defendant seemed to argue third-party status turned solely on whether the provider actually made independent "use" of the recorded information. *See Javier*, 2023 WL 114255, at *5-*6. As explained below, that is both over- and underinclusive of the true test, and led the *Javier* Court to mistakenly believe that the determination of whether a provider is a third party was entirely redundant with the question of whether the provider was separately liable under Section 631's prohibition on the "use" of intercepted information. *See infra* pp.4-5.

> Defendant's business, not the aggregation of data for resale, [that] makes the third-party an 'extension' of Defendant's website, not a 'third-party eavesdropper'" who can be liable under Section 631).

*See also Esparza v. Lenox Corp.*, 2023 WL 2541352 (N.D. Cal. Mar. 16, 2023) (rejecting plaintiff's argument that Section 631(a) contains no direct party exception and his allegations of third-party eavesdropping) (citing *Byars*, 2023 WL 2026994, at *9). Notably, those decisions made clear that they were fully aware of the *Javier* decision—indeed, many cited *Javier* for other points. *See Sephora*, 2023 WL 2717636, at *7; *Cinmar*, 2023 WL 2415592, at *7-*8; *Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *6-*7. Nevertheless, none was moved by *Javier*'s mistaken conclusion on ***this*** point.

*Javier*'s conclusion has failed to take hold in this Circuit because the decision rests on incorrect arguments and faulty logic. As Plaintiff recounts, the *Javier* court was concerned that if liability for "willfully attempting to learn the contents or meaning of a communication in transit over a wire" under Section 631 turned on whether a technology provider made "use" of the information its technology recorded, that would "swallow" the statute's separately outlawing of "attempting to use or communicate information" so obtained. Opp. 9-10 (quoting *Javier*, 2023 WL 114225, at *6).[3] But that analysis rests on a fundamental misunderstanding of what makes a technology provider a liable "third party" versus a permissible extension of a direct party website operator for purposes of Section 631. Contrary to *Javier*'s assumption, whether a technology provider acts as a "third party" is not simplistically asking whether the provider made some "use" of the information. Rather, the operative question is whether the technology provider undertook its acts with the ***purpose*** of making some "use ***or potential future use*** beyond simply supplying this information back to Defendant." *Cody*, 2023 WL 2338302, at *2 (emphasis added). This well-established framework illustrates how the Section 631(a) "use" prong is not superfluous: A technology provider can qualify as a liable

[3] *Javier* also criticized the majority view for "add[ing] requirements that are not present" in the statutory text and which exceed the "California Supreme Court's stated rationale" in *Ribas v. Clark*, 38 Cal. 3d 355 (1985). *Javier*, 2023 WL 114255, at *6. But *Javier* itself inserts conditions that do not appear in the statutory text (or in *Ribas*), by exempting from Section 631 liability any company that "does not have the capability to use its record of interaction for any other purpose … but that of the [website operator]" or whose services have attained sufficient "ubiquity." *Javier*, 2023 WL 114225, at *6. Nothing about "capability" or "ubiquity" appears in either the text of Section 631 or the *Ribas* decision.

third party without being encompassed by the "use" prong if the provider records the information with the purpose of making some independent "future use" of it, but has not attempted to do so yet. *See Cody*, 2023 WL 2338302, at *2. And conversely, that provider can make "use" of the recorded information, but not qualify as a third party subject to Section 631 liability, if it "use[s]" the information only at the direction of the website operator. Accordingly, the question of whether a company simply "used" recorded data is both over- and underinclusive of the separate question of whether the company acted as a third party; in other words whether it "used" the information does not, by itself, answer the question. The question, as *Cody* explained, is whether the third party intended "use ***or potential future use*** beyond simply supplying this information back to Defendant." *Id. Javier* was thus wrong to assert that the prevailing view limiting Section 631 liability to third parties would "swallow" Section 631's separate "use" prong—and further wrong to conclude that the consensus view must be rejected in order to prevent that result.[4]

There is no basis in the pleadings, law, or logic for this Court to follow Plaintiff down *Javier*'s mistaken path. Indeed, the majority of courts to have recently considered the question have refused to do so. Should the Court find that *Javier*'s dicta should even be considered, this Court should decline to extend it and instead join the robust (and ever-growing) consensus, both before and after *Javier*: hold that Jornaya, who does no more than supply website operators with a tool to record their own communications, is not liable under Section 631. Indeed, Plaintiff does not dispute that she alleges no facts showing that Jornaya made or intended to make any independent use of the data recorded by TCPA Guardian. Her Section 631 claim must be dismissed.[5]

[4] Perhaps recognizing the weakness of *Javier*'s own reasoning, Plaintiff attempts to shore it up with her own take on California caselaw. Specifically, she insists that *Javier* must be right because the California Supreme Court and Ninth Circuit have stated that Section 631's purpose was to prevent "an outsider [from] … listen[ing] in" to conversations, *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985), and "to prevent the acquisitions of the contents of a message by an unauthorized third-party," *In re Facebook*, 956 F.3d 589, 608 (9th Cir. 2020). Opp. 12. But that simply begs the question. All agree that Section 631 is designed to prevent third parties from eavesdropping; the question here is whether a vendor who acts as an extension of a first party qualifies as a third-party eavesdropper. *See, e.g.*, *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at *10 (C.D. Cal. Feb. 14, 2023) (citing *Ribas* and finding vendor an extension of defendant's website, not a third party eavesdropper). And nothing in this portion of Plaintiff's brief even purports to speak to that issue.

[5] As a last-ditch effort to save her Section 631 claim, Plaintiff asserts that whether Jornaya qualifies as a third party cannot be decided at the pleadings stage. *See* Opp. 12. But as demonstrated by all of the caselaw cited in the first two paragraphs of this section (save *Javier*), that is simply untrue: Courts routinely dismiss Section 631 claims at the pleadings stage for exactly this reason. Again,

2. *The FAC fails to state a claim under Section 631(a), because it fails to plead facts showing that Jornaya intercepted a communication "in transit."*

Plaintiff does not dispute that her Section 631 claim separately fails if the FAC does not allege facts showing that Jornaya accessed her communications while they were "in transit passing through a wire or cable." Opp. 4; *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (explaining that this requires "acquisition of contemporaneous with transmission"). As courts have explained, however, such facts will be exceedingly uncommon, as electronic communications "are not typically intercepted during transmission." *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *10 (E.D. Cal. 2023). That is "because internet communications travel so quickly, there is only an incredibly narrow window during which an interception could occur." *Id.* Suppose, for instance, that a person spends twenty minutes typing a draft email on her computer, before finally hitting the "Send" button, at which point the information in the email is transmitted near instantaneously to the intended recipient's inbox, where it waits to be read. The only time when the email is "in transit" is during the "seconds or mili-seconds … following [the] send command" before it reaches the recipient's inbox. *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014) (quoting *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003)). The email is not "in transit"—and thus it is not a violation of Section 631 to read the email's contents—during either the time *before* the writer pushes "Send" or *after* the email arrives at its destination. *See id.* What Plaintiff alleges here, however, is no different than reading an email *before* it is sent. Specifically, Plaintiff says that the recording here "beg[u]n the moment she … visited the webpage," "prior to the point at which she would have clicked 'CHECK LISTINGS'" to "submit[] the information that she had typed." Opp. 4-5. Plaintiff's own theory, in other words, is that the recording occurred entirely *before* the information was transmitted back to DDR (which she says did not occur until she pressed the "CHECK LISTINGS" button)—not *while* the information was "in transit."

---

Plaintiff have offered no persuasive reason for this Court to depart from (what Plaintiff herself calls) that "trend," Opp. 12, in the caselaw.

3. *The FAC fails to state a claim under Section 631(a), because it fails to plead facts showing that Jornaya read the "contents" of any message.*

Plaintiff does not dispute that to state a claim under Section 631(a) she must plead facts showing that Jornaya unauthorizedly accessed "the contents of [her] communication," as opposed to merely accessing her "record information." Opp. 6-7; *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). And she concedes that much of the data that she alleges Jornaya's technology to have captured—namely, "the date and time of the visit, her IP address, and her geographic location," FAC ¶¶ 21-23—qualifies only as record information, not as message "contents." Opp. 7 ("The 'record information' incidental to her visit to the website, as noted in the complaint, include 'the date and time of the visit, her IP address, and her geographic location.'"). Additionally, Plaintiffs admits that "several cases" have also "found" that the rest of the information she alleges to have been recorded—"name, email address, and phone number," *see* FAC ¶ 21—also qualify only as "record information." Opp. 6; *see, e.g.*, *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014) (explaining that "names, mailing addresses, phone numbers," are not "contents" of a communication).

Plaintiff does not argue those cases were wrongly decided. Instead, she tries to distinguish them on the ground that here her "name, email address, and phone number" were not "generated as a result of the medium of communication," but instead were manually typed by Plaintiff into DDR's website as information "she intended to communicate." Opp. 7 ("Phone numbers and email addresses may be record information when related to phone calls and email exchanges, but they are not categorically excluded from being 'contents' of a communication."). That distinction is without any material difference. Courts have specifically rejected the argument that "only automatically generated data may constitute record information." *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014). Indeed, data like "name, email address," and "telephone number" is exactly the "type of information that the Ninth Circuit recognized as record information," and "[n]umerous courts in this district likewise have characterized such information as record information," whether input manually by the user through a website interface or automatically generated. *Id.* (citing *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *6 (N.D. Cal. 2013); *Obodai v. Indeed, Inc.*, 2013

WL 1191267, at *3 (N.D. Cal. Mar. 21, 2013)). Courts thus hold that even where a person intends to communicate her name, email address, and phone number—and even if she does so for some purpose other than merely facilitating a communication (such as to sign up for an account)—that information still qualifies only as "record information," not substantive message "contents," and so cannot form the basis for a Section 631 claim. *See id.* 720-21, 729.

**B. Plaintiff Does Not Dispute That She Fails To State A Claim Under The UCL.**

Plaintiff offers no response to Jornaya's argument (at Mot. 9) that Plaintiff has not alleged any economic injury and so fails to state a claim under the UCL. *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1144 (E.D. Cal. 2021) ("Numerous courts have held that disclosure of personal information alone does not constitute economic or property loss sufficient to establish UCL standing."). Accordingly, there is no dispute that Plaintiff's UCL claim must be dismissed.

**C. Plaintiff Fails To State A Claim For Invasion Of Privacy.**

Plaintiff acknowledges that Jornaya has cited "several cases" supporting its argument that the allegations in Plaintiffs' complaint fail to state a claim for an invasion of privacy. Opp. 14; *see, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (no "highly offensive" invasion of privacy by disclosing users' browsing histories to third parties); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (no intrusion claim based on collection and disclosure of users' data, including browsing histories). Indeed, Plaintiff does not dispute that those cases have held that even far more egregious acts—including "disclosure of personal information, including social security numbers"—are insufficiently egregious to state a privacy claim. *Low*, 900 F. Supp. 2d at 102. In response, Plaintiff just insists that there are other cases that come out differently. *See* Opp. 14.

This Court should reject any implication that this is a close call. What Plaintiff alleges here—that her "name, email address, and telephone number," that she supplied and other "record information" about her interaction with DDR's website were recorded, FAC ¶¶ 21-23—is far less invasive than the acts at issue in *any* of the cases cited by ***either*** Plaintiff or Jornaya. Most notably, in each of the cases Plaintiff cites, the defendant was alleged to have recorded not just information provided by the plaintiff in the course of interacting with a single website, but vast swaths of

information extending well beyond those bounds. *See Hart*, 526 F. Supp. 3d at 597 (considering allegation that defendant's software "tracked users' locations at all times, day and night, 365 days a year, even when the users did not have the App open"); *Revitch*, 2019 WL 5485330, at *3 (considering allegation that defendant "scanned [the user's] computer for files that revealed his identity and browsing habits"); *In re Facebook*, 956 F.3d at 601–06 (considering allegation that defendant collected "a comprehensive browsing history of an individual, no matter how sensitive the websites visited," even "after users had logged out," and then "correlated that history with the time of day and other user actions on the websites visited"). Here, by contrast, the FAC alleges only that Jornaya collected only limited and routine information that Plaintiff herself voluntarily provided in the course of interacting with a single DDR website.

Plaintiff has thus failed to cite any case that would hold the acts at issue here to be sufficiently egregious to support a claim for invasion of privacy. Jornaya, on the other hand, has cited numerous cases holding that even far more egregious acts—like disclosure of social security numbers—are insufficient. On the facts alleged here, then, there is no disagreement or "split": This kind of mundane conduct cannot support a claim for invasion of privacy.

Plaintiff's fallback argument that whether a defendant's conduct "constitutes an 'egregious' breach of social norms … cannot and should not be resolved at the pleadings stage" should be rejected. Opp. 14. That argument ignores wholesale the many cases Jornaya has already cited that do just that. *See, e.g.*, *Low*, 900 F. Supp. 2d at 1025 (dismissing invasion of privacy claims because "Plaintiffs have failed to establish that Defendant's conduct 'amounts to a serious invasion' of the protected privacy interest"); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d at 988 (dismissing intrusion on seclusion claims because "Plaintiffs' allegations do not plausibly rise to the level of intrusion necessary to establish an intrusion claim"); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993 (2011) (sustaining demurrer of invasion of privacy claims because "the conduct of which [plaintiff] complains does not meet the standard of 'highly offensive'"). This Court should do the same, and hold that Plaintiff fails as a matter of law to allege facts showing an egregious breach of social norms.

**D. Leave To Amend Would Be Futile.**

As demonstrated above, the issues raised by Jornaya's Motion to Dismiss are purely legal, rather than factual, in nature. In other words, the disputes between Plaintiff and Jornaya are not about whether the FAC pleaded sufficient facts to render Plaintiff's allegations plausible, but rather whether Section 631 and the California Constitution (there is no longer a live dispute on the UCL) encompass what Plaintiff describes here at all. And so if the Court decides, as it should, that Section 631 and the California Constitution simply do not apply in this case, there is nothing that an amendment to supply additional facts could do to alter that conclusion. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (leave to amend may be denied where "amendment would be futile").

Perhaps recognizing that, Plaintiff only seriously asks for leave to amend if "the Court intends to read a 'use' requirement into the second prong of Section 631(a)." Opp. 16; *see also* Opp. 12 ("[S]hould the Court here elect to follow the opposing trend to 'swallow the third prong' by reading a use requirement in the second prong of CIPA, Plaintiff requests an opportunity to amend her complaint accordingly."). But even in that circumstance, Plaintiff offers no suggestion for how she could cure the defect through adding additional facts. Presumably if Plaintiff could allege, consistent with Rule 11, that Jornaya supplied TCPA Guardian with the aim of making its own independent use of the captured information, she would have done so in either of the first two iterations of her Complaint. At the very least, one would have expected her to say so in her request for leave to amend. But Plaintiff has given no reason to think that amendment, even on the sole point she highlights as warranting leave to amend, would be fruitful. Accordingly, the Court should deny her request.

**II. CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiff's FAC in its entirety with prejudice.

DATED: May 3, 2023

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Aravind Swaminathan*
ARAVIND SWAMINATHAN
Attorneys for Defendant, LEAD INTELLIGENCE, INC. D/B/A JORNAYA