Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
    ppeluso@woodrowpeluso.com
Steven L. Woodrow*
    swoodrow@woodrowpeluso.com
Taylor T. Smith*
    tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

Attorneys for Plaintiff and the Class

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Loretta Williams,** individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **DDR Media, LLC,** a Pennsylvania limited liability company, **d/b/a Royal Marketing Group,** and **Lead Intelligence, Inc.,** a Delaware corporation, **d/b/a Jornaya,** <br><br> Defendants. | Case No.  3:22-cv-03789-SI <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

1.      Plaintiff Loretta Williams ("Plaintiff" or "Williams") brings this Second Amended Class Action Complaint and Jury Demand ("Complaint") against Defendants DDR Media, LLC d/b/a Royal Marketing Group ("DDR Media") and Lead Intelligence, Inc. d/b/a Jornaya ("Jornaya", and collectively with DDR Media, "Defendants") to obtain redress for, and to put an end to, Defendants' serial wiretapping of the electronic communications of visitors to DDR

1  Media's websites, including snappyrent2own.com.

2      2.     The wiretaps are embedded in the computer code on DDR Media's websites and are

3  used by Defendants to covertly observe and record visitors' keystrokes and clicks in real time.

4      3.     Such actions violated the California Invasion of Privacy Act, Cal. Penal Code 631

5  ("CIPA"), and invaded Plaintiff's and class members' privacy rights.

6      4.     Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to

7  herself and her own acts and experiences, and, as to all other matters, upon information and belief,

8  including investigation conducted by her attorneys.

9  **NATURE OF THE ACTION**

10      5.     Defendant Jornaya offers a product to lead generators and telemarketers known as

11  "TCPA Guardian". This product is designed to allow these lead generators and telemarketers to

12  attempt compliance with the federal Telephone Consumer Protection Act by documenting alleged

13  evidence of prior express consent to receive telemarketing calls provided on websites.

14      6.     One feature of Jornaya's "TCPA Guardian" product is a "visual playback" function,

15  which records, in real time, a person's interaction with a website that is using TCPA Guardian.

16      7.     As Jornaya states on its "Guardian TCPA Reports," "Jornaya provides a neutral, 3rd

17  party technology-based platform that tracks the origin and history of a lead event and the consumer

18  actions that occurred at that event. Jornaya's technology witnesses more than one hundred million

19  lead events each month - tracking the actions that occur when a consumer fills out a lead form."

20  *See* "Plaintiff's Guardian Report," attached hereto as Exhibit A.

21      8.     Jornaya enters into partnerships with various telemarketers and lead generators who

22  wish to utilize TCPA Guardian. Jornaya then provides its software and scripts to those partners.

23      9.     One such entity is DDR Media, which uses TCPA Guardian on its website

24  scrappyrent2own.com, along with other websites that it operates.

25      10.    DDR Media knows that TCPA Guardian captures strokes, clicks, and other

26  interactions on its websites—it is a primary reason why DDR Media contracts with Jornaya for the

27  TCPA Guardian product in the first place.

28      11.    Pursuant to their agreement with each other, DDR Media installed TCPA Guardian

1  by embedding Jornaya's code onto scrappyrent2own.com and, on information and belief, many of

2  DDR Media's other lead generation websites.

3     12.    Unfortunately for Defendants, their conduct constitutes wiretapping under

4  California law because Defendants do not secure prior express consent before recording their

5  movements on the websites.

6     13.    As a result of Defendants' violations of the CIPA, Plaintiff Williams and the

7  members of the Class were deprived of their privacy rights guaranteed to them by California law,

8  and they are thus entitled to injunctive relief and statutory damages in the amount of $5,000 for

9  each violation. *See* Cal. Penal Code § 637.2.

10                                     **PARTIES**

11    14.    Plaintiff Williams is a natural person and citizen of the State of California.

12    15.    Defendant DDR Media is a Pennsylvania limited liability company with its

13  principal place of business located in Harrisburg, Pennsylvania.

14    16.    Defendant Jornaya is a Delaware corporation with its principal places of business

15  located in Conshohocken, PA.

16                              **JURISDICTION AND VENUE**

17    17.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28

18  U.S.C. § 1332(d), *et seq.* ("CAFA"), because the class consists of over 100 people, at least one

19  member of each class is from a State other than the state of the Defendants, and the amounts in

20  controversy are over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

21    18.    This Court has personal jurisdiction over Defendants because they conduct

22  substantial business in this District, the unlawful conduct alleged in the Complaint occurred in

23  and/or was directed to this District, and Plaintiff's claims arise out of each Defendants' forum-

24  related activities.

25    19.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of

26  the events and omissions giving rise to the claims occurred in this District.

27                              **FACTS SPECIFIC TO PLAINTIFF**

28    20.    On or around December 10, 2021, Williams visited scrappyrent2own.com, a

SECOND AMENDED CLASS ACTION       - 3 -
COMPLAINT

1  website owned and operated by DDR Media.

2       21.    During that visit, the Jornaya TCPA Guardian replay function created a video that

3  captured Williams' keystrokes and clicks on the website. It also captured the date and time of the

4  visit, her IP address, and her geographic location.

5       22.    Jornaya also recorded Williams's name, address, and phone number.

6       23.    Simply stated, Williams's interaction (including her keystrokes and mouse

7  movement and clicks) was recorded by DDR Media and Jornaya using Jornaya's "TCPA

8  Guardian" technology.

9       24.    This recording was done without Plaintiff's consent. Defendants did not inform

10  website visitors that their strokes and clicks would be recorded, much less secure prior express

11  consent. Indeed, the wiretapping began the moment Williams and other members of the alleged

12  Class visited the webpage.

13       25.    All TCPA Guardian videos are hosted on Jornaya's servers, and to access the videos

14  one must follow a hyperlink provided by Jornaya. Moreover, Jornaya independently collects and

15  stores information provided by web users on the websites of its clients.

16       26.    Members of the alleged Class were unlawfully monitored in the same way as

17  Williams was: Jornaya's software functions the exact same way no matter which person is visiting

18  a site, or which of DDR Media's websites the person is visiting.

19       27.    Jornaya explains its process, in part, as follows:

20  Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin
    and history of a lead event and the consumer actions that occurred at that event.

21  Jornaya's technology witnesses more than one hundred million lead events each
    month - tracking the actions that occur when a consumer fills out a lead form - or

22  interacts with a call center representative to complete a lead form. Jornaya's Guardian
    services document the specific disclosure that was present on a lead form during a

23  lead event and what type of consent was obtained, if any. Guardian services are
    intended solely and exclusively to provide companies with factual information about

24  the environment that the consumer experienced.

25  (*See* Ex. A.)

26       28.    Jornaya also provides the following diagram on its website:

27

28  **SECOND AMENDED CLASS ACTION**          - 4 -
    **COMPLAINT**



https://marketing.verisk.com/docs/tcpa-guardian (Last visited September 20, 2023.)

29.     Additionally, Jornaya admits on its website that it stores consumers' interactions internally. That is, one of Jornaya's customers, such as DDR Media, doesn't receive automatic access to visual playbacks and related data. Rather, if a Jornaya customer such as DDR wishes to receive the playback, it has to affirmatively request it from Jornaya via Jornaya's portal. Such requests may take a day or more for Jornaya to fulfill. But the customer cannot simply retrieve it—it must request it, and then Jornaya goes back through its retained data and fulfills the request. https://marketing.verisk.com/docs/getting-started-with-tcpa-guardian. (Last visited September 20, 2023).

30.     All of this is to say that Jornaya doesn't merely "record the communication for retrieval by a party to the same communication." First of all, again, the "retrieval" must be requested from Jornaya and can take Jornaya at least a day or more to fulfill while it retrieves the

data it has read and learned and creates the playback. But more broadly, Jornaya actively reads or learns (or attempts to read or learn) the contents or meaning of the communications at issue. It also analyzes the communications at issue. Jornaya's TCPA Guardian cannot work any other way. It **must** read and learn the content of the communications (or at least attempt to do so) in order to function. In order to "route leads based on consent," as its diagram discusses, it must read and/or learn (or at least attempt to read or learn) the contents of the communication. In order to retrieve stored data and create a visual playback, it must read and learn the contents of the communication. In order to, as Jornaya puts it, "track[] the origin and history of a lead event and the consumer actions that occurred at that event" it must naturally read or learn the contents of the communication. It could not track the history of an event without learning that history.

31.    Additionally, Jornaya provides its subscribers, such as DDR Media, what it calls "TCPA Compliance Adoption Reports". These reports "show key data points that support the success of your compliance program. It is a weekly view of authentic LeadiD tokens, organized by Provider, showing the overall volume of leads that are meeting the minimum requirements to implement an effective TCPA Program. This detail will help you monitor and evaluate your provider's TCPA Guardian implementations." https://marketing.verisk.com/docs/tcpa-adoption-report-guide. (Last visited September 20, 2023.)

32.    The TCPA Compliance Adoption Reports report back on various data points, including (1) "Lead Type," which "Indicates whether this lead was generated on a web form or via a call center", (2) "Audits," which indicate "The number of authentic LeadiDs on which you performed an audit, and Jornaya was able to evaluate the TCPA Compliance presence on the form," (3) "Disclosure & Match", which is "The percentage of leads where the disclosure language on the form was an exact match to one of the approved disclosure languages in your Jornaya Intelligence Profile," and (4) "Disclosure # without Labels," which is "the Count of leads that did not have the TCPA disclosure labels implemented". (*See Id*.) To provide these Adoption Reports, Jornaya must have read and learned the content of the communications at issue, or at least

1    attempted to do so.

2       33.    Moreover, Jornaya ascribes "red flags," "green flags," and "yellow flags"

3    to leads depending on the quality of the leads. https://marketing.verisk.com/docs/tcpa-kpi-

4    dashboard. (Last visited September 20, 2023). In order to provide such a "flagging" feature,

5    Jornaya must read and learn the content of the communications at issue in order to determine

6    which color flag to give.

7       34.    Jornaya also offers its customers such as DDR Media "Real-Time Decisions

8    solutions" as part of TCPA Guardian. This feature allows customers to, in real time, review third-

9    party leads and "verify the consumer-provided TCPA consent on the original web form," "know

10    the origin and history of the lead along with characteristics that call out lead quality and conversion

11    potential," and "confirm and supplement consumer-provided data on the lead form."

12    https://marketing.verisk.com/docs/real-time-decisions. To offer these features, Jornaya must read

13    and learn the content of the communications at issue, or at least attempt to do so.

14       35.    For wiretapping her visit to DDR Media's website, Plaintiff brings this suit, on

15    behalf of herself and those similarly situated, to put an end to Defendants' repeated and widespread

16    CIPA violations. Such violations entitle her, and other similarly situated persons, to injunctive

17    relief plus statutory damages of $5,000 per violation.

18                   **CLASS ACTION ALLEGATIONS**

19       36.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure Rules

20    23(b)(2) and 23(b)(3) on behalf of herself and a Class defined as follows:

21        All persons in California who: (1) from a date one year prior to the filing of the

22        initial complaint in this action to the date notice is sent to the Class; (2) visited one
         of DDR Media's websites; (3) which utilized Jornaya's "TCPA Guardian" or

23        similar Jornaya software; (4) who had their electronic communications intercepted
         and/or recorded by Jornaya; and (5) where the Defendants claim to have secured

24        prior express consent to monitor, record, collect, and store electronic
         communications in the same manner as they claim to have secured prior express

25        consent from Williams, or where Defendants do not claim they secured any such
         prior express consent.

26

27       37.    Excluded from the Class are: (1) Defendants, Defendants' agents, subsidiaries,

28    parents, successors, predecessors, and any entity in which Defendants or their parents have a

1  controlling interest, and those entities' officers and directors, (2) the Judge or Magistrate Judge to

2  whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) Plaintiff's

3  counsel and Defendants' counsel; (4) persons who execute and file a timely request for exclusion,

4  (5) persons who have had their claims in this matter finally adjudicated and/or otherwise released,

5  and (6) the legal representatives, successors, and assigns of any such excluded person. Plaintiff

6  anticipates the need to amend the class definition following a reasonable period for discovery

7  regarding the contours of the Class.

8      38.    **Numerosity:** The exact number of class members is unknown to Plaintiff at this

9  time, but it is clear that individual joinder is impracticable. On information and belief, Defendants

10  wiretapped thousands of California residents. Further, the class members can readily be ascertained

11  through Defendants' records.

12      39.    **Commonality:** Common questions of law and fact exist as to all members of the

13  Class for which this proceeding will provide common answers in a single stroke based upon

14  common evidence, including:

15      (a)    Whether Defendants' conduct described herein violated the CIPA;

16      (b)    Whether Defendants secured prior express consent before monitoring, recording,

17          collecting, and storing the electronic communications of Plaintiff and the Class;

18      (c)    Whether Defendants have violated the California Constitution; and

19      (d)    The proper measure of damages.

20      40.    **Typicality:** As a result of Defendants' uniform and repeated pattern of unlawful

21  recording, Plaintiff and the class members suffered the same injury and similar damages. If

22  Defendants' actions violated the CIPA as to Plaintiff, then they violated the CIPA as to all class

23  members. Thus, Plaintiff's claims are typical of the claims of the other class members.

24      41.    **Adequate Representation:** Plaintiff is a member of the Class and both she and her

25  counsel will fairly and adequately represent and protect the interests of the Class, as neither has

26  interests adverse to those of the class members and Defendants have no defenses unique to

27  Plaintiff. In addition, Plaintiff has retained counsel competent and experienced in complex

28  litigation and class actions. Further, Plaintiff and her counsel are committed to vigorously

**SECOND AMENDED CLASS ACTION**          - 8 -
**COMPLAINT**

prosecuting this action on behalf of the members of the Class, and they have the financial resources to do so.

42.     **Conduct Applicable Towards Class as a Whole:** Defendants acted consistently with respect to every member of the Class. No Class Member was treated specially or different as Defendants acted in the same manner with respect to all Class Members. As such, injunctive relief and corresponding declaratory relief are available and appropriate.

43.     **Predominance:** The common questions of law and fact set forth above go to the very heart of the controversy and predominate over any supposed individualized questions. Irrespective of any given class member's situation, the answer to whether Defendants' conduct described herein repeatedly violated the CIPA is the same for everyone—a resounding "yes"—and the same will be proven using common evidence.

44.     **Superiority and Manageability:** A class action is superior to all other methods of adjudicating the controversy. Joinder of all class members is impractical, and the damages suffered by/available to the individual class members will likely be small relative to the cost associated with prosecuting an action. Thus, the expense of litigating an individual action will likely prohibit the class members from obtaining effective relief for Defendants' misconduct. In addition, there are numerous common factual and legal questions that could result in inconsistent verdicts should there be several successive trials. In contrast, a class action will present far fewer management difficulties, as it will increase efficiency and decrease expense. Further, class-wide adjudication will also ensure a uniform decision for the class members.

<u>**FIRST CAUSE OF ACTION**</u>
**Violation of Cal. Penal Code § 631,** *et seq.*
**(On Behalf of Plaintiff and the Class)**

45.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

46.     The CIPA provides that it is a violation of Cal. Penal Code § 631(a) for a defendant, "by means of any machine, instrument, contrivance, or in any other matter," to do any of the following:

**SECOND AMENDED CLASS ACTION COMPLAINT**                - 9 -

Intentionally tap[], or make[] any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

Or

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[] or attempt[] to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

Or

Use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

Or

Aid[], agree[] with, employ[], or conspire[] with any person or persons to unlawfully do, or permit or cause to be done any of the acts or things mentioned above in this section.

47.     Section 631(a) is not limited to phone lines. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21(N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, --- F.3d --- 2020 WL 1807978 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

48.     Jornaya's TCPA Guardian software is a "machine, instrument, contrivance, or . . . any other manner" that is used by Jornaya and DDR Media to engage in the unlawful practices described in this Complaint.

49.     By using Jornaya's eavesdropping software, Defendants intentionally tapped the lines of communication between Plaintiff (and absent Class Members) and DDR Media's websites.

50.     Defendants lack prior express consent from Plaintiff and the Class for Defendants to "read or attempt to read or learn the contents or meaning" of their electronic communications being

**SECOND AMENDED CLASS ACTION COMPLAINT**          - 10 -

1   made in the State of California.

2       51.     At all relevant times, by using TCPA Guardian, Jornaya willfully and without the

3   consent of all parties to the communication, or in any unauthorized manner, read or attempted to

4   read or learn the contents or meaning of electronic communications of Plaintiff and alleged Class

5   Members, while the electronic communications were in transit or passing over any wire, line or

6   cable or were being sent from or received at any place within California.

7       52.     DDR Media partnered with (and conspired with) Jornaya to achieve the unlawful

8   conduct described herein.

9       53.     This violation of Section 631(a) is an invasion of privacy and confers Article III

10  standing.

11      54.     Absent an injunction, Plaintiff and the members of the alleged Class are at risk of

12  continued harm. Jornaya's software is used by many website operators and there is no practical

13  way to know if the future whether website communications will be monitored and recorded by

14  Defendants, absent ceasing to utilize the internet (a near impossibility in the year 2022).

15      55.     Accordingly, pursuant to Cal. Penal Code § 637.2(a)(1), Plaintiff and the Class seek

16  injunctive relief and statutory damages in the amount of $5,000 per violation.

**PRAYER FOR RELIEF**

18      WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that

19  this Court issue an order:

20      A.      Certifying this case as a class action on behalf of the Class defined above,

21              appointing Williams as class representative and appointing her counsel as class

22              counsel;

23      B.      Finding that Defendants' actions constitute repeated and willful violations of the

24              CIPA;

25      C.      Awarding injunctive relief under the CIPA enjoining Defendants from continuing to

26              violate the CIPA by unlawfully wiretapping electronic communication without

27              consent;

28      D.      Awarding damages, including statutory damages where applicable, to Plaintiff and

SECOND AMENDED CLASS ACTION          - 11 -
COMPLAINT

1      the Class in amounts to be determined at trial;

2      E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys'

3              fees;

4      F.      Awarding Plaintiff and the Class pre- and post- judgment interest, to the extent

5              allowable; and

6      G.      Such further and other relief as the Court deems reasonable and just.

7                                   **JURY DEMAND**

8      Plaintiff requests a trial by jury of all claims that can be so tried.

9

10                                            Respectfully submitted,

11     Dated: September 20, 2023             **LORETTA WILLIAMS**, individually and on behalf
                                             of all others similarly situated,
12

13                              By:      */s/ Patrick H. Peluso*
                                         One of Plaintiff's Attorneys
14
                                         Rebecca Davis (SBN 271662)
15                                       rebecca@lozeaudrury.com
                                         **LOZEAU DRURY LLP**
16                                       1939 Harrison St., Suite 150
                                         Oakland, CA 94612
17                                       Telephone: (510) 836-4200
                                         Facsimile: (510) 836-4205
18
                                         Patrick H. Peluso*
19                                       ppeluso@woodrowpeluso.com
                                         Steven L. Woodrow*
20                                       swoodrow@woodrowpeluso.com
                                         Taylor T. Smith*
21                                       tsmith@woodrowpeluso.com
                                         **WOODROW & PELUSO, LLC**
22                                       3900 East Mexico Avenue, Suite 300
                                         Denver, Colorado 80210
23                                       Telephone: (720) 213-0675
                                         Facsimile: (303) 927-0809
24
                                         *Pro Hac Vice*
25
                                         *Counsel for Plaintiff and the Class*
26

27

28
       **SECOND AMENDED CLASS ACTION**      - 12 -
       **COMPLAINT**