ARAVIND SWAMINATHAN (*admitted pro hac vice*)
aswaminathan@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Lead Intelligence, Inc. d/b/a Jornaya

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DDR MEDIA, LLC, a Pennsylvania limited liability company, d/b/a ROYAL MARKETING GROUP, and LEAD INTELLIGENCE, INC., a Delaware corporation, d/b/a Jornaya,<br><br>Defendants. | Case No. 3:22-cv-03789-SI<br><br>**DEFENDANT JORNAYA'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>Date: January 12, 2024<br>Time: 10:00 a.m.<br><br>Judge: Hon. Susan Illston |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 12, 2024, at 10:00 a.m., or as soon thereafter as available, in the courtroom of the Honorable Illston, located at 450 Golden Gate Avenue, Courtroom 1, 17th Floor, San Francisco, California 94102 (via Zoom webinar), Defendant Lead Intelligence, Inc., d/b/a/ Jornaya ("Jornaya"), will and hereby does move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, and any other matter that the Court may properly consider.

Jornaya seeks an Order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing Plaintiff Loretta Williams's Second Amended Class Action Complaint for failure to state a claim upon which relief can be granted.

# TABLE OF CONTENTS


Page

I. STATEMENT OF ISSUES TO BE DECIDED ........ 2

II. SUMMARY OF RELEVANT FACTS ........ 3

III. LEGAL STANDARD ........ 11

IV. LEGAL ARGUMENT ........ 11

A. The SAC fails to allege facts showing that Jornaya read, attempted to read, or learned the contents or meaning of any of Plaintiff's communications. ........ 11

B. The SAC fails to allege facts showing that Jornaya intercepted a communication "in transit." ........ 19

C. The SAC fails to allege facts showing that Jornaya read the "contents" of any message. ........ 20

V. CONCLUSION ........ 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................11

*Brodsky v. Apple Inc.*,
2019 WL 4141936 (N.D. Cal. 2019)....................21

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....................20

*Byars v. Hot Topic, Inc.*,
2023 WL 2026994 (C.D. Cal. 2023)....................12

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018)....................19

*Cody v. Boscov's, Inc.*,
2023 WL 2338302 (C.D. Cal. 2023)....................12

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir.2008)....................11

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014)....................11

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018)....................21

*Hiramanek v. Loftus*,
2015 WL 1887090 (N.D. Cal. 2015)....................11, 12

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................20

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)....................2, 4, 12

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)....................19

*Licea v. Am. Eagle Outfitters, Inc.*,
2023 WL 2469630 (C.D. Cal. 2023)....................20

*Licea v. Cinmar, LLC*,
2023 WL 2415592 (C.D. Cal. 2023)....................19, 20

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ....................................................................................2, 4, 12

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. 2022) .........................................................................................20

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) .......................................................................................21

*Underhill v. Kornblum*,
2017 WL 2869734 (S.D. Cal. 2017)...................................................................................19, 20

*In re Vizio, Inc. Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .............................................................................19, 20

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. 2022) .....................................................................................13

*In re Zynga Privacy Litig.*,
750 F. 3d 1098 (9th Cir. 2014) ........................................................................................20, 21

**Statutes**

Cal. Penal Code § 631(a) ........................................................................................ *passim*

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200..........................................3

Telephone Consumer Protection Act, 47 U.S.C. § 227 ...................................................................5

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................2, 11

In its Order Granting Defendant Lead Intelligence Inc. d/b/a Jornaya's ("Jornaya") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), ECF No. 64, this Court not only dismissed all of Plaintiff's claims, but also rejected the central premise of Plaintiff's case. At its core, Plaintiff's lawsuit rests on the theory that Jornaya wiretapped Plaintiff's communications with a website operated by Defendant DDR Media, LLC ("DDR Media"), by "record[ing] [her] name, address, and phone number." ECF No. 43 at ¶ 22; ECF No. 66 at ¶ 22. This Court explained, however, that Jornaya did no such thing; instead, it "provide[d] a software [product] known as 'TCPA Guardian,'" which DDR Media "use[d] to document [its own visitors]' consent to receive telemarketing calls." ECF No. 64 at 1. In other words, Jornaya's software "merely record[ed] the communication [between Plaintiff and DDR Media] for retrieval by" DDR Media itself, not for any independent use by Jornaya. *Id.* at 7. Jornaya was thus "akin to a tape recorder vendor," who offered a product that DDR Media used to record its own communications; in "no sense" was Jornaya a wiretapper, who itself "read, attempted to read, or learned the contents or meaning of [those] communication[s]." *Id.*

Plaintiff has now filed a Second Amended Class Action Complaint, ECF No. 66 ("SAC"), which attempts to plead around those conclusions. Specifically, the SAC adds a number of new allegations purporting to explain how Jornaya's TCPA Guardian works—all of which rely expressly on a report from TCPA Guardian and marketing from Jornaya. *See* SAC ¶¶ 27-34. Based on those allegations, Plaintiff argues that TCPA Guardian "must read and learn the content of the communications (or at least attempt to do so) in order to function," because it "cannot work any other way." SAC ¶ 30.

But the materials that Plaintiff relies on refute, not support, the allegations and inferences that she draws from them. For instance, the TCPA Guardian report (which Plaintiff attaches to her SAC as an exhibit) states explicitly that TCPA Guardian "do[es] not capture and store personally identifiable consumer data." ECF No. 66-1 at 3. In other words, the materials that Plaintiff herself has brought into this case directly contradict the basic theory behind her SAC—namely, that TCPA Guardian read or learned the contents of her "name, address, and phone number" from her communications with DDR Media's website. SAC ¶ 22.

Normally, the primary question on a motion to dismiss is whether the complaint's allegations, if taken as true, establish each element of the claims at issue. The law is clear, however, that where a complaint "depends on the contents of" materials that it cites, "the incorporation by reference doctrine" allows the court, when evaluating a motion to dismiss, to consider those materials in full. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The law is also equally clear that where a plaintiff's allegations are "contradicted by documents referred to in the complaint," the documents, not Plaintiff's incorrect allegations, control for purposes of a motion to dismiss. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Thus, the primary inquiry here is the threshold matter of whether her new allegations can even stand at all in light of the materials that she incorporates. As discussed below, they cannot, and should be disregarded. Plaintiff's repleaded SAC necessarily fails, as this Court has already held that Plaintiff's prior allegations fail to support a claim for relief. ECF No. 64 at 7.

And so, because of the way that Plaintiff has sought to fix her prior failings in this SAC, the analysis in this motion carefully considers the Jornaya documents and resources Plaintiff has incorporated into her complaint. But importantly, nothing here requires the Court to go beyond the pleadings (and the materials they incorporate), and so nothing requires it to step beyond its proper role on a motion to dismiss. Ultimately, as shown below, Plaintiff's attempt to show that Jornaya "must" learn the contents of her communications with DDR Media's website is belied by the face of the very documents that she has chosen to rely on in her SAC. As a result, Plaintiff's SAC is left in the same place as her FAC, and the same result should attain here: Plaintiff's SAC should be dismissed for all the same reasons as her prior complaint (including not just the ground the Court relied on, but also the others—namely, that Jornaya does not intercept communications "in transit" or access the "contents" of a communication—that it had no occasion to reach). And because Plaintiff's most recent round of amendments has now demonstrated that further amendment would be not just futile but impossible that dismissal should now be with prejudice.

## I. STATEMENT OF ISSUES TO BE DECIDED

Jornaya seeks an order pursuant to Federal Rule of Civil 12(b)(6) dismissing the suit for failure to state a claim.

## II. SUMMARY OF RELEVANT FACTS

Plaintiff filed this lawsuit in June 2022 alleging that a piece of software created by Jornaya, called TCPA Guardian, unlawfully intercepted her "name, address, and phone number" when she typed them into the website snappyrent2own.com, which is owned and operated by Defendant DDR Media, LLC. ECF No. 1 (Complaint) at ¶¶ 21, 22. On that basis, Plaintiff asserted that Jornaya violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and the California Constitution. *See* ECF No. 43 (First Amended Complaint). This Court, however, dismissed all of Plaintiff's claims following Jornaya's Motion to Dismiss. ECF No. 64. In so doing, this Court explained that Jornaya was "akin to tape recorder vendor" rather than "an eavesdropper," because it could "think of no sense in which Jornaya has read, attempted to read, or learned the contents or meaning of [a] communication," which was fatal to Plaintiff's claims. ECF No. 64 at 7. That was because TCPA Guardian "merely recorded the communication for retrieval by a party to the same communication," namely DDR Media. *Id.* (Because of this, the Court did not reach Jornaya's other, independent arguments as to why Plaintiff's claims must be dismissed. *See* ECF No. 64 at 7 n.3.) Nevertheless, this Court allowed Plaintiff an opportunity to amend if she wished.

On September 20, Plaintiff filed her SAC, which drops two of Plaintiff's original three claims (under the UCL and the California Constitution). *See* ECF No. 66. The SAC, however, continues to maintain that Jornaya violated Cal. Penal Code § 631, because TCPA Guardian unlawfully recorded her "name, address, and phone number" when she entered them into snappyrent2own.com, SAC ¶¶ 21-22. In an attempt to plead around this Court's prior conclusion that Jornaya does not read Plaintiff's communications, the SAC makes a number of allegations—based on Jornaya marketing materials and a report produced by TCPA Guardian, which Plaintiff incorporates into the SAC—about how TCPA Guardian supposedly works. *See* SAC ¶¶ 27-34. From those allegations, Plaintiff reasons that TCPA Guardian "must read and learn the content of the communications (or at least attempt to do so) in order to function," because it "cannot work any other way." SAC ¶ 30.

But the very materials that Plaintiff incorporates into her SAC directly refute her allegations—both about how TCPA Guardian works, and more specifically that TCPA Guardian "must read and learn the content of the communications … in order to function," SAC ¶ 30. Because Plaintiff's SAC "depends on the contents of" those materials, "the incorporation by reference doctrine" allows the court, when evaluating Jornaya's motion to dismiss, to consider those materials in full. *Knievel*, 393 F.3d at 1076. Where Plaintiff's allegations are "contradicted by documents referred to in the complaint," the documents—not Plaintiff's incorrect allegations—control. *Manzarek*, 519 F.3d at 1031. Accordingly, to evaluate Plaintiff's SAC—and Jornaya's Motion to Dismiss—requires understanding exactly what the materials referenced in Plaintiff's SAC do and do not say.

For ease of reference, a list of the materials that Plaintiff's SAC incorporates—as well as where this motion reproduces screenshots from them—is included in the table below:

| **Material** | **Incorporated By Plaintiff At** | **Screenshot Reproduced At** |
|---|---|---|
| 1. *TCPA Guardian*, Verisk, https://marketing.verisk.com/docs/tcpa-guardian | SAC ¶ 28 | pp. 5, 15 |
| 2. *Getting Started with TCPA Guardian*, Verisk, https://marketing.verisk.com/docs/getting-started-with-tcpa-guardian | SAC ¶ 29 | pp. 6, 14 |
| 3. Report produced by TCPA Guardian | SAC Ex. A (ECF No. 66-1) | pp. 8, 9, 16 |
| 4. *TCPA Compliance Adoption Report Guide*, Verisk, https://marketing.verisk.com/docs/tcpa-adoption-report-guide | SAC ¶¶ 31-32 | pp. 10, 17 |
| 5. *TCPA KPI Dashboard*, Verisk, https://marketing.verisk.com/docs/tcpa-kpi-dashboard | SAC ¶ 33 | n/a |
| 6. *Real-Time Decisions*, Verisk, https://marketing.verisk.com/docs/real-time-decisions | SAC ¶ 34 | n/a |

Start with the diagram below, which Plaintiff takes from Jornaya's website and reproduces at SAC ¶ 28. (Item 1, in the table above).




This diagram reflects, at a high level, how TCPA Guardian helps companies to comply with the Telephone Consumer Protection Act ("TCPA"). The TCPA prohibits companies from contacting consumers using autodialing technology without prior consent. *See* 47 U.S.C. § 227(b). To help businesses comply with that requirement, Jornaya "provides a software [product] known as 'TCPA Guardian,' which websites use to document [visitors]' consent to receive [autodialed] telemarketing calls." ECF No. 64 at 1.

As shown in the diagram, a company that wishes to make a telemarketing call can use TCPA Guardian to validate whether the consumer, in fact, provided consent to receive calls made by an autodialer, SAC ¶ 28. This allows the company to "safely route" how the company makes outreach to the consumer—i.e., the company can "auto dial" the consumer if TCPA Guardian confirms that they gave consent to that type of outreach, or the company can "manual dial" the consumer, or use another "alternate channel" of outreach, if TCPA Guardian cannot confirm their consent. *Id.* In this way, TCPA Guardian allows companies to "provide neutral verification and

assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements." ECF No. 66-1 at 3. Put simply, this allows companies who want to market to consumers using autodialing technology to validate whether they can in fact contact the consumer in that fashion. Additionally, in the event that an autodialed customer makes a complaint, TCPA Guardian allows the company to "quickly obtain compelling proof of [that consumer's] consent" in a TCPA "Compliance Report." SAC ¶ 28. Note, however, that it is the company using TCPA Guardian, not Jornaya, that performs these actions and makes the decision about how to proceed. TCPA Guardian simply records the actions showing whether consent was given; the company using TCPA Guardian evaluates that recorded information and decides how to act accordingly.

As illustrated in the image below (taken from a webpage that Plaintiff cites at SAC ¶ 29, item 2 in the chart above), when a company wishes to check whether a particular consumer consented, it is up to ***that company*** (not Jornaya) to provide information relating to the consumer in question—called a LeadiD—which is used to check whether TCPA consent was obtained:




*See Getting Started with TCPA Guardian*, Verisk, https://marketing.verisk.com/docs/getting-started-with-tcpa-guardian, *cited at* SAC ¶ 29. These LeadiDs are simply numerical references

that identify each website interaction; they do not contain—and Jornaya does not connect them to—any personal information about the consumer. Rather, the materials that Plaintiff herself cites show that validation through TCPA Guardian depends on the company—not Jornaya—providing a LeadiD to see whether the corresponding website interaction involved TCPA consent, and then the company—not Jornaya—connecting that LeadiD (and the consent or lack thereof) to the consumer whose consent the company is investigating. In this respect, TCPA Guardian functions like a bank administering a safety deposit box: Just as a bank retrieves the contents of a safety deposit box based on the box's number (and not by reading or learning the contents of everything in the box), Jornaya can retrieve a recorded website interaction based on the recording LeadiD number (and not by reading or learning the contents of that recording).

This is confirmed by other exhibits that Plaintiff relies on in the Second Amended Complaint. For instance, the report produced by TCPA Guardian that Plaintiff attaches to the SAC as Exhibit A (item 3 in the chart above) states directly that TCPA Guardian works by gathering data about the ***website*** that a consumer visits; TCPA Guardian "do[es] not capture and store personally identifiable consumer data" about the consumer themselves. ECF No. 66-1 at 3 (explaining that TCPA Guardian "solely and exclusively provides companies with factual information about the environment that the consumer experienced"). That is because the only question that TCPA Guardian needs to answer—whether a consumer's interaction with a website manifested consent to receive autodialed calls—is determined by looking at the website itself (e.g., the disclosures it contains) and interactions with interface elements like buttons or check boxes that a visitor may use to indicate agreement. In other words, what matters and what TCPA Guardian determines is (first) what is on the website at the time the individual visited and (second) whether the individual clicked a button (i.e., gave his/her consent) to be contacted by an autodialed call or automated text message. Personally identifiable information entered by the visitor, such as their name, address, or phone number, is irrelevant to that determination. And so, as stated in the very materials that Plaintiffs cite, TCPA Guardian "do[es] not capture and store" that information. *Id.*

Indeed, this TCPA Guardian report does not include any personally identifiable information. Instead, as alleged in the Amended Complaint and shown below, it solely references the alphanumeric LeadiD that was used to request the report, as well as the date and time of the visit, the IP address used to access the website, and a derived location indicated by that same IP address. *See* ECF No. 66-1 at 3. The TCPA Compliance report then indicates, based on the website itself—and not any personal information entered by the visitor—whether that website included text that the website identified as a TCPA Disclosure Statement; if such text exists, the TCPA Compliance Report reproduces that language from the website as well:

| Lead Event Information: | |
|---|---|
| Universal LeadiD | 362C814B-AC01-2951-0637-0F1FF4511319 |
| Event Date | 12/10/2021 |
| Event Time | 09:34:23 AM EST |
| IP Address | 172.58.88.231 |
| Location (as indicated by IP address) | San Francisco,CA |

| Disclosure Information: | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | Jornaya cannot verify TCPA disclosure language because a disclosure was not tagged on the website according to Jornaya's standard instructions. |

ECF No. 66-1 at 3.

The TCPA Compliance Report also includes a link to a visual representation of the visitor's interaction with the website. ECF No. 66-1 at 4, linking to *Visual Playback*, Jornaya, https://vp.leadid.com/playback/362C814B-AC01-2951-0637-0F1FF4511319?key=1639146863454. The video is worth watching. This can be done by either entering the URL in the prior citation into any browser (or by copying the same link from ECF No. 66-1 at 4), then dismissing the disclosures popup (by clicking the downward facing white chevron at the top of the black area filling most of the screen), and then clicking the orange play button near the upper left hand corner of the window.

Note that this ***is not*** an actual video recording of the visitor's interactions with the website—because TCPA Guardian does not record any such video—but rather a virtual representation that shows only the website itself and the limited data about certain of the visitor's actions that would evidence his or her consent. *Id.* The below frame from the visual playback linked above (which is for an interaction on the website at issue in this case, snappyrent2own.com), demonstrates that, like the TCPA Compliance Report itself, the visual representation is centered on the content of the website, and not the substance of any information entered by the visitor:




Specifically, the visual playback shows that TCPA Guardian captured what the website looked like and which fields (if any) the visitor interacted with—not any information that the visitor entered (which is why the information entered into the text field is represented only by a series of asterisks, and not by showing any actual text).[1]

---

[1] Furthermore, the asterisks that are rendered into each field in the virtual playback do not correspond to the characters that the consumer entered. If a consumer entered Mary as the first name, Jornaya may represent that as ********** in the virtual representation. That is because the point of the asterisks is not to represent in any way the actual consumer personal information, but

The Complaint also cites Jornaya webpages (items 4 and 5 in the table above) discussing how TCPA Guardian users can also receive summaries of the TCPA consent validations that they perform through "TCPA Compliance Adoption Reports" and through a "TCPA KPI Dashboard." SAC ¶¶ 31-33. As demonstrated by those webpages, those summaries simply tabulate the results obtained in cases where "you [the TCPA Guardian user] perform an audit" for TCPA consent: *TCPA Compliance Adoption Report Guide*, Verisk, https://marketing.verisk.com/docs/tcpa-adoption-report-guide, *cited at* SAC ¶¶ 31-32. In other words, they do nothing more than summarize—for the TCPA Guardian user—the results of TCPA consent checks that the *user itself* performed. A TCPA Guardian user who performs 20 TCPA consent checks, for instance, may receive a report like the one shown below (reproduced from the website just cited):

LeadiD TCPA Audits for Authentic LeadiDs

| **Lead Type** | **Provider Name** | Audits | Disclosure: % with Labels | Disclosure: % Match | Disclosure: # Mismatches | Disclosure: # without Labels | Visibility: # Not Visible |
|---|---|---|---|---|---|---|---|
| Web Lead | Acme Advertiser Client | 1 | 100.00% | 0.00% | 1 | 0 | 0 |
| | Joes Lead Shack | 4 | 100.00% | 0.00% | 4 | 0 | 0 |
| | **Totals** | **5** | **100.00%** | **0.00%** | **5** | **0** | **0** |
| Call Center Lead | Joes Lead Shack | 15 | 0.00% | | 0 | 15 | 0 |
| | **Totals** | **15** | **0.00%** | | **0** | **15** | **0** |
| **Totals** | **Totals** | **20** | **25.00%** | **0.00%** | **5** | **15** | **0** |

*TCPA Compliance Adoption Report Guide*, Verisk, https://marketing.verisk.com/docs/tcpa-adoption-report-guide, *cited at* SAC ¶¶ 31-32. As with all of the other TCPA Guardian features described in the SAC, this one too is focused on the content of the website (categorizing the "disclosure" found there), not any personal information about the website visitor—because, again, TCPA Guardian does not "do[es] not capture and store personally identifiable consumer data." ECF No. 66-1 at 3. That is because the purpose of these reports is to help companies understand and tighten up their own TCPA compliance; they have nothing to do with personally identifiable consumer data nor reading or learning the content of any communication.

In sum, the SAC's own allegations and incorporated materials show only that TCPA Guardian merely "document[s] the specific disclosure that was present" on a website "and what type of consent was obtained, if any," ECF No. 66-1 at 2. And they affirmatively refute any notion

---

rather simply to show that a consumer engaged with the website and did, or did not witness/agree to a TCPA disclosure.

that TCPA Guardian "capture[s] and store[s] personally identifiable consumer data." ECF No. 66-1 at 3.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). While a court must accept all material factual allegations as true, it is not required to accept as true any allegations that are contradicted by matters that are subject to judicial notice, that are exhibits to a complaint, or that are incorporated by reference in a complaint. *See, e.g.*, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014). The court also "cannot rely on 'unwarranted deductions of fact, or unreasonable inferences.'" *Hiramanek v. Loftus*, 2015 WL 1887090, at *2 (N.D. Cal. 2015) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.2008)).

## IV. LEGAL ARGUMENT

Plaintiff's SAC now rests on a single theory—that Jornaya violated Section 631's prohibition on "[1] read[ing], or attempt[ing] to read, or to learn [2] the contents or meaning of any message, report, or communication [3] while the same is in transit," Cal. Penal Code § 631(a). *See* ECF No. 64 at 4. The SAC, however, fails to plead facts establishing any of those three elements.

### A. The SAC fails to allege facts showing that Jornaya read, attempted to read, or learned the contents or meaning of any of Plaintiff's communications.

When this Court previously dismissed Plaintiff's Section 631 claim, it noted that Jornaya was "akin to tape recorder vendor" rather than "an eavesdropper," because it could "think of no sense in which Jornaya has read, attempted to read, or learned the contents or meaning of [a] communication." ECF No. 64 at 7. Plaintiff now attempts to plead around that ruling, offering six new theories in her SAC, each relying on Jornaya materials to make allegations about how TCPA Guardian supposedly works, and each reasoning based on those allegations that Jornaya "must have read" the contents of Plaintiff's communications with DDR Media.

As detailed below, however, every one of the SAC's theories is belied by the very materials that it purports to rely on. In every case, the materials referenced in the SAC directly contradict Plaintiff's allegations about how TCPA Guardian works, and the inference she attempts to draw that TCPA Guardian "must read and learn the content of [Plaintiff's] communications … in order to function." SAC ¶ 30. Because Plaintiff's SAC "depends on the contents of" those materials, "the incorporation by reference doctrine" allows the court, when evaluating Jornaya's motion to dismiss, to consider those materials in full. *Knievel*, 393 F.3d at 1076. And because those "documents referred to in the complaint" contradict the allegations in the SAC, those documents—and not Plaintiff's allegations—control for purposes of this motion to dismiss. *Manzarek*, 519 F.3d at 1031.

Accordingly, as explained below, none of the new allegations about "reading" or "learning" that Plaintiff includes in the SAC can stand, *see* SAC ¶¶ 27-34, as they are all directly refuted by the materials that Plaintiff incorporates into her SAC. They are thus nothing but "unwarranted deductions of fact, or unreasonable inferences," which the "court cannot rely on" in deciding a motion to dismiss. *Hiramanek*, 2015 WL 1887090, at *2. As a result, Plaintiff's SAC remains in exactly the same position as her FAC—which this Court already held fails to plead facts showing that Jornaya read or learned the contents of Plaintiff's communications. Accordingly, the SAC must be dismissed for the same reasons.[2]

*First*, the SAC argues that Jornaya must have read and learned the contents of Plaintiff's communications with DDR Media, because DDR Media does not have "automatic access to visual playbacks," but instead "must request" the visual playback "from Jornaya [which] can take Jornaya at least a day or more to fulfill." SAC ¶¶ 29-30. But how a company obtains a visual

---

[2] Of course, as the caselaw makes clear, to establish liability under Section 631, Plaintiff must do more than merely show that Jornaya read or learned the contents of her communications; she must also show that Jornaya did so with the purpose of making some "use or potential future use beyond simply supplying this information back to" DDR Media. *Cody v. Boscov's, Inc.*, 2023 WL 2338302, at *2 (C.D. Cal. 2023); *see also, e.g.*, *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, *9 (C.D. Cal. 2023). That is because, absent such a showing, Jornaya would merely be acting as DDR Media's agent—and hence as a party to the communication itself, and not a third-party eavesdropper. *See id.*; *see also* ECF No. 52 at 2-5. But because (as explained in text above) Plaintiff does not even allege facts showing that Jornaya read or learned the contents of her communications at all, the Court need not reach this separate reason that Plaintiff's claim fails.

playback of the data that Jornaya stores on that company's behalf, and how long it takes to do so, says nothing about the crucial point here—whether Jornaya reads or learns (or indeed, makes any independent use of) the contents of that data. Indeed, all that Plaintiff's allegations on this score show is that the relevant data is stored on Jornaya's servers, such that Jornaya must give access to a company that requests it. But courts have already held that "the fact that the recordings were stored and accessed on [a provider's] servers" does nothing to show that the provider "was a third-party eavesdropper" as required to be liable under Cal. Penal Code § 631. *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. 2022). Accordingly, Plaintiff's first theory fails.

*Second*, the SAC alleges that "[i]n order to retrieve stored data and create a visual playback, [Jornaya] must read and learn the contents of the communication." SAC ¶ 30. But here, too, Plaintiff's conclusion does not follow from their premise. Just as a bank can store a diary in a safety deposit box, and then provide the diary back to its customer upon request without reading or learning the contents of that diary, so too can Jornaya store and then provide the stored data and visual playback upon request without itself reading or learning the contents of that data. How? The face of the pleadings explain: Jornaya retrieves the stored data by using a reference number—the "LeadiD" number—that Jornaya uses to tag each recorded session. All that is thus required is searching for and retrieving the information associated with the LeadiD; there is no need to (nor does Jornaya) look at the contents of a visitor's input into the website:




*See Getting Started with TCPA Guardian*, Verisk, https://marketing.verisk.com/docs/getting-started-with-tcpa-guardian, *cited at* SAC ¶ 29. In other words, just as a bank retrieves the contents of a safety deposit box based on the box's number (and not by reading or learning the contents of everything in the box), the SAC shows that Jornaya retrieves the requested data by reference to the LeadiD number, and not by reading or learning the contents of that data. Accordingly, the SAC's second theory is refuted by the very sources it relies on.

*Third*, the SAC claims that "[i]n order to 'route leads based on consent,'" as supposedly shown in the below diagram from Jornaya's website, Jornaya "must read and/or learn (or at least attempt to read or learn) the contents of the communication." SAC ¶ 30; *see also* SAC ¶¶ 28-29.




But that simply misrepresents the diagram. Contrary to Plaintiff's suggestion, the diagram does not state that ***Jornaya*** will "route leads based on consent". Instead, it states that TCPA Guardian empowers its ***users*** to do so. All the verbs in the diagram (including the "route leads" one highlighted by Plaintiff here) indicate actions on the part of the user, not Jornaya. Jornaya, for instance, does not "***obtain*** compelling proof of [TCPA] consent"; it provides it. Likewise, Jornaya does not "manual dial" or "auto dial" consumers; its users do. The SAC's third theory thus entirely backfires: The source that Plaintiff cites as supposedly showing Jornaya reading or learning the contents of a communication, in fact shows action only on the part of TCPA Guardian users.

*Fourth*, the SAC asserts that because a TCPA Compliance Report (which Plaintiff attaches to the SAC) states that TCPA Guardian "'track[s] the origin and history of a lead event and the consumer actions that occurred at that event,'" that means TCPA Guardian "must naturally read or

learn the contents of the communication," since "[i]t could not track the history of an event without learning that history." SAC ¶ 30; *see also* SAC ¶ 27. But the very TCPA Compliance Report that Plaintiff references directly refutes her argument. Far from showing that TCPA Guardian "must" learn the contents of a visitor's communications with a website to function, that Report states directly that TCPA Guardian "do[es] not capture and store personally identifiable consumer data" at all. ECF No. 66-1 at 3. That is because TCPA Guardian's role is simply to "document the specific disclosure that was present" on a website "and what type of consent was obtained, if any." ECF No. 66-1 at 2. And information entered by a visitor into the website, such as their "name, address, and phone number" (as Plaintiff alleges here), SAC ¶ 21-22, are completely irrelevant to that question of whether TCPA consent was given and obtained.

This is confirmed by the video playback linked in that same Report. As shown below, that playback does not reveal—because TCPA Guardian does not read, learn, or record—any personal information entered by the visitor. Instead, it displays any such information with a generic series of asterisks (i.e., "*********" in the "FIRST NAME" field):




*See Visual Playback*, Jornaya, https://vp.leadid.com/playback/362C814B-AC01-2951-0637-

0F1FF4511319?key=1639146863454, *linked at* ECF No. 66-1 at 4. That is because the purpose of the video playback is to show the website itself, and any TCPA disclosures that it displayed and/or requested consent for, not any information entered by the visitor.

Accordingly, the TCPA Compliance Report attached by Plaintiff makes clear that TCPA Guardian can, and does, function "solely and exclusively [by] provid[ing] companies with factual information about the environment that the consumer experienced"—i.e., the website that the visitor saw—not by reading, learning, or recording any information that the website visitor communicated. ECF No. 66-1 at 2. Plaintiff's fourth theory is thus directly refuted by the very sources that Plaintiff references in her SAC.

*Fifth*, the SAC cites a Jornaya webpage explaining that TCPA Guardian users can receive "TCPA Compliance Adoption Reports," and asserts that to provide such reports Jornaya "must have read and learned the content of the communications at issue." SAC ¶¶ 31-32. (The SAC also makes a similar argument about "flags" that Jornaya provides to TCPA Guardian users on a TCPA KPI Dashboard. SAC ¶¶ 33.) But once again, Plaintiff blatantly mischaracterizes the very source she relies on for her argument. As made clear by the very webpage that Plaintiff cites, the "Adoption Reports" that she refers to are reports summarizing the results obtained in cases where "you [the TCPA Guardian user] perform an audit." *TCPA Compliance Adoption Report Guide*, Verisk, https://marketing.verisk.com/docs/tcpa-adoption-report-guide, *cited at* SAC ¶¶ 31-32. In other words, the Adoption Reports do nothing more than summarize—for the TCPA Guardian user—the results of TCPA consent checks that the *user itself* performed. Indeed, the webpage illustrates exactly this point by showing an "Example TCPA Compliance Adoption Report" for a hypothetical TCPA Guardian user who verifies TCPA consent for 20 lead events in the past week:

LeadiD TCPA Audits for Authentic LeadiDs

| **Lead Type** | **Provider Name** | Audits | Disclosure: % with Labels | Disclosure: % Match | Disclosure: # Mismatches | Disclosure: # without Labels | Visibility: # Not Visible |
|---|---|---|---|---|---|---|---|
| Web Lead | Acme Advertiser Client | 1 | 100.00% | 0.00% | 1 | 0 | 0 |
| | Joes Lead Shack | 4 | 100.00% | 0.00% | 4 | 0 | 0 |
| | **Totals** | **5** | **100.00%** | **0.00%** | **5** | **0** | **0** |
| Call Center Lead | Joes Lead Shack | 15 | 0.00% | | 0 | 15 | 0 |
| | **Totals** | **15** | **0.00%** | | **0** | **15** | **0** |
| **Totals** | **Totals** | **20** | **25.00%** | **0.00%** | **5** | **15** | **0** |

*Id.* As shown above, that Report simply summarizes the number of events that the user sought to verify in the past week, as well as the results of those verifications (i.e., how many had the requisite consent, and how many did not). Accordingly, all that Plaintiff's fifth theory has shown is that TCPA Guardian allows its users to keep track of the results of the validations that they themselves perform; it comes nowhere near showing that Jornaya read or learned the contents of any communication between a visitor and a website.

*Finally*, the SAC (citing another page of Jornaya's website) claims that Jornaya "offers its customers such as DDR Media 'Real-Time Decisions solutions' as part of TCPA Guardian," and that to offer that feature "Jornaya must read and learn the content of the communications at issue." SAC ¶ 34. But yet again, the website that Plaintiff cites directly rebuts her allegations. As that website makes clear, the "Real-Time Decisions" solution is an entirely separate product from TCPA Guardian. *See Real-Time Decisions*, Verisk, https://marketing.verisk.com/docs/real-time-decisions (listing various separate Jornaya products, including separate entries for "TCPA Guardian" and "Real-Time Decisions"), *cited at* SAC ¶ 34. There is no allegation that DDR Media used the separate "Real-Time Decisions" product on its website, or that it had anything to do with Plaintiff's communications, so it is entirely irrelevant to the question at issue here. This final theory, too, therefore fails to show that Jornaya read, attempted to read, or learned the contents of any of Plaintiff's communications with DDR Media's website.

* * *

Plaintiff's SAC labors mightily in an attempt to plead around this Court's prior ruling that in "no sense [does] Jonraya … read, attempt[] to read, or learn[] the contents or meaning" of any communication between Plaintiff and DDR Media's website. ECF No. 64 at 7. Ultimately, however, its invocations of various Jornaya materials serve only to underscore the correctness of this Court's conclusion: TCPA Guardian has not read, attempted to read, or learned the contents or meaning of any of Plaintiff's communications with DDR Media's website. For this reason alone, her SAC should be dismissed with prejudice.

**B. The SAC fails to allege facts showing that Jornaya intercepted a communication "in transit."[3]**

Plaintiff's sole claim under Section 631(a) independently fails because the SAC fails to plead facts showing that Jornaya intercepted a communication *in transit*, as required by the statute. Section 631(a) liability attaches only when a defendant has committed "the *interception* of an electronic communication." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1050-51 (N.D. Cal. 2018). Per the statute's text, this means that the defendant must wrongfully access a communication while it is "in transit." Cal. Penal Code § 631(a). "Courts in the Ninth Circuit have interpreted the in transit requirement narrowly," *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *9 (C.D. Cal. 2023), as requiring "acquisition contemporaneous with transmission." *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (holding that the "narrow" definition of "intercept" as applied to electronic communications means "acquisition of contemporaneous with transmission-with respect to wire communications").

To survive a motion to dismiss, a Section 631(a) claim must thus allege facts that show that the alleged reading or acquiring occurred while the communication was *en route* to its destination—not before it had left, or after it had already arrived. *See Underhill v. Kornblum*, 2017 WL 2869734, at *5 (S.D. Cal. 2017) (dismissing claim because plaintiff had not pled facts demonstrating that defendant acquired the communications contemporaneously with their transmission). Conclusory assertions that merely recite that the communications were acquired "during transmission" or "in real time" are insufficient. *See In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing Section 631(a) claim because allegations that defendant "intercepted their communications … 'during transmission'" were too conclusory). Rather, a complaint must "articulate[] with sufficient clarity when [defendant] supposedly intercepted their communications." *See id.*

Plaintiff's SAC provides no well-pled factual allegations that would show that Jornaya accessed Plaintiff's information while it was traveling to DDR Media, as opposed to before it was

[3] Because the Court dismissed the FAC's CIPA claim on other grounds, the Court did not consider this argument or the next one in its Order Granting Jornaya's Motion to Dismiss the FAC. *See* ECF No. 64 at 7 n.3.

transmitted or after it had reached its destination. The SAC's bare assertions that Plaintiff's "communications [were] intercepted" or captured "real time," SAC ¶¶ 2, 6, 36, are identical to those that courts have already found lacking. *See Cinmar*, 2023 WL 2415592, at *10 ("Plaintiffs must provide more than conclusory allegations that messages were 'intercepted in real time.'"); *Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *9 (C.D. Cal. 2023) (same); *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. 2022) ("[U]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible defendant is intercepting [Plaintiff's] data in transit."); *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d at 1228; *Underhill*, 2017 WL 2869734, at *4. The SAC thus fails to state a claim under Section 631(a), because it fails to allege facts showing that interception occurred "in transit."

### C. The SAC fails to allege facts showing that Jornaya read the "contents" of any message.

The SAC separately fails to state a claim under Section 631(a)'s second clause, because it fails to allege that Jornaya unauthorizedly accesses "the 'contents' of any communication." *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). As explained above, *see supra* § IV.1, the SAC fails to plead facts showing that Jornaya read, attempted to read, or learned anything at all about the information that Plaintiff supposedly exchanged with DDR Media's website (i.e., her "name, address, and telephone number," SAC ¶ 22). But even if it had, Plaintiff's Section 631 claim would still fail because none of the information that Plaintiff claims to have communicated to DDR Media's website qualifies as the "contents" of a communicated protected by Section 631.

As with the federal Wiretap Act, Section 631 does not make it a crime to access any information passed between two parties, but rather only the substantive "contents" of a communication—i.e., "the intended message conveyed by the communication." *See In re Zynga Privacy Litig.*, 750 F. 3d 1098, 1106 (9th Cir. 2014). That means to show a violation of Section 631, two things must be true: (1) a plaintiff must have intended to convey a substantive message, and (2) an unauthorized party must have accessed (or attempted to access) that substance, and not mere "record information," like a person's name or address. *See In re iPhone Application Litig.*,

844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (holding that "data" that is "generated" without the communicative "intent of the user" cannot "constitute 'content' susceptible to interception").

Plaintiff claims that Jornaya's technology captured her "keystrokes and clicks on the website," which conveyed her "name, address, and telephone number," "the date and time of the visit, her IP address, … her geographic location." SAC ¶¶ 21-23. But all of those types of data—*i.e.*, name, address, telephone number, visit date, IP address, and geographic location—have been squarely held not to constitute message "contents" under Section 631(a). *See Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014) (explaining that "names, mailing addresses, phone numbers," are not "contents" of a communication); *In re Zynga Priv. Litig.*, 750 F.3d at 1106 (recording the "date" of communications "does not capture the contents of communications"); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1084–85 (N.D. Cal. 2018) ("IP address" is "not the contents of a communication within the meaning of the Act"); *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *6 (N.D. Cal. 2019) ("geographic location information [is] not contents"). Accordingly, Plaintiff's Section 631 claim fails for this independent reason.

## V. CONCLUSION

For the foregoing reasons, this Court should dismiss her SAC on the merits with prejudice.

DATED: November 3, 2023

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Aravind Swaminathan*
ARAVIND SWAMINATHAN

Attorneys for Defendant, LEAD INTELLIGENCE, INC. D/B/A JORNAYA