ARAVIND SWAMINATHAN (*admitted pro hac vice*)
aswaminathan@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Lead Intelligence, Inc. d/b/a Jornaya

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DDR MEDIA, LLC, a Pennsylvania limited liability company, d/b/a ROYAL MARKETING GROUP, and LEAD INTELLIGENCE, INC., a Delaware corporation, d/b/a Jornaya,<br><br>Defendants. | Case No. 3:22-cv-03789-SI<br><br>**DEFENDANT JORNAYA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date: January 12, 2024<br>Time: 10:00 a.m.<br><br>Judge: Hon. Susan Illston |

# TABLE OF CONTENTS

Page

I. LEGAL ARGUMENT .......... 3

A. The SAC fails to allege facts showing that Jornaya read, attempted to read, or learned the contents or meaning of any of Plaintiff's communications, and so Jornaya is not a third party .......... 3

B. The SAC fails to allege facts showing that Jornaya intercepted a communication "in transit." .......... 9

C. The SAC fails to allege facts showing that Jornaya read the "contents" of any message. .......... 10

D. Leave to amend would be futile. .......... 11

II. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 10

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ........ 12

*Chevron Corp. v. Donziger*,
2013 WL 4536808 (N.D. Cal. 2013) ........ 11

*Gumner v. Pepsico, Inc.*,
2023 WL 8351560 (C.D. Cal. 2023) ........ 6

*Lefkowtiz v. Scytl USA*,
2016 WL 537952 (N.D. Cal. 2016) ........ 4, 11

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ........ 1, 3, 4, 9

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. 2023) ........ 9

*NovelPoster v. Javitch Canfield Group*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ........ 9, 10

*Obodai v. Indeed, Inc.*,
2013 WL 1191267 (N.D. Cal. 2013) ........ 11

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) ........ 10, 11

*Underhill v. Kornblum*,
2017 WL 2869734 (S.D. Cal. 2017) ........ 9

*United States v. Steiger*,
318 F.3d 1039 (11th Cir. 2003) ........ 9

**Statutes**

Cal. Penal Code § 631(a) ........ *passim*

This Court previously dismissed Plaintiff Loretta Williams's First Amended Complaint, ECF No. 43 ("FAC"), on the grounds that Plaintiff had failed to allege facts showing that Defendant Lead Intelligence, Inc., d/b/a/ Jornaya's ("Jornaya") "read, attempted to read, or learned the contents or meaning of [Plaintiff's] communication[s]" with DDR Media, LLC ("DDR Media"). ECF No. 64 at 7. In so doing, this Court explained that Plaintiff's FAC showed that Jornaya's TCPA Guardian product "merely record[ed] the communication [between Plaintiff and DDR Media] for retrieval by" DDR Media itself, not for any independent use by Jornaya. *Id.* Jornaya was thus "akin to a tape recorder vendor," who offered a product that DDR Media used to record its own communications; in "no sense" was Jornaya a wiretapper who was itself listening in on those recordings. *Id.*

Plaintiff is no more successful on her most recent attempt to state a claim. In her Second Amended Complaint, ECF No. 66 ("SAC"), Plaintiff pleads several new theories in an attempt to get around the Court's earlier conclusion and show that Jornaya did, in fact, read or learn the contents of Plaintiff's communications with DDR Media. But as explained in Jornaya's Motion to Dismiss Plaintiff's SAC, ECF No. 69, those new theories do not help Plaintiff because each is belied by the very materials—a report from TCPA Guardian and Jornaya's own website—that Plaintiff cites, which are incorporated into her SAC and fatal to her claims. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (where plaintiff's allegations are "contradicted by documents referred to in the complaint," the documents, not Plaintiff's incorrect allegations, control on motion to dismiss).

In her Opposition, ECF No. 72, Plaintiff does not dispute that she has incorporated those materials into her SAC and thus they are fairly considered on a motion to dismiss. Plaintiff further does not dispute that the allegations in the Complaint are purportedly based on those materials. Now that it is clear those materials cannot form the basis of her allegations because they are directly contradictory, Plaintiff now largely abandons the theories of her SAC, and pivots to yet another new one.

Plaintiff in her Opposition now hinges her case on a feature of TCPA Guardian that allows its users like DDR Media to verify whether certain information (name, phone number, and email address) in their possession matches information entered on their websites by a visitor. Plaintiff

speculates (again, for the first time in her opposition to Jornaya's motion to dismiss) that in order for TCPA Guardian to provide that feature, it "stands to reason" that Jornaya "must read or learn the contents of the underlying communication." Opp. 10. That this new theory appears nowhere in the SAC is reason enough to dismiss the SAC. But, that aside, this new theory is debunked by the same materials that Plaintiff herself relies on repeatedly throughout the SAC, *see* SAC ¶¶ 28, 29, 31, 33, 34, which explain how Jornaya uses a technique called "hashing" (*see infra* § I.A) to provide this functionality without reading or learning the contents. Verisk, *How We Hash Data to Protect Consumer Privacy*, https://marketing.verisk.com/how-we-hash-data-to-protect-consumer-privacy ("Jornaya does not store any of the raw data or personally identifiable information (PII) associated with a consumer or data they enter on a website."); *see also* ECF No. 66-1 (TCPA Guardian report, attached as Exhibit A to the SAC, stating plainly that TCPA Guardian "do[es] not capture and store personally identifiable consumer data").[1] Indeed, those materials emphasize that Jornaya does this precisely to "protect consumer privacy." Verisk, *How We Hash Data to Protect Consumer Privacy*, https://marketing.verisk.com/how-we-hash-data-to-protect-consumer-privacy. Plaintiff's new theory is thus in the same position as her old ones: All are directly contradicted by the materials that she herself relies on, and so none can save her SAC from dismissal.

Plaintiff's Opposition also makes clear that her SAC must be dismissed for further reasons. It admits that Plaintiff's theory is that the alleged recording occurred *before* her information was transmitted to DDR Media—meaning that it did not occur while that data was *in transit*, as is required to state a claim under Section 631. *See* Opp. 11. And it does not even mention—much less attempt to distinguish—the many cases squarely holding that the only data that Plaintiff claims to be at issue here (her name, phone number, and email address) are not subject to Section 631. *See* Opp. 12-13. Each of those reasons, too, provides an independent basis for dismissing Plaintiff's lawsuit.

---

[1] The website that the SAC identifies as belonging to Jornaya, *see, e.g.*, SAC ¶ 28, is actually owned and operated by Jornaya's ultimate parent company, Verisk (which is why the URL begins with https://marketing.**verisk**.com). That distinction, however, is immaterial for purposes of this motion.

In short, in her third complaint, Plaintiff has failed to allege facts showing that Jornaya violated CIPA; that it read or learned, in transit, the contents of a substantive communication between Plaintiff and DDR Media. All Plaintiff has been able to muster is a set of speculative allegations that are not only bereft of any factual support of their own, but fly directly in the face of the sources that Plaintiff herself cites. Her SAC should be dismissed with prejudice, and this litigation brought to an end.

## I. LEGAL ARGUMENT

### A. The SAC fails to allege facts showing that Jornaya read, attempted to read, or learned the contents or meaning of any of Plaintiff's communications, and so Jornaya is not a third party.

This Court held that the FAC failed to state a claim, because it showed that "Jornaya has merely recorded the communication [at issue] for retrieval by a party to the same communication," and hence has in "no sense … read, attempted to read, or learned the contents or meaning of the communication." ECF No. 64 at 7. Jornaya's Motion explains, in detail, why none of the SAC's new theories change that conclusion. *See* Mot. 11-18. Specifically, each is either (1) not presumed to be true on a motion to dismiss because it is "contradicted by documents referred to in the complaint," *Manzarek*, 519 F.3d at 1031; or (2) irrelevant, because (even if true) it does not show that Jornaya read or learned the contents of any of Plaintiffs' communications:

| Allegation | Reason For Failure |
|---|---|
| "Jornaya's website hosts a diagram indicating that it can 'route leads based on consent.'" Opp. 6 (citing SAC ¶ 28). | **Contradicted by materials Plaintiff cites.** Diagram cited by Plaintiff shows, how Jornaya's *users*, not Jornaya itself, determines how to "route leads." *See* Mot. at 15. |
| "Jornaya stores recordings internally, and only provides recording playbacks upon request." Opp. 6 (citing SAC ¶ 29). | **Irrelevant.** As this Court's prior order recognized, merely showing that Jornaya stored and provided playbacks does not show that Jornaya read or learned the contents of those playbacks. *See* Mot. 12-13 |
| "Jornaya 'must read and learn the content of the communications' as it tracks lead events in order to route leads, retrieve stored data, and create visual playbacks." Opp. 6 (citing ¶ 30). | **Contradicted by materials Plaintiff cites.** The website Plaintiff cites explains how Jornaya acts like a safety deposit box, storing and retrieving recordings by referencing a numerical ID, not by learning the contents of those recordings. *See* Mot. 13-14 |

| | |
|---|---|
| "Jornaya can assign flags to leads indicating their quality, which requires reading and learning the contents of the communication." Opp. 6 (citing ¶ 33). | **Contradicted by materials Plaintiff cites.** The website Plaintiff cites explains how these "flags" simply summarize for a TCPA Guardian user the results of consent checks that *it itself* performed, not any independent assessment of the recorded data (much less reading or learning) from Jornaya itself. *See* Mot. 17-18 |
| "Jornaya enables its customers to 'confirm and supplement consumer-provided data on the lead form,' which involves reading or attempting to read or learn the content of the communications." Opp. 6 (citing SAC ¶ 34). | **Irrelevant.** The website Plaintiff cites makes clear that the quote Plaintiff extracts here is discussing an entirely different product, not at issue here and which Plaintiff alleges no involvement with. *See* Mot. 18 |

Plaintiff does not dispute that all the materials discussed in Jornaya's Motion have been incorporated by reference into her SAC (and thus may be considered in ruling on this Motion), or that those materials directly contradict the allegations she bases on them. *See* Opp. 4-7. Instead, she simply repeats those same allegations and argues that they "must be taken as true on a motion to dismiss," and that they lead to the inexorable conclusion that Jornaya "must read and learn the contents of a communication." Opp. 6. But as noted above—and, again, not disputed by Plaintiff—allegations are not taken as true where (as here) they are "contradicted by documents referred to in the complaint." *Manzarek*, 519 F.3d at 1031. And, as shown in the table above, Jornaya's Motion already explained how that principle negates the allegations that Plaintiff relies on here. "Plaintiff fails to respond to [any of those] argument[s] and therefore concedes [them] through silence." *Lefkowtiz v. Scytl USA*, 2016 WL 537952, at *3 (N.D. Cal. 2016).

What Plaintiff does in her Opposition is to pivot to an entirely new theory that does not appear in the SAC: that "the playback link provided" at the end of the TCPA Guardian Report that she attaches as an exhibit to her SAC, *see* ECF No. 66-1, "strongly suggests (if not outright indicates) that Jornaya read or learned the contents of Plaintiff's communications." Opp. 7. Specifically, Plaintiff says that the link, which allows a TCPA Guardian user to watch a simulated playback of a website visitor's interaction, includes a "'Match Data' feature," which she illustrates with the following (new) image:




Opp. 9. Plaintiff says that this feature "allows a viewer to input a first name, last name, phone number, and email address to confirm whether they match the information that the lead provided." Opp. 7. From this, Plaintiff reasons that "[i]n order for Jornaya to confirm whether typed information on the playback page matches a lead event, it stands to reason that it must read or learn the contents of the underlying communication." Opp. 10.

Plaintiff's speculation, however, should be disregarded for at least two reasons. *First*, this theory is nowhere in Plaintiff's SAC; nor are there any factual allegations in the SAC that support it. Indeed, her Opposition does not explain *why* she thinks the presence of this form proves that Jornaya "must read or learn the contents of the underlying communication." Nor does she cite any allegations in her SAC (because there are none) that could fill that gap. Opp. 10. That is reason alone to disregard this argument. After all, to survive a motion to dismiss "Plaintiff must show the Court through facts" alleged in the complaint how the defendant violated the law, "not just tell the

Court [it] did so ipse dixit through conclusory statements." *Gumner v. Pepsico, Inc.*, 2023 WL 8351560, at *3 (C.D. Cal. 2023).

*Second*, just like Plaintiff's prior theories, this one too has no basis because it is squarely contradicted by the materials she herself cites. Plaintiff's theory rests on the assumption that the *only way* for TCPA Guardian to allow one of its users to verify whether a visitor previously entered the name "Loretta Williams" into the user's website is for Jornaya to capture and store that name exactly as the website visitor enters it. But the very exhibit that Plaintiff herself attached to her SAC directly refutes that theory, stating expressly that Jornaya"***do[es] not*** capture and store personally identifiable consumer data." ECF No. 66-1 (emphasis added). Jornaya's website, which the SAC cites repeatedly, (*see* SAC ¶¶ 28, 29, 31, 33, 34) explains precisely why that is so—i.e., how TCPA Guardian can allow users to verify whether data they enter matches information entered by a visitor on a website, without Jornaya itself needing to read or learn the contents of that data. The answer is through "hashing." Verisk, *How We Hash Data to Protect Consumer Privacy*, https://marketing.verisk.com/how-we-hash-data-to-protect-consumer-privacy.[2]

As the website explains, "[h]ashing is the process of generating a value from a text input using a one-way cryptographic algorithm." *Id.* In other words, hashing converts an input to a numerical value called a "hash code." What this means, the website says, is that when a visitor enters personally identifiable information (PII) into a website running Jornaya's software, it is merely the hash code associated with the PII—not the PII itself—that Jornaya captures and stores. *Id.*; *accord* ECF No. 66-1 at 3 (explaining that Jornaya "do[es] not capture and store personally identifiable consumer data"). For instance, if a person typed "Loretta Williams" into a website, Jornaya would ***not*** capture and store the name "Loretta Williams," but would instead store its hash; a unique representation like "1842A9DE74902EF03821AA097276B599."[3] Accordingly, a TCPA

[2] The next two paragraphs contain a walkthrough of the technical details of hashing, as explained by Jornaya's website. While these details are helpful for understanding how TCPA Guardian works, they are not necessary to see legally why Plaintiff's claim must fail. Accordingly, readers who went to law school to get away from technology can skip straight to the paragraph beginning "To be clear …" near the top of page 8, and continue on from there.

[3] Some more technical details of hash codes, for those interested: Although the hashcode itself is purely numeric, it is often represented in hexadecimal notation, which uses both numerals 0-9 and

Guardian user cannot simply ask Jornaya what name was entered. (Again, Jornaya has no way of knowing that information.) Instead, the user must itself already have and provide the name it wishes to check; TCPA Guardian then compares the *hash code* for the name with the *hash code* from the visitor's website session. If the hash codes are an exact match, then the user knows that the name it entered matches the one that the website visitor entered; if the hash codes do not exactly match, then the user knows that the name does not match. TCPA Guardian thus allow its *users* to determine whether a name (or phone number or email address) *the user already has* exactly matches the information entered by a website visitor, even though TCPA Guardian and Jornaya themselves "cannot determine the original value input"—i.e., the name (or phone number or email address) that the visitor entered. *Id.* As the website explains, that is exactly the point: to "protect consumer privacy," by obviating the need for Jornaya or TCPA Guardian to capture and store the website visitor's PII. Verisk, *How We Hash Data to Protect Consumer Privacy*, https://marketing.verisk.com/how-we-hash-data-to-protect-consumer-privacy.

What is more, as Jornaya's website explains, that conversion is only "one-way": A person armed with a hashing algorithm can convert text to hash codes, but cannot run the process backwards, to convert those hash codes back into the text that created them.[4] Thus, Jornaya cannot use that hash code to know reverse engineer what name the website user entered—that is what it means to say that hashing is a "one way … algorithm." *See id.* In this respect, hashing allows Jornaya to act like the caretaker of a locked box. If one of its users wishes to see if their key fits the box's lock, Jornaya can confirm whether it does. But Jornaya itself has no access to the key, nor the contents of the locked box—and cannot tell, simply from possessing the lock, what the matching

---

letters A-F to represent numbers 0 through 15. The number of characters in the hash code is fixed, and wholly unrelated to the size of the input data. For instance, the length of a hash code from the input of a single word would be the same as the length of a hash code from the input of an entire dictionary. No matter the input, the output always involves the same number of hexadecimal characters.

[4] As Jornaya's website explained, this is the "[k]ey difference between encrypting and hashing." Verisk, *How We Hash Data to Protect Consumer Privacy*, https://marketing.verisk.com/how-we-hash-data-to-protect-consumer-privacy. Whereas encrypted text "can be reversed back into their original decrypted form if you have the right key," hashed text cannot. *Id.*

key looks like or who possesses it. Nor can Jornaya make its own key to fit the lock. Rather, Jornaya merely allows its users to check whether the user's own key matches, without Jornaya itself knowing anything about the substance of what it is they are trying to match. So, too, with the TCPA Guardian's use of hashing: If a TCPA Guardian user wishes to check whether a name matches what was entered in a visitor's website session, TCPA Guardian can use the hashed value that it captures and stores to check whether there is a match. But Jornaya cannot tell, simply from having that hashed value, what information was actually entered.

To be clear, nothing here requires this Court to "adopt Jornaya's inferences at face value" or to resolve "a question of fact … [about] the storage mechanics of [Jornaya's] system." *Contra* Opp. 10. In fact, even if one disregarded essentially all the technical details of hashing discussed above, Plaintiff's new theory would still fail to show that Jornaya read or learned the contents of Plaintiff's communications. Think of it this way: At its core, Plaintiff's entire contention is that because TCPA Guardian offers a particular functionality, it *must* operate unlawfully, by reading the contents of Plaintiff's communications. But materials that Plaintiff herself relies on (repeatedly) say that, actually, TCPA Guardian works in a different, lawful way. *See* ECF No. 66-1 at 3 (TCPA Guardian "do[es] not capture and store personally identifiable consumer data"). These materials therefore do not provide any basis for Plaintiff to draw the inferences she has to support the SAC. One need not delve any further into the technical intricacies to determine that Plaintiff's claim must fail. Without some factual allegation indicating that TCPA Guardian works in a different, unlawful way (as opposed to the lawful one), Plaintiff has failed to plead facts establishing an entitlement to relief. In fact, in this respect, she is just like the plaintiff in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), who alleged "parallel conduct" between competitors that could "just as well" have been explained by an unlawful, anticompetitive conspiracy as by lawful "unilateral[]" action. *Id.* at 554, 557. Because the *Twombly* plaintiff included no allegations indicating that it was the former, as opposed to the latter, the complaint could not survive a motion to dismiss. This situation is no different.

**B. The SAC fails to allege facts showing that Jornaya intercepted a communication "in transit."**

Plaintiff does not dispute that, to state a claim under Section 631, she must allege facts showing that the alleged reading or acquiring occurred while the communication was *en route* to its destination—not before it had left, or after it had already arrived. *See* Opp. 11; *see also, e.g.*, *Underhill v. Kornblum*, 2017 WL 2869734, at *5 (S.D. Cal. 2017). As courts have explained, however, such facts will be exceedingly uncommon, as electronic communications "are not typically intercepted during transmission." *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *10 (E.D. Cal. 2023). That is "because internet communications travel so quickly, there is only an incredibly narrow window during which an interception could occur." *Id.* Suppose, for instance, that a person spends twenty minutes typing a draft email on her computer, before finally hitting the "Send" button, at which point the information in the email is transmitted near instantaneously to the intended recipient's inbox, where it waits to be read. The only time when the email is "in transit" is during the "seconds or milli-seconds … following [the] send command" before it reaches the recipient's inbox. *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014) (quoting *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003)). The email is not "in transit"—and thus it is not a violation of Section 631 to read the email's contents—during either the time when she is writing the email *before* the writer pushes "Send" or *after* the email arrives at its destination. *See id.*

Here, Plaintiff dedicates nearly all of her argument towards trying to establish that "the recording did not occur after said information was transmitted to DDR." Opp. 11.[5] But that is only

[5] Plaintiff falls flat in her attempt to portray Jornaya as somehow "shifting" positions on this issue. Opp. 11. According to Plaintiff, Jornaya previously "asked the Court" only "to believe that it did not access her information until *after* it had reached its destination," whereas it "now suggests that the recording may have occurred either *before* the communication was transmitted or after it had reached its destination." Opp. 11. This contention misunderstands the nature of a motion to dismiss. Jornaya has never "asked the Court to believe" anything about when its product records a website visitor's interactions. *See* Opp. 11. Instead, Jornaya's arguments have always been focused—as they must at this stage—on what is shown (or not) by the allegations in the operative complaint, and the documents that it incorporates by reference. *See Manzarek*, 519 F.3d at 1030-31. And in fact, last time around, Jornaya made the same argument that it makes now: that "***Plaintiff's own theory*** … is that the reading occurred entirely *before* the information was transmitted to DDR (which she says did not occur until she pressed the 'CHECK LISTINGS' button)." ECF No. 52 at 6 (emphasis added).

half the question: A communication that is recorded *before* it is transmitted is no more a Section 631 violation than a communication recorded *after* it is received. *See NovelPoster*, 140 F. Supp. 3d at 952. And here, Plaintiff herself argues and alleges that the recording at issue occurred *before* transmission. Indeed, as Plaintiff herself itself puts it: she contends that the recording occurred "***prior to*** the point at which she would have clicked 'CHECK LISTINGS' Goto submit the information to DDR." Opp. 11. What Plaintiff alleges, in other words, is no different than reading an email *before* it is sent—which, as the caselaw cited above makes clear, would not be an act that is prohibited by Section 631. For this separate reason, Plaintiff's Section 631 claim must be dismissed.

**C. The SAC fails to allege facts showing that Jornaya read the "contents" of any message.**

Plaintiff does not dispute that to state a claim under Section 631(a) she must plead facts showing that Jornaya unauthorizedly accessed "the contents of [her] communication," as opposed to merely accessing her "record information." Opp. 12-14; *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). And she concedes that much of the data that she alleges Jornaya's technology to have captured—namely, "the date and time of the visit, her IP address, and her geographic location," SAC ¶ 21—qualifies only as record information, not as message "contents." Opp. 13 ("'Record information' incidental to her communication, which would not be subject to CIPA protection, would include 'the date and time of the visit, her IP address, and her geographic location.'"). Additionally, Plaintiff has previously admitted that "several cases" have also "found" that the rest of the information she alleges to have been recorded—"name, email address, and phone number," *see* SAC ¶ 22—also qualify only as "record information." ECF No. 50 at 6; *see, e.g.*, *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014) (explaining that "names, mailing addresses, phone numbers," are not "contents" of a communication). In other words, the caselaw is clear that merely recording a person's name, email address, or phone number does not amount to a criminal wiretap. (Of course, as explained above, *see supra* § I.A, Jornaya does not do even that.)

Plaintiff does not argue those cases were wrongly decided. Instead, she tries to distinguish them by arguing that her "name, email address, and phone number" were not "generated as a result of the medium of communication," but instead were manually typed by Plaintiff into DDR's website as information "she intended to communicate." Opp. 13 ("While such data could be record information, particularly in cases regarding communications transmitted via phone or email, that is not the case here."). Plaintiff cites no caselaw in support of this supposed distinction; indeed, it is directly contradicted by authority. Courts have specifically rejected the argument that "only automatically generated data may constitute record information." *Svenson*, 65 F. Supp. 3d at 729. Data like "name, email address," and "telephone number" is exactly the "type of information that the Ninth Circuit recognized as record information," and "[n]umerous courts in this district likewise have characterized such information as record information," whether input manually by the user through a website interface or automatically generated. *Id.* (citing *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *6 (N.D. Cal. 2013); *Obodai v. Indeed, Inc.*, 2013 WL 1191267, at *3 (N.D. Cal. 2013)). Courts thus hold that even where a person intends to communicate her name, email address, and phone number—and even if she does so for some purpose other than merely facilitating a communication (such as to sign up for an account)—that information still qualifies only as "record information," not substantive message "contents," and so cannot form the basis for a Section 631 claim. *See Svenson*, 65 F. Supp. at 720-21, 729.

Notably, Jornaya cited all of these same cases in the last round of motion to dismiss briefing, *see* ECF No. 52 at 7-8, and despite now having two bites at the apple, Plaintiff has still failed to acknowledge—much less engage with—their holdings. Indeed, none of the cases cited in the prior paragraph—all of which were cited in Jornaya's prior briefing too—appears anywhere in Plaintiff's Opposition. Here, too, then "Plaintiff fails to respond to [any of these] argument[s] and therefore concedes [them] through silence." *Lefkowtiz*, 2016 WL 537952, at *3. For this independent reason, Plaintiff's Section 631 claim must be dismissed.

**D. Leave to amend would be futile.**

Plaintiff has now had multiple attempts to plead facts give rising to a Section 631 claim; she should not be given another. This case was filed nearly a year and a half ago, in June 2022. If

Plaintiff has not been able—eighteen months and three complaints later—to plead facts that allow her to maintain a claim, there is no reason to think that she will be able to do so now. What is more, as demonstrated above, several of the defects with Plaintiff's SAC are purely legal, rather than factual, in nature. In other words, Plaintiff's claim fails not just because the SAC has pleaded insufficient facts to render Plaintiff's allegations plausible, but also because Section 631 does not encompass what Plaintiff describes here at all. And so if the Court decides, as it should, that Section 631 simply does not apply in this case, there is nothing that an amendment to supply additional facts could do to alter that conclusion. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (leave to amend may be denied where "amendment would be futile"). Perhaps recognizing this, Plaintiff does not even ask this Court for leave to further amend her Complaint. Accordingly, this Court should dismiss Plaintiff's SAC with prejudice.

## II. CONCLUSION

For the foregoing reasons, this Court should dismiss her SAC on the merits with prejudice.

DATED: December 18, 2023

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *Is/ Aravind Swaminathan*
ARAVIND SWAMINATHAN

Attorneys for Defendant, LEAD INTELLIGENCE, INC. D/B/A JORNAYA