UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> DDR MEDIA, LLC, et al., <br><br> Defendants. | Case No. 22-cv-03789-SI <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND** <br><br> Re: Dkt. Nos. 69, 70 |

Defendants' motions to dismiss the second amended complaint were scheduled for a hearing on January 12, 2024. Pursuant to Civil Local Rule 7-1(b), the Court determined that the motions are suitable for resolution without oral argument and vacated the hearing. For the reasons set forth below, the Court DENIES the motions.

**BACKGROUND**

A more detailed factual and procedural background of this case is set forth in prior orders and is not recounted here. Williams alleges that defendants unlawfully recorded her name, address and phone number without her consent when she visited defendant DDR Media LLC's website, www.snappyrent2own.com, and that this information was obtained by a software code called TCPA Guardian that was embedded on the website. TCPA Guardian is a product offered by defendant Lead Intelligence, Inc., d/b/a/ Jornaya ("Jornaya"), to lead generators[1] and telemarketers and it "is

---

[1] Materials from Jornaya state that "[a] lead occurs when a consumer visits a website and fills out a form, entering their personal information. . . . Companies use lead forms on their own websites . . . to collect data from consumers who have an interest in being contacted about their products and services. Companies also purchase '3rd party data leads', where 3rd party lead sellers collect a consumer's data through a lead form on their owned and operated websites . . . which they then sell to companies as a sales lead: a potential customer who has indicated interest in the

designed to allow these lead generators and telemarketers to attempt compliance with the Telephone Consumer Protection Act by documenting alleged evidence of prior express consent to receive telemarketing calls provided on websites." SAC ¶ 5. TCPA Guardian captures strokes, clicks and other interactions on websites, and Williams claims that this capture or recording constitutes wiretapping under the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 631(a).

In an order filed August 18, 2023, the Court granted defendants' motions to dismiss the first amended complaint and granted leave to amend. As relevant here, the Court found that Williams failed to state a claim under CIPA because Williams' allegations showed that TCPA Guardian enabled DDR Media to record its own communications with Williams, but did not show that Jornaya, through TCPA Guardian, acted as a third-party eavesdropper. The Court stated, "the Court can think of no sense in which Jornaya has read, attempted to read, or learned the contents or meaning of the communication at issue here. Jornaya has merely recorded the communication for retrieval by a party to the same communication. Thus, the Court finds that Jornaya is more akin to a tape recorder vendor than an eavesdropper." Dkt. No. 64 at 6. Because DDR Media's liability under CIPA is predicated on Jornaya acting as an eavesdropper, the Court dismissed the CIPA claims against both defendants.

On September 20, 2023, Williams filed a second amended complaint asserting a single cause of action under CIPA. The SAC contains new allegations based on marketing information from Jornaya's parent's website[2] about TCPA Guardian, and attaches as an exhibit a "Guardian TCPA Report." SAC ¶¶ 27-34, Ex. A. Williams alleges that based upon the website's descriptions of TCPA Guardian's functionality, Jornaya "must read and learn the content of the communications (or at least attempt to do so) in order to function." *Id.* ¶ 30. The SAC contains a picture of a diagram from Jornaya's website that Williams contends demonstrates that Jornaya reads or attempts to read the contents of consumers' communications on websites that use TCPA Guardian. *Id.* ¶ 28.

---

company's products or services. In some cases, the 3rd party lead seller may collect a consumer's data, sell it to another 3rd party entity (known as an aggregator), who then sells that data to companies as a sales lead." Second Amended Compl. ("SAC"), Ex. A.

[2] The citations are to Verisk's website, which Jornaya states is its parent company. For ease of reference, this order refers to the website as Jornaya's website.

Williams also alleges,

> 29. Additionally, Jornaya admits on its website that it stores consumers' interactions internally. That is, one of Jornaya's customers, such as DDR Media, doesn't receive automatic access to visual playbacks and related data. Rather, if a Jornaya customer such as DDR wishes to receive the playback, it has to affirmatively request it from Jornaya via Jornaya's portal. Such requests may take a day or more for Jornaya to fulfill. But the customer cannot simply retrieve it— it must request it, and then Jornaya goes back through its retained data and fulfills the request. https://marketing.verisk.com/docs/getting-started-with-tcpa-guardian. (Last visited September 20, 2023).
>
> 30. All of this is to say that Jornaya doesn't merely "record the communication for retrieval by a party to the same communication." First of all, again, the "retrieval" must be requested from Jornaya and can take Jornaya at least a day or more to fulfill while it retrieves the data it has read and learned and creates the playback. But more broadly, Jornaya actively reads or learns (or attempts to read or learn) the contents or meaning of the communications at issue. It also analyzes the communications at issue. Jornaya's TCPA Guardian cannot work any other way. It must read and learn the content of the communications (or at least attempt to do so) in order to function. In order to "route leads based on consent," as its diagram discusses, it must read and/or learn (or at least attempt to read or learn) the contents of the communication. In order to retrieve stored data and create a visual playback, it must read and learn the contents of the communication. In order to, as Jornaya puts it, "track[] the origin and history of a lead event and the consumer actions that occurred at that event" it must naturally read or learn the contents of the communication. It could not track the history of an event without learning that history.

*Id*. ¶¶ 29-30. Citing Jornaya's marketing materials, Williams also alleges that Jornaya provides its subscribers "TCPA Compliance Adoption Reports" that contain data such as "'Audits,' which indicate 'The number of authentic LeadiDs on which you performed an audit, and Jornaya was able to evaluate the TCPA Compliance presence on the form,'" *id.* ¶ 32 (quoting Jornaya website), and that "[t]o provide these Adoption Reports, Jornaya must have read and learned the content of the communications at issue, or at least attempted to do so." *Id*.; *see also id*. ¶ 33 (describing "flagging" feature of TCPA Guardian based on information from Jornaya's website and alleging that Jornaya "must read and learn the content" of communications in order to provide a flagging feature).[3]

---

[3] The SAC also contains allegations about Jornaya's "Real-Time Decisions" product, which Williams alleges is part of TCPA Guardian. *Id.* ¶ 34. Jornaya's motion explains how Jornaya's website shows that Real-Time Solutions and TCPA Guardian are separate products. Jornaya's Mtn. at 18 (citing *Real-Time Decisions*, Verisk, https://marketing.verisk.com/docs/real-time-decisions. Plaintiff's opposition does not address Real-Time Solutions or dispute that it is in fact a separate product, nor does Williams allege that DDR Media's website also used Real-Time Solutions. Accordingly, the Court considers this allegation abandoned.

**DISCUSSION**

Defendants move to dismiss the CIPA cause of action on several grounds. Jornaya argues, *inter alia*, that the materials that Williams relies on and cites in her SAC – namely, the Jornaya marketing materials from its website and a TCPA Guardian "Report" attached as an exhibit to the SAC – directly refute the allegations that Jornaya reads or learns the contents of the communications at issue. Jornaya argues that those materials, which have been incorporated by reference into the SAC, show that TCPA Guardian does not capture and store personally identifiable consumer data about the consumers who visit websites using TCPA Guardian. Both defendants argue that Jornaya stores data obtained through TCPA Guardian and then provides the stored data upon request of its customers, without Jornaya ever reading or learning the contents of the data. Jornaya uses the analogy of a bank safety deposit box, where the bank stores the safety deposit boxes, but the contents of those boxes are only read by the customers. Jornaya also cites other materials stating that TCPA Guardian uses a technique called "hashing" to allow its customers to verify whether data they enter matches information entered by a visitor on a website without Jornaya itself needing to read or learn the contents of that data.

Williams does not dispute that the Jornaya website marketing materials and TCPA Guardian Report have been incorporated by reference into the SAC. Instead, Williams argues that Jornaya's arguments about how TCPA Guardian works raise questions of fact that are not appropriate for resolution on a motion to dismiss. Williams argues that the Court is required to take the allegations of the SAC as true, and she argues that she has plausibly alleged that in order for TCPA Guardian to function, Jornaya "must" read or attempt to read the contents of communications.

Although defendants make persuasive arguments about why they are not liable under CIPA based on how TCPA Guardian works, the Court concludes that a fuller factual record is necessary to resolve this question. The Court has reviewed all of the cited and incorporated materials from Jornaya's website about TCPA Guardian and cannot conclude, as a matter of undisputed fact and law, that Jornaya did not read or attempt to read the contents of Williams' communications on DDR Media's website. It is the Court's view that targeted discovery and an early summary judgment motion could resolve this question, and the Court will discuss this with the parties at the February 9

4

initial case management conference.  As to the remainder of defendants' arguments for dismissal, the Court finds that Williams' allegations are sufficient as a pleading matter.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motions to dismiss the SAC.

**IT IS SO ORDERED**.

Dated: January 30, 2024

SUSAN ILLSTON
United States District Judge