ARAVIND SWAMINATHAN (*admitted pro hac vice*)
aswaminathan@orrick.com
CAROLINE SIMONS (*admitted pro hac vice*)
csimons@orrick.com
REBECCA HARLOW (STATE BAR NO. 281931)
rharlow@orrick.com
THOMAS FU (STATE BAR NO. 325209)
tfu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Lead Intelligence, Inc. d/b/a Jornaya

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DDR MEDIA, LLC, a Pennsylvania limited liability company, d/b/a ROYAL MARKETING GROUP, and LEAD INTELLIGENCE, INC., a Delaware corporation, d/b/a Jornaya,<br><br>Defendants. | Case No. 3:22-cv-03789-SI<br><br>**DEFENDANT JORNAYA'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**<br><br>Date: September 13, 2024<br>Time: 10:00 a.m.<br><br>Judge: Hon. Susan Illston |

## TABLE OF CONTENTS

Page

I. LEGAL ARGUMENT ..... 3

A. The parties dispute only legal questions of statutory construction, not facts about Jornaya's software. ..... 3

B. The undisputed record shows that Jornaya did not read, attempt to read, or attempt to learn the contents or meaning of any of Plaintiff's communications. ..... 4

C. The undisputed record shows that Jornaya was not a third party to Plaintiff's communications. ..... 8

II. CONCLUSION ..... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*D'Angelo v. Penny OpCo, LLC*,
No. 23-cv-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .................................. 5

*Doe v. Kaiser Foundation Health Plan, Inc.*,
No. 23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)........................................ 9

*Garcia v. Build.com, Inc.*,
No. 22-cv-1985-DMS-KSC, 2024 WL 1349035 (S.D. Cal. Mar. 29, 2024)................................. 9

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ......................................................................................... 2

*IDN Technologies, LLC v. Verisign, Inc.*,
No. C 03-3029 PJH, 2004 WL 2196545 (N.D. Cal. Sept. 24, 2004)............................................ 4

*James v. Allstate Insurance Co.*,
No. 23-cv-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023)................................. 1, 5, 7

*Licea v. American Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ....................................................................................... 8

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023)......................................................................................... 8

*Love v. Ladder Financial, Inc.*,
No. 23-cv-04234-VC, 2024 WL 2104497 (N.D. Cal. May 8, 2024)......................................... 5, 9

*Tamayo v. Berryhill*,
No. 16-cv-01947-MEJ, 2017 WL 2438988 (N.D. Cal. June 6, 2017)........................................... 7

Plaintiff's opposition to Jornaya's motion for summary judgment confirms there is no factual dispute about how Jornaya's "TCPA Guardian" software works. That leaves two purely legal questions for this Court to decide on summary judgment: Did Jornaya's software "read" or "learn the contents or meaning of" Plaintiff's communications, as Cal. Penal Code § 631(a) requires? Alternatively, in providing that software, did Jornaya function as an independent third party, as § 631(a) separately requires? The answer to each of those questions, as a matter of law, is no. Plaintiff's wiretapping claims against Jornaya thus fail twice over.

As Jornaya's opening brief explained, a defendant does not "read" or "learn the contents" of a communication under § 631(a) merely by "record[ing] the data and stor[ing] it on its servers," even indefinitely. *James v. Allstate Ins. Co.*, No. 23-cv-01931-JSC, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023). The statute demands more: some action by the defendant to *interpret or understand* the communication's *substantive message*. The record conclusively establishes that Jornaya took no such interpretive action. Plaintiff points to only one candidate: Jornaya's use of an automated hashing process, which employs an algorithm to transform data into an unreadable format the moment it arrives on Jornaya's servers. But the undisputed evidence shows that Jornaya's hashing process does not (and could not) seek to interpret or understand any of the data before or while it is hashed. As laid out in undisputed technical detail by Jornaya's Chief Technical Officer, the algorithm simply makes certain formatting adjustments to the data, and then irreversibly transforms it into an incomprehensible alphanumeric string called a hash, all within milliseconds. The entire process, including the operation of the algorithm, takes place without the need or the capacity for Jornaya (or its code) to decipher the substantive meaning of the data.

Based on this undisputed factual record, as a matter of law, Jornaya does not "read" or "learn the contents" of a communication under § 631(a). Plaintiff argues otherwise, likening Jornaya's use of a hashing algorithm to a human translating text from one language to another, and reasoning that a human would inevitably understand the meaning of words while translating them. This is a flawed analogy because the undisputed facts establish there is no equivalent of a human translator's cognition in Jornaya's operation of the hashing algorithm, which applies without any regard whatsoever to the meaning of the data it hashes.

The undisputed record also confirms that Jornaya does not qualify as an independent third party that could be liable for eavesdropping under § 631(a). There is no evidence in the record—and Plaintiff never even argues—that Jornaya collects or retrieves data for any purpose beyond serving its customers' TCPA compliance needs by enabling them to verify that new information matches what Jornaya previously stored on their behalf. The record thus establishes only that Jornaya "provides a tool" akin to a "tape recorder." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021). Under *Graham*'s prevailing legal test, that means Jornaya does not qualify as an independent third party, and cannot be liable for eavesdropping, under § 631(a). *Id.* at 832-33.

Plaintiff does not respond to Jornaya's argument that it would be entitled to summary judgment under *Graham*. Plaintiff's Opposition Brief ("Opp."), ECF No. 92, at 16. Instead, she urges the Court to reject *Graham* and adopt one of two alternative legal standards. *Id.* at 13, 14. But the Court has already rejected Plaintiff's first proffered standard, which improperly encompasses any provider that is a legally "separate entity" from its customers. *See* ECF No. 64, at 7. That leaves Plaintiff's second alternative under *Javier*, which would hold a service provider liable as a wiretapper if it had the mere "***capability*** to use its record of the interaction for" its own "purpose"—even if such independent use never actually occurs. Opp. 14 (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023)). While the Court should reject that minority approach as vastly expanding the scope of liability under § 631(a)—based on no more than undue speculation—Plaintiff has, in any event, failed as a matter of law to establish that Jornaya would qualify as an independent third party under *Javier*'s test.

In short, the evidentiary record decisively confirms the "persuasive" arguments that Jornaya previously made in seeking dismissal. ECF No. 76, at 4. The Court should grant summary judgment and dismiss Jornaya from the case with prejudice.[1]

[1] Plaintiff contends that Jornaya's opening brief made a "request for leave" to file a second summary judgment motion on additional issues. Opp. 1 n.1. All the opening brief said, however, is that Jornaya—having been directed by the Court to limit this summary judgment motion to specific issues—reserves the right to pursue summary judgment on other grounds if the Court denies this motion. Jornaya's Opening Brief ("OB"), ECF No. 90, at 1 n.1. Jornaya would, of course, pursue any subsequent summary judgment motion as directed by the Court's standing order.

# I. LEGAL ARGUMENT

## A. The parties dispute only legal questions of statutory construction, not facts about Jornaya's software.

As an initial matter, the dispute here presents only legal questions fit for summary judgment—not unresolved factual questions that would require "a jury," as Plaintiff mistakenly suggests. Opp. 2, 9-10, 17. There is no factual disagreement about how Jornaya's software works; both parties credit and rely on the testimony of Jornaya's Chief Technical Officer, Manny Wald. Indeed, Plaintiff presents no other evidence and no expert testimony in support of its opposition. Plaintiff thus does not contest the operational details described in Jornaya's opening brief:

- After a website user enters text, Jornaya's software transmits that data to Jornaya's secure servers. OB 4; *accord* Opp. 3-5.
- Upon arrival, the data immediately undergoes "hashing," a process that applies an algorithm to a string of characters of any length to create a fixed-size output made up of a new string of numbers and letters. OB 4, 6 (citing July 19, 2024 Harlow Decl., Ex. A (ECF No. 90-2) at 30:17–22; *id.*, Ex. B (ECF No. 90-3) ¶ 8); *accord* Opp. 5-6.
- Jornaya's hashing algorithm breaks apart the input data into segments for processing, with each segment representing such a "miniscule portion of the input data" that it is "individually incomprehensible." Wald Decl. in Support of Jornaya's MSJ (ECF No. 90-5) ¶ 5; OB 10.
- Jornaya caches the original data for mere "milliseconds" in "volatile memory" while the hashing process plays out, then permanently "discard[s]" it. OB 6-7 (quoting July 19, 2024 Harlow Decl., Ex. A at 27:8-9, 28:23-29:2); *accord* Opp. 6.
- The hashed output is "irreversible" and indecipherable; there is no "key" for reconstructing its original content. OB at 5 (citing July 19, 2024 Harlow Decl., Ex. A at 31:21-22; *id.*, Ex. B ¶ 13).

Plaintiff's brief simply cites a few additional, undisputed operational details of Jornaya's software that are also drawn from Mr. Wald's testimony. For example, Plaintiff points out that the text entered by a website user is transmitted to Jornaya's servers [redacted]

[redacted] Opp. 3. Plaintiff also notes that at the outset of the hashing process, Jornaya's software performs select formatting adjustments on text data's [redacted]—that is, the "collection of numerical values" underlying the data, July 19, 2024 Harlow Decl., Ex. A at 57:1-3. In particular, [redacted] Opp. 6 (quoting Peluso Decl., Ex. A ("Wald Depo.") at 25:17-22). ASCII codes "represent[] English characters as numbers," with all "upper and lower case letters A through Z, the digits 0 through 9, and the hyphen" assigned "a number from 0 to 127." *IDN Techs., LLC v. Verisign, Inc.*, No. C 03-3029 PJH, 2004 WL 2196545, at *3 & n.6 (N.D. Cal. Sept. 24, 2004). When Jornaya's hashing [redacted], therefore, it simply [redacted]. *See* Wald Depo. 25:19-22. Finally, Plaintiff notes that [redacted]. Opp. 6-8. As explained below, however, Plaintiff makes no legal argument based on [redacted]. *Infra* 7 n.2.

At bottom, none of these facts are disputed. And so, this is the correct juncture for summary judgment so that the Court may decide—as a matter of statutory construction—whether California Penal Code § 631(a) reaches so far as to outlaw Jornaya's code. Specifically, does the statutory phrase "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication" encompass Jornaya's hashing process? And by offering its TCPA Guardian service to customers, is Jornaya acting as the sort of independent third party that could be liable for eavesdropping under § 631(a)? Plaintiff mistakenly theorizes how "a jury" might resolve these questions. Opp. 2, 9-10, 17. But statutory construction is a legal matter for the Court, not a jury, to decide.

**B. The undisputed record shows that Jornaya did not read, attempt to read, or attempt to learn the contents or meaning of any of Plaintiff's communications.**

Plaintiff does not meaningfully dispute that § 631(a)'s phrase "reads, attempts to read, or to learn the contents or meaning" sets a high bar. The statute's express purpose is to combat "the

invasion of privacy" that occurs when a third party not only possesses a communication, but actively tries to understand its private message. OB 8-9 (quoting Cal. Penal Code § 630). It is thus not enough that a defendant "recorded the data and stored it on its servers," perhaps indefinitely. *James*, 2023 WL 8879246, at *3; *see Love v. Ladder Fin., Inc.*, No. 23-cv-04234-VC, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) (allegation that third party software "captures" website user's communications failed to plead that the third party "itself ever 'reads, attempts to read, or to learn' the content of" the communications). To "read" or "learn" under § 631(a), the defendant must take some additional action to *interpret or understand* the communications' *substantive message*. As Jornaya's opening brief explained, that is consistent with the plain definition of "read," which requires action not merely to "scan" text, but also to "interpret" it or gain "understanding of what is meant." OB 8 (quoting Oxford English Dictionary, read, https://www.oed.com/dictionary/read_v?tab=meaning_and_use#26820196).

Plaintiff cites no case law to the contrary. At most, she intimates that a single decision, *D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023), suggested that a third party "reads" communications merely by recording and storing them. *See* Opp. 10 ("Plaintiffs sufficiently allege Defendant allowed Vergic to contemporaneously duplicate their chat conversations with Defendant as they occurred, *thereby reading them*." (quoting *D'Angelo*, 2023 WL 7006793, at *8) (emphasis Plaintiff's)). That is an incorrect statement of the law and arises from a substantially different factual scenario. The third party in *D'Angelo* had allegedly done far more than record and store communications—it had operated the "chat feature" on the defendant's website and "analyze[d]" and "interpret[ed]" the content of "customer-support agent interactions" in order to "enable" the defendant to "create valuable connections with their online visitors through personalized and relevant dialogues." *D'Angelo*, 2023 WL 7006793, at *2. *D'Angelo* held only that this distinct chat software—whose very purpose was to analyze *the substance* of chats—performed the additional, interpretive action that § 631(a) requires. *See id.* at *8.

This case is a stark contrast to *D'Angelo*. Absent any sort of chat feature or other substantive analysis of or response to what is being communicated, Plaintiff tries to find an interpretive act of

"reading" in the automated hashing process by which Jornaya's software immediately converts incoming text and inputs into a permanently unreadable format. *See* Opp. 11 (arguing that Jornaya "read or learned the content of the communication if at no other point than when it was hashing it"). That argument fails as a matter of law precisely because, unlike *D'Angelo*'s chat feature, Jornaya's hashing software has no reason to analyze, does not analyze, and is *incapable* of analyzing the substantive meaning of data inputs. It simply converts arrays of numbers into new alphanumeric strings, without any capacity to understand whether the arrays conveyed Shakespeare or mere gibberish. The very evidence that Plaintiff cites confirms this dispositive point. She first emphasizes that when Jornaya's software prepares a [redacted] for hashing, Opp. 6, it will "remove any 'whitespace', recognize which letters are lowercase and which were uppercase, and alter the lowercase letters so that they were uppercase," Opp. 10. Plaintiff summarily contends, without further explanation, that those adjustments somehow show "Jornaya actually did read or learn the contents of the communications." *Id.* Quite the contrary, the evidence actually demonstrates that Jornaya's software is programmed to recognize and change formatting features of individual characters regardless of what the text says. There is no indication anywhere in the record that when performing that limited task, Jornaya's software even parses the characters into words—let alone attempts to comprehend their substantive meaning.

Plaintiff fares no better in establishing Jornaya's hashing algorithm as reading anything. She summarily contends that to "create the hash for storage purposes," Jornaya's software somehow reads or learns the contents of the input text. *Id.* Once more, there is no evidence to that effect. The record shows only that the hashing algorithm breaks apart input data into segments for processing, OB 10 (citing Wald Decl. ¶ 5), and then produces a unique and "irreversible" fixed-size output, OB 5 (citing July 19, 2024 Harlow Decl., Ex. A at 31:21-22; *id.*, Ex. B ¶ 13). There is no evidence that when performing that function, Jornaya's hashing algorithm even parses input data into words, let alone attempts to comprehend their meaning. To the contrary: The algorithm uses segments that represent such "a miniscule portion of the input data" that they are "individually incomprehensible." Wald Decl. ¶ 5; OB 10. There is nothing in the record to suggest that the algorithm is programmed to decipher the meaning of the data it hashes. Again, it matters not whether the text is a string of

nonsensical characters or a Shakespearean sonnet. Indeed, the opposite is true: The algorithm does not know (or care) whether the numerical values on which it is operating represent a name, an image, or pure randomness. July 19, 2024 Harlow Decl., Ex. B ¶ 8 & n.1. Plaintiff cannot get around that problem by characterizing Jornaya's hashing software as having "received and evaluated" communications. Opp. 5, 10. That conclusory language merely begs the legally dispositive question: Did Jornaya's software evaluate *the substantive meaning* of the communications, and thereby "read" them or "learn" their "contents or meaning" under § 631(a)? The record conclusively establishes that the answer is no.

Ultimately, Plaintiff concedes that argument with its "analogy" to a human translator. Opp. 11. She imagines that the translator "opens [a] letter, which is written in English, and—going one word at a time—converts the letter to all uppercase Pig Latin." *Id.* Plaintiff then urges that the human translator would "read or learn the contents of the original English letter" in "the process of converting the letter into Pig Latin." *Id.* That is a non sequitur. It may be true that when a *human* assesses words in order to convert them from one language to another, their mind naturally interprets the words' meaning. But human cognition is not at issue here. (Neither is Pig Latin translation, which—unlike hashing—produces reversible and decipherable text.) What matters is how Jornaya's automated hashing ***software*** works. As explained, there is no evidence that the ***software*** is programmed to mimic a human mind by parsing input data "one word at a time," *id.*, or ascribing linguistic meaning to it. Plaintiff's baseless analogy cannot fill that evidentiary gap.

Plaintiff has thus failed as a matter of law to establish that Jornaya reads, attempts to read, or attempts to learn the contents or meaning of any communication. Summary judgment is warranted on that ground alone.[2]

[2] Although Plaintiff notes that "certain categories of information are not hashed at all and are retained in their original form," Opp. 10, she never contends—and so has forfeited any argument—that Jornaya reads, attempts to read, or attempts to learn the contents or meaning of that information. *See Tamayo v. Berryhill*, No. 16-cv-01947-MEJ, 2017 WL 2438988, at *7 (N.D. Cal. June 6, 2017) (enforcing "waiver" of arguments not raised in summary judgment briefing). With good reason: As explained, merely "stor[ing]" information, even indefinitely, does not constitute reading or learning under § 631(a). *James*, 2023 WL 8879246, at *3; *supra* 4-5. Thus, as this Court has already held, no CIPA claim lies where "Jornaya has merely recorded the communication for retrieval by a party to the same communication." ECF No. 64, at 7.

**C. The undisputed record shows that Jornaya was not a third party to Plaintiff's communications.**

The Court should also grant summary judgment for a separate reason: As a matter of law, Jornaya does not qualify as an independent third party under § 631(a). Plaintiff does not dispute that this is true under the prevailing legal test first set out by *Graham v. Noom, Inc.* *Graham*'s test sensibly recognizes that when a "service provider" records the content of its user's communications "for [its user's] own purposes," the provider acts as "an extension of" the user itself. *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1123 (S.D. Cal. 2023) (collecting eight other cases applying the same standard). That means the service provider, like the manufacturer of a "tape recorder," cannot be an independent "third-party eavesdropper" within the meaning of § 631(a). *Id.* (quoting *Graham*, 533 F. Supp. 3d at 832-33). Liability may attach only where the service provider makes its own "independent use of" the recorded content, such as by "reselling" it. *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023). Here, there is no evidence—and Plaintiff does not even argue, *see* Opp. 16—that Jornaya made its own "independent use" of her communications. The Court should hold § 631(a) inapplicable on that basis as well.

Unable to dispute that *Graham*'s test favors Jornaya, Plaintiff urges the Court to abandon it for two alternative legal standards. But those arguments go nowhere. Plaintiff first contends that as long as a service provider is a legally "separate entity," it should automatically qualify as an independent third party under § 631(a)—even if it functions only like a tape recorder. Opp. 13. The Court has already rejected that standard, which would extend criminal liability under § 631(a) far too broadly. ECF No. 64, at 7 (dismissing § 631(a) claims because "Jornaya is more akin to a tape recorder vendor than an eavesdropper").

That leaves Plaintiff to argue that § 631(a) applies to any service provider with "the capability to use its record of the interaction for" its own "purpose," even if such independent use never actually occurs. Opp. 14 (quoting *Javier*, 649 F. Supp. 3d at 900). The Court should reject that standard. It mistakenly hinges on the perceived potential for hypothetical privacy violations rather than the actual, culpable nature of a defendant's conduct. But that sort of speculation is not enough to establish a "materially enhanced risk" that "the individual's privacy will be

compromised." *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982, at *17 (N.D. Cal. Apr. 11, 2024); *see Love*, 2024 WL 2104497, at *1. It is thus an unsound basis for applying § 631(a)'s privacy-focused prohibitions. Moreover, invoking *Javier*'s standard would not change the outcome here. Even where courts have applied *Javier*, they have demanded more than a bare showing that a service provider received communications—even when broadly construing allegations at the motion to dismiss stage, let alone evaluating a summary judgment record. *See, e.g.*, *Garcia v. Build.com, Inc.*, No. 22-cv-1985-DMS-KSC, 2024 WL 1349035, at *6 (S.D. Cal. Mar. 29, 2024) (dismissing allegations that Salesforce "receives and stores … communications" of website visitors because plaintiffs did not "plausibly allege" that Salesforce "has the 'capability' to use the chat data for its own purposes or benefit"); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (similar). Yet that is the sum total of Plaintiff's argument under *Javier*: "If [Jornaya] receives the data in raw input form, it has the capability to use it for some purpose." Opp. 15. As decisions like *Garcia* and *Yockey* show, that argument fails as a matter of law to establish that Jornaya is an independent third party under § 631(a) even applying *Javier*'s approach.

## II. CONCLUSION

For the foregoing reasons, this Court should grant Jornaya's motion for summary judgment and dismiss Jornaya from the case with prejudice.

DATED: August 23, 2024

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Aravind Swaminathan*
ARAVIND SWAMINATHAN

Attorneys for Defendant, LEAD INTELLIGENCE, INC. D/B/A JORNAYA